## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF NEW YORK

RACHEL ECKERT
277 Barnard St.
Buffalo, NY 14206

                Plaintiff,

v.                                                                Case No. 22-cv-540

CITY OF BUFFALO                                    **COMPLAINT,**
c/o Corporation Counsel                          **AMENDED-**
65 Niagara Square, 1100 City Hall           **JURY TRIAL DEMANDED**
Buffalo, NY 14202

COUNTY OF ERIE
c/o Law Department
95 Franklin St
Buffalo, NY 14202

STATE OF NEW YORK
c/o Letitia James, Attn: A&O Personal Service
Office of the Attorney General
The Capitol
Albany, NY 12224

LETITIA JAMES, individually and in her official
capacity of the New York State Attorney General
c/o Letitia James, Attn: A&O Personal Service
Office of the Attorney General
The Capitol
Albany, NY 12224

CITY OF BUFFALO POLICE DEPARTMENT
c/o Corporation Counsel
65 Niagara Square, 1100 City Hall
Buffalo, NY 14202

TIMOTHY HOWARD, individually
and in his official capacity of Sheriff of Erie
County, New York

UNITED STATES DISTRICT COURT
FILED
JUL 18 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

10 Delaware Ave
Buffalo, NY 14202

JOHN GARCIA, individually and
in his official capacity as Sheriff of Erie County,
New York
10 Delaware Ave
Buffalo, NY 14202

BYRON BROWN, individually and
in his official capacity as the Mayor of the City
of Buffalo,
c/o Corporation Counsel
65 Niagara Square, 1100 City Hall
Buffalo, NY 14202

APRIL BASKIN, individually and in her
official capacity as Erie County Legislature of
Erie County, New York,
c/o Law Department
95 Franklin St
Buffalo, NY 14202

BYRON LOCKWOOD,
individually and in his official capacity as Police
Commissioner of the Buffalo Police Department,
68 Court St.
Buffalo, NY 14202

ROBERT JOYCE, C74, individually and
in his official capacity as Chief of Police
of the A-District Buffalo Police Department,
68 Court St.
Buffalo, NY 14202

MELISSA KURDZIEL, P3274,
Individually and in her official capacity as a
Buffalo police officer,
68 Court St
Buffalo, NY 14202

COREY DIXON, P3661, individually
And in his official capacity as a Buffalo police

officer,
68 Court St
Buffalo, NY 14202

JAMES NIGHTINGALE-GRIFFIN, P3563,
individually and in his official capacity
as a Buffalo police officer,
68 Court St
Buffalo, NY 14202

JACOB SALAZAR, P3645, individually
 and in his official capacity
as a Buffalo police officer,
68 Court St
Buffalo, NY 14202

MARK COSTANTINO, D457,
individually and in his official capacity as a
Buffalo police officer,
68 Court St
Buffalo, NY 14202

WALTER SKRZVNSKI, P3674,
individually and in his official capacity as a
Buffalo police officer,
68 Court St
Buffalo, NY 14202

JOHN and/or JANES DOE'S (1-23), individually
and in their official capacity as Buffalo police
officers,
68 Court St
Buffalo, NY 14202

JEFF RINALDO, L416,
individually and in his official capacity as the
FOIL officer,
68 Court St
Buffalo, NY 14202

MICHAEL FARLEY, L469,
individually and in his official capacity as the
Lieutenant of Internal Affairs,

68 Court St
Buffalo, NY 14202

JAMES COMERFORD,
individually and in his official capacity as the
Commissioner of Permits and Inspections for the
City of Buffalo,
68 Court St
Buffalo, NY 14202

TIMOTHY CURTIN, individually and
in his official capacity as the Chief Building
Inspector for the City of Buffalo,
68 Court St
Buffalo, NY 14202

SEAN MYERS, individually and
in his official capacity as a Building
Inspector for the City of Buffalo
68 Court St
Buffalo, NY 14202

FRANK BIFARO, individually and
in his official capacity as the Fuel Device
Inspector for the City of Buffalo
68 Court St
Buffalo, NY 14202

JOHN FLYNN, individually
and in his official capacity the District Attorney
for the County of Erie
c/o Law Department
95 Franklin St
Buffalo, NY 14202

KRISTEN ELMORE,
Individually and in her official capacity as an
Assistant District Attorney for the County of
Erie
c/o Law Department
95 Franklin St
Buffalo, NY 14202

J.S.C. JEANETTE OGDEN, individually and in
her official capacity as a New York Supreme
Court Justice
c/o Letitia James, Attn: A&O/Personal
Service
Office of the Attorney General
The Capitol
Albany, NY 12224

J.S.C. CATHERINE NUGENT-PANEPINTO,
individually and in her official capacity as a
New York State Supreme Court Justice
c/o Letitia James, Attn: A&O/Personal Service
Office of the Attorney General
The Capitol
Albany, NY 12224

J.S.C. MARK GRISANTI, individually and in
his official capacity as a New York State
Supreme Court Justice
c/o Letitia James, Attn: A&O/Personal Service
Office of the Attorney General
The Capitol
Albany, NY 12224

J.S.C. DONNA SIWEK, individually and in
her official capacity as a
New York State Supreme Court Justice
c/o Letitia James, Attn: A&O Personal Service
Office of the Attorney General
The Capitol
Albany, NY 12224

DENISE WALDEN, individually and in her
official capacity as Co-Chair of the Police
Advisory Board,
367 Florida St.
Buffalo, NY 14208

CAROLETTE MEADOWS, individually,
as a non-state actor, and in her official capacity
as an Erie County Democratic Committee
Member, serving the Masten District of the City

of Buffalo
281 Barnard St
Buffalo, NY 14206

                    Defendants.

       Plaintiff, RACHEL ECKERT, as and for her verified complaint against defendants, CITY OF BUFFALO, COUNTY OF ERIE, STATE OF NEW YORK, LETITIA JAMES, CITY OF BUFFALO POLICE DEPARTMENT, TIMOTHY HOWARD, JOHN GARCIA, BYRON BROWN, APRIL BASKIN, BYRON LOCKWOOD, ROBERT JOYCE, MELISSA KURDZIEL, COREY DIXON, JAMES NIGHTINGALE-GRIFFIN, JACOB SALAZAR, MARK COSTANTINO, WALTER SKRZVNSKI, JOHN DOES (1-23), JEFF RINALDO, MICHAEL FARLEY, JAMES COMERFORD, TIMOTHY CURTIN, SEAN MYERS, FRANK BIFARO, JOHN FLYNN, KRISTEN ELMORE, JSC JEANETTE OGDEN, JSC CATHERINE NUGENT-PANEPINTO, JSC MARK GRISANTI, JSC DONNA SIWEK, DENISE WALDEN, and CAROLETTE MEADOWS, alleges as follows:

## JURISDICTION

1.      This action is brought under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 2000d, et seq, First, Second, Sixth, and Fourteenth Amendments to the United States Constitution, 18 U.S.C. § 241, 18 U.S.C. 242, 18 U.S.C. 245, malicious prosecution, and asserting claims for intentional infliction of emotional distress and negligent infliction of emotional distress.

       This action further seeks immediate remedy to First Amendment Retaliation and deprivation of due procedural rights in the New York State Supreme Courts, County of Erie. Plaintiff has been severely prejudiced in the state courts which, in part,

warrants this immediate action. This prejudice is due to unlawful and malicious

behavior and without immediate remedy, plaintiff fears further retaliation and

prejudice in pending suits.

2.      This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §

1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

3.      Plaintiff further invokes this court's pending jurisdiction, pursuant to 28 U.S.C.

§ 1367(a), over any and all state law claims and as against all parties that are so

related to claims in this action within the original jurisdiction of this court that they

form part of the same case or controversy.

4.      This Court has personal jurisdiction over defendant CITY OF BUFFALO, a

municipality within the County of Erie, State of New York; defendant COUNTY OF

ERIE, a municipality within the State of New York; defendant STATE OF NEW

YORK a government agency which maintains offices at the New York State Capitol

Building, State Street and Washington Avenue, Albany, New York 12224; CITY OF

BUFFALO POLICE DEPARTMENT, an agent duly formed and existing under the

laws of the State of New York, with its principal offices at 68 Court Street Buffalo,

NY 14202; defendants JAMES, JSC JEANETTE OGDEN, JSC CATHERINE

NUGENT-PANEPINTO, JSC MARK GRISANTI, and JSC DONNA SIWEK

because they reside in the County of Erie, State of New York and are employed by

the State of New York and/or County of Erie; and over all individual defendants

because they reside in the County of Erie, State of New York and are employed by

the City of Buffalo and/or County of Erie, a municipality(s) within the County of

Erie, State of New York.

## VENUE

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391, because the

events giving rise to this verified civil action occurred in this judicial district.

## PARTIES

6.      At the time of each incident that is subject to this action, plaintiff RACHEL

ECKERT ("ECKERT") was a citizen of the State of New York, County of Erie,

residing at 277 Barnard St. Buffalo, NY 14206.

7.      Defendant, CITY OF BUFFALO ("BUFFALO"), was and is a municipal

corporation duly organized and existing under the laws of the State of New York and

has a business address at City Hall, 65 Niagara Square, Buffalo, New York 14202.

8.      Defendant, BUFFALO, through its Common Council, City Counsel and their

officers, agents, servants, employees, and/or their specialized units, promogulated,

implement, review, and/or enforce, as policymakers, certain policies regarding the

conduct actions of police officers employed by the City of Buffalo, including

defendants BROWN, LOCKWOOD, JOYCE, KURDZIEL, DIXON, GRIFFIN,

SALAZAR, COSTANTINO, SKRZYNSKI, DOE'S (1-23), RINALDO, FARLEY,

COMERFORD, CURTIN, MYERS, BIFARO, and WALDEN.

9.      Defendant, COUNTY OF ERIE ("ERIE"), is a governmental entity existing

within the State of New York and operating under the laws of the State of New York,

and County Law. ERIE has a business address at 95 Franklin St. Buffalo, NY 14202.

10.     Defendant, ERIE, through its County Charter and Code, and their officers,

agents, servants, employees, and/or their specialized units, promogulated, implement,

review, and/or enforce, as policymakers, the governing law of the County of Erie. It

sets out the powers and duties of the County's officers, including defendants HOWARD, GARCIA, BASKIN, FLYNN, and ELMORE.

11.     Defendant, STATE OF NEW YORK ("NEW YORK"), is a government agency which maintains offices at the New York State Capitol Building, State Street and Washington Avenue, Albany, New York 12224.

12.     Defendant, LETITIA JAMES ("JAMES"), was and is a resident of the State of New York. She is the Attorney General for the State of New York, employed by the defendant NEW YORK. Defendant JAMES was acting within the scope of her employment and official capacity as the New York State Attorney General during all of the incidents giving rise to this lawsuit. JAMES is also being sued in her individual capacity for damages caused by her actions, inactions, and/or conduct.

13.     The statutory powers and duties of the Attorney General are set forth in Section 63 of the Executive Law. In addition, the Executive Law authorizes the Attorney General to prosecute criminal actions that violate State anti-discrimination laws when local district attorneys cannot or will not prosecute the offenders. See *N.Y. Exec Law § 63(10)* (McKinney 1993 & supp. 2001). The New York State Attorney General serves all New Yorkers in numerous matters affecting their daily lives. This includes both statutory and common law powers to promote equal justice under law and to enforce the civil rights of all New Yorkers.

14.     Defendant, CITY OF BUFFALO POLICE DEPARTMENT ("POLICE"), was and is an agent of defendant CITY OF BUFFALO, duly formed and existing under the laws of the State of New York, with its principal offices at 68 Court Street Buffalo, NY 14202.

15.     Defendant, TIMOTHY HOWARD ("HOWARD"), was and is a resident of the
County of Erie and State of New York. He was the Sheriff of Erie County, New York
employed by defendant ERIE from January 01, 2005 through January 01, 2022.
Defendant HOWARD was acting within the scope of his employment and official
capacity as the Sheriff during most of the incidents giving rise to this lawsuit.

16.     Defendant, JOHN GARCIA ("GARCIA"), was and is a resident of the County
of Erie and State of New York. He was and is the Sheriff of Erie County, New York
employed by defendant ERIE as of January 01, 2022. Defendant GARCIA was acting
within the scope of his employment and official capacity as the Sheriff at the time of
the latest incident giving rise to this lawsuit.

17.     As the Sheriff for the County of Erie, State of New York, and the oldest
constitutional law enforcement officer of the County, the Sheriff is charged with
maintaining the peace in all municipalities, villages, and towns within his jurisdiction,
responsible for the enforcement of laws, ordinances and the protection of lives and
property, and is responsible for properly executing the mandates of the Courts, both
Civil and Criminal, by serving, processing and executing various types of legal
processes. Defendants HOWARD and GARCIA are also being sued in their
individual capacity for damages caused by their actions, inactions, and/or conduct.

18.     Defendant, BYRON BROWN ("BROWN"), was and is a resident of the County
of Erie and State of New York. He was and is the mayor employed by defendant
BUFFALO at all times hereinafter mentioned. BROWN was acting within the scope
of his employment and official capacity as mayor and, at times, exceeding the scope
of his employment and capacity at the times of the incidents giving rise to this

lawsuit. BROWN is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

19.     Defendant, APRIL BASKIN ("BASKIN"), was and is a resident of the County of Erie and State of New York. She was and is the Chairwoman of the Erie County Legislature, employed by defendant ERIE at all times hereinafter mentioned. BASKIN was acting within the scope of her employment and official capacity as Legislature and, at times, exceeding the scope of her employment and capacity at the times of the incidents giving rise to this suit. BASKIN is also being sued in her individual capacity for damages caused by his actions, inactions, and/or conduct.

20.     As Chairwoman of the Erie County Legislature, defendant BASKIN has several powers and duties. Specifically, the County Legislature is in charge of appointing temporary advisory boards of citizens.

21.     Defendant, BYRON LOCKWOOD ("LOCKWOOD"), was and is a resident of the County of Erie and State of New York, and was the Police Commissioner of the City of Buffalo Police Department from January 30, 1984 to February of 2022. LOCKWOOD was employed by defendants BUFFALO and POLICE, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Police Commissioner of the City of Buffalo.

22.     As the Police Commissioner for the City of Buffalo, LOCKWOOD is responsible for the hiring, training, supervision, discipline, and conduct of the defendant officers, and is further responsible for setting, reviewing, and/or enforcing the policies and regulations of the Buffalo Police Department. LOCKWOOD is also

responsible for ensuring that the City of Buffalo Police Officers obey the laws of the State of New York and the United States of America.

23.      Upon information and belief, at all relevant times, LOCKWOOD is/was a policymaker for the Buffalo Police Department in all matters that are alleged herein, and defendant participated in the promulgation of policies and/or customs for the Buffalo Police Department by defendant BUFFALO. LOCKWOOD was directly responsible for policy and custom implementation (in whole or in part) at the City of Buffalo Police Department. LOCKWOOD is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

24.      Defendant, ROBERT JOYCE ("JOYCE") was and is a resident of the County of Erie and State of New York and was the Police Commissioner of the City of Buffalo Police Department. JOYCE was employed by defendants BUFFALO and POLICE, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as the Chief of Police for A-District Buffalo Police Department. The District's Chief shall be responsible for all police operations within their respective Districts unless relieved by a Deputy Police Commissioner or the Police Commissioner. JOYCE is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

25.      Defendant, MELISSA KURDZIEL ("KURDZIEL"), was and is a resident of the County of Erie, and State of New York. She was and is a police officer employed by defendants BUFFALO and POLICE. KURDZIEL was acting within the scope of her employment and official capacity as a police officer at the times of the incidents

giving rise to this lawsuit. KURDZIEL is also being sued in her individual capacity for damages caused by her actions, inactions, and/or conduct.

26.      Defendant, COREY DIXON ("DIXON"), was and is a resident of the County of Erie, and State of New York. He was and is a police officer employed by the defendants BUFFALO and POLICE at all times hereinafter mentioned. DIXON was acting within the scope of his employment and official capacity as a police officer at the times of the incidents giving rise to this lawsuit. DIXON is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

27.      Defendant, JAMES NIGHTINGALE-GRIFFIN ("GRIFFIN"), was and is a resident of the County of Erie, and State of New York. He was and is a police officer employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. GRIFFIN was acting within the scope of his employment and official capacity as a police officer at the times of the incidents giving rise to this lawsuit. GRIFFIN is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

28.      Defendant, JACOB SALAZAR ("SALAZAR"), was and is a resident of the County of Erie, and State of New York. He was and is a police officer employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. SALAZAR was acting within the scope of his employment and official capacity as a police officer at the times of the incidents giving rise to this lawsuit. SALAZAR is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

29.     Defendant, MARK COSTANTINO ("COSTANTINO"), was and is a resident of the County of Erie, and State of New York. He was and is a police officer employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. COSTANTINO was acting within the scope of his employment and official capacity as a police officer at the times of the incidents giving rise to this lawsuit. COSTANTINO is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

30.     Defendant, WALTER SKRZVNSKI ("SKRZVNSKI"), was and is a resident of the County of Erie, and State of New York. He was and is a police officer employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. SKRZVNSKI was acting within the scope of his employment and official capacity as a police officer at the times of the incidents giving rise to this lawsuit. SKRZVNSKI is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

31.     Defendants JOHN and/or JANE DOE'S ("DOE'S") (1-23), were and are residents of the County of Erie, and State of New York. They were and are police officers employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. DOE'S (1-23) were acting within the scope of their employment and official capacity as police officers at the times of the incidents giving rise to this lawsuit. DOE'S (1-23) are also being sued in their individual capacity for damages caused by their actions, inactions, and/or conduct.

32.     Defendant, JEFF RINALDO ("RINALDO"), was and is a resident of the County of Erie, and State of New York. He was and is a police Lieutenant employed by

defendants BUFFALO and POLICE at all times hereinafter mentioned. RINALDO was acting within the scope of his employment and official capacity as a Lieutenant at the times of the incidents giving rise to this lawsuit. RINALDO is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

33.     Defendant, MICHAEL FARLEY ("FARLEY"), was and is a resident of the County of Erie, and State of New York. He was and is a police Lieutenant employed by defendants BUFFALO and POLICE at all times hereinafter mentioned. FARLEY was acting within the scope of his employment and official capacity as a Lieutenant at the times of the incidents giving rise to this lawsuit. FARLEY is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

34.     As the Lieutenant for the Internal Affairs Division of the Buffalo police department, defendant FARLEY was charged with the responsibility to monitor and maintain member's compliance with departmental rules.

35.     Upon information and belief, at all relevant times, defendant FARLEY was assigned to all cases involving plaintiff and defendant MEADOWS. FARLEY was solely responsible for decisions in matters involving plaintiff and defendant MEADOWS.

36.     Defendant, JAMES COMERFORD ("COMERFORD"), was and is a resident of the County of Erie, and State of New York. He was the Commissioner of Permits and Inspections employed by defendant BUFFALO at all times hereinafter mentioned. COMERFORD was acting within the scope of his employment and official capacity as the Commissioner of Permits and Inspections at the times of the incidents giving

rise to this suit. COMERFORD is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

37.     As the Commissioner of Permits and Inspections, defendant COMERFORD was in charge of certain duties, including but not limited to: oversees the inspection program, plans and supervises the activities of the building department, and investigates complaints and violations of the building laws and makes corrections or prefers legal action.

38.     Defendant, TIMOTHY CURTIN ("CURTIN"), was and is a resident of the County of Erie, and State of New York. He was and is the Chief Building Inspector employed by defendant BUFFALO at all times hereinafter mentioned. CURTIN was acting within the scope of his employment and official capacity as an Inspector at the times of the incidents giving rise to this lawsuit. CURTIN is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

39.     Defendant, SEAN MYERS ("MYERS") was and is a resident of the County of Erie, and State of New York. He was and is a Building Inspector employed by defendant BUFFALO at all times hereinafter mentioned. MYERS was acting within the scope of his employment and official capacity as an Inspector at the times of the incidents giving rise to this lawsuit. MYERS is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

40.     Defendant, FRANK BIFARO ("BIFARO"), was and is a resident of the County of Erie, and State of New York. He was and is the Fuel Device Inspector employed by defendant BUFFALO at all times hereinafter mentioned. BIFARO was acting within the scope of his employment and official capacity as an Inspector at the times

of the incidents giving rise to this lawsuit. BIFARO is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

41.    Defendant, JOHN FLYNN ("FLYNN"), was and is a resident of the County of Erie, and State of New York. He was and is the District Attorney employed by defendant ERIE, and acts as an agent of NEW YORK, at all times hereinafter mentioned. FLYNN was acting within the scope of his employment and official capacity as the District Attorney at the times of the incidents giving rise to this lawsuit. FLYNN is also being sued in his individual capacity for damages caused by his actions, inactions, and/or conduct.

42.    Defendant FLYNN is our chief law enforcement official representing the citizens of Erie County. As the District Attorney of the County of Erie, defendant FLYNN is responsible for the just prosecution of nearly every crime committed in Erie County. The District Attorney oversees and advises prosecutors on all investigations and prosecutions; reviews all felony cases and select misdemeanor cases; assures that prosecutors are properly trained; implement office policies; and have the authority to sign indictments.

43.    Defendant, KRISTEN ELMORE ("ELMORE"), was and is a resident of the County of Erie, and State of New York. She was and is an Assistant District Attorney employed defendant ERIE, and acts as an agent of NEW YORK, at all times hereinafter mentioned. ELMORE was acting within the scope of her employment and official capacity as an Assistant District Attorney at the times of the incidents giving rise to this lawsuit. ELMORE is also being sued in her individual capacity for damages caused by her actions, inactions, and/or conduct.

44.     Defendant, JSC JEANETTE OGDEN ("OGDEN"), was and is a resident of the County of Erie, and State of New York. She was and is a New York Supreme Court Justice employed by defendants NEW YORK and/or ERIE at all times hereinafter mentioned. OGDEN was acting within the scope of her employment and official capacity as a Judicial Officer at the times of the incidents giving rise to this lawsuit. OGDEN is also being sued in her individual capacity for damages caused by her actions and conduct, which plaintiff intends to prove were both arbitrary and malicious in nature.

45.     Defendant, CATHERINE NUGENT-PANEPINTO ("PANEPINTO"), was and is a resident of the County of Erie, and State of New York. She was and is a New York Supreme Court Justice employed by defendants NEW YORK and/or ERIE at all times hereinafter mentioned. PANEPINTO was acting within the scope of her employment and official capacity as a Judicial Officer at the times of the incidents giving rise to this lawsuit. PANEPINTO is being sued in her individual capacity for damages caused by her actions and conduct, which plaintiff intends to prove were arbitrary, capricious, and malicious in nature. Plaintiff further asserts PANEPINTO acted outside her legal jurisdiction and abused her power, causing severe prejudice to ECKERT.

46.     Defendant, JSC MARK GRISANTI ("GRISANTI"), was and is a resident of the County of Erie, and State of New York. He was and is a New York Supreme Court Justice employed by defendants NEW YORK and/or ERIE at all times hereinafter mentioned. GRISANTI was acting within the scope of his employment and official capacity as a Judicial Officer at the times of the incidents giving rise to this lawsuit.

GRISANTI is also being sued in his individual capacity for damages caused by his actions and conduct, which plaintiff intends to prove were arbitrary, capricious, and malicious in nature. Plaintiff further asserts GRISANTI acted outside his legal jurisdiction and abused his power, causing prejudice to ECKERT.

47.     Defendant, JSC DONNA SIWEK ("SIWEK"), was and is a resident of the County of Erie, and State of New York. She was and is a New York Supreme Court Justice employed by defendants NEW YORK and/or ERIE at all times hereinafter mentioned. SIWEK was acting within the scope of her employment and official capacity as a Judicial Officer at the times of the incidents giving rise to this lawsuit. SIWEK is also being sued in her individual capacity for damages caused by her actions and conduct, which plaintiff intends to prove were arbitrary, capricious, and malicious in nature. Plaintiff further asserts SIWEK acted outside her legal jurisdiction and abused her power, causing further prejudice to ECKERT.

48.     Defendant, DENISE WALDEN ("WALDEN"), was and is a resident of the County of Erie, and State of New York. She was, at the times hereinafter mentioned, the Chair for the Buffalo Police Advisory Board employed by defendant BUFFALO. Defendant WALDEN was acting within the scope of her employment and official capacity as Chair of the Buffalo Police Advisory Board at the time of the incidents giving rise to this lawsuit.

49.     The Buffalo Police Advisory Board was an independent advisory committee, organized and created by the Buffalo Common Council to focus on policing and community-police relations in the City of Buffalo.

50.     Defendant, CAROLETTE MEADOWS ("MEADOWS"), was and is a resident of the County of Erie, and State of New York. At all times hereinafter mentioned, MEADOWS was acting as a "state actor" at the times of the incidents giving rise to this lawsuit. MEADOWS is sued in her individual capacity and in the official capacity of acting in concert with color of law. Additionally, from June of 2020 to June of 2021, defendant MEADOWS was, at the times within the specified date range, an Erie County Democratic Committee Member, governed by the County of Erie.

51.     At all relevant times, defendants, either personally or through their employees, were acting under the color of law and/or in compliance and non-compliance with the official rules, regulations, laws, statutes, polices, customs, ordinances, usages and/or practices of the City of Buffalo, County of Erie, and/or State of New York. Defendants' actions and conduct show that they did not, nor could they, reasonably rely upon any existing law.

## PRELIMINARY STATEMENT

52.     This complaint seeks relief for a pattern of continuous conduct that commenced on March 28, 2020 and continues to this very day, unabated. The continuous course of actionable conduct includes both civil and constitutional rights violations such as deprivation of rights, deprivation of rights under color of law, unlawful discrimination and retaliation, conspiracy to deprive rights, conspiracy against rights, first amendment retaliation, denial and deprivation of due procedural rights under fourteenth amendment, deprivation of right to bear arms, failure to provide right to a speedy trial, malicious prosecution, and civil torts such as intentional and negligent

infliction of emotional distress. Plaintiff further seeks declaratory and immediate

injunctive relief. The defendants' conduct is far beyond all possible bounds of human

decency and is so abhorrent and utterly intolerable in any civilized community. The

purpose of this action is to put a stop to the brazen and atrocious behavior by the

defendants, to seek any and all legal and/or equitable relief from the court's due to

defendants' behavior, to seek immediate remedy for first amendment retaliation and

deprivation of due procedural rights, and to recover actual, compensatory, and

punitive damages and any further relief as the court deems just and proper.

## STATEMENT OF TIMELINESS

53.     On or around June 19, 2020, plaintiff timely filed a notice of claim with the

GMU- § 53 designee of the City of Buffalo, setting forth the facts underlying

plaintiff's claim against the defendants.

54.     On or around September 24, 2020, ECKERT participated in a 50-h examination

where she was examined by Corporation Counsel for the City of Buffalo.

55.     On or around March 26, 2021, plaintiff timely filed a second (2nd) notice of

claim with the GMU- § 53 designee of the City of Buffalo, setting forth new facts and

incidents underlying plaintiff's claim against the defendants. This was resent on June

15, 2021 as Corporate Counsel claims they never received the notice from March 26,

2021. BUFFALO and POLICE failed to notice a 50-h examination of plaintiff and

have therefore waived their rights to do so.

56.     On or around October 18, 2021, plaintiff timely filed a third (3rd) notice of claim

with the GMU- § 53 designee of the City of Buffalo, setting forth new facts and

incidents underlying plaintiff's claim against defendants. BUFFALO and POLICE

failed to notice a 50-h examination of plaintiff and have therefore waived their rights to do so.

57.     On or around May 19, 2022, plaintiff timely filed a notice of claim with the GMU- § 53 designee of the County of Erie and for State of New York, setting forth the facts for underlying plaintiff's claim against defendants. ERIE and NEW YORK failed to notice a 50-h examination of plaintiff and have therefore waived their rights to do so.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

58.     At issue in this litigation is truly appalling and egregious conduct by the defendants beginning March 28, 2020 and continuing to this very day, unabated.

59.     The facts of this verified complaint have been submitted to the court as an exhibit, labeled "timeline" (Exhibit A).

60.     For reasons unknown, but substantially speculated, defendants have engaged in an relentless and atrocious campaign against plaintiff, her property, and her liberties.

61.     Plaintiff respectfully refers the courts to the facts and history between her and defendants in Exhibit A, to avoid repetition for the sake of clarity.

62.     Plaintiff asserts over the past two and a half years, defendants conspired together to deprive plaintiff of her civil and constitutional rights, defendants conspired together to deprive plaintiff of her property, defendants unlawfully discriminated against plaintiff, defendants retaliated against plaintiff's protected speech under the United States Constitution, and defendants acted maliciously and negligently causing significant harm to plaintiff. Plaintiff suffered severe damages as a result. These include financial, mental, and emotional damages.

63.     Throughout the entirety of the causes of actions complained of, plaintiff alleges

defendants BUFFALO, ERIE, NEW YORK, POLICE, JOYCE, DOE'S (1-23), and

FLYNN filed inaccurate reports in respect to the charges against MEADOWS in an

attempt to facilitate her charges being dismissed. There were several times defendants

filed charges against MEADOWS that did not meet the incident complained of. For

example, MEADOWS assaulted ECKERT on May 02, 2022. POLICE filed charges

against MEADOWS for assault in the third degree, criminal mischief in the third

degree, and criminal contempt in the first degree. By the time the charges were

entered in the system, they were entered a sub-section off. Plaintiff was not allowed

to speak with the prosecuting attorney regarding the charges that were wrong and

their office has already had several issues with discovery in other cases which led to

them being dismissed. In an incident complained of on May 23, 2020, witness

statements never made it to the prosecutors file which led to the malicious

prosecution of plaintiff instead of defendant MEADOWS. In an incident complained

of on or around December 05, 2020, plaintiff's supporting deposition never made it to

the prosecutors file and the charges were dismissed. In an incident complained of on

or around September 20, 2021, plaintiff's order of protection against defendant

MEADOWS went missing out of the New York State Registry Database which led to

charges against her being dismissed as "dubious". In an incident complained of,

POLICE filed charges against MEADOWS for continuous harassment but only listed

one charge of harassment which led to the charges being dismissed. The District

Attorney cannot effectively prosecute a crime without a witness. Plaintiff asserts there

is documentary evidence in the forms of police reports to show at times, defendants

filed complaints against MEADOWS and POLICE refused and/or failed to file the

respective violations of the order of protection. Plaintiff asserts there is documentary

evidence in the forms of police reports to show, at times, defendants filed violations

of the order of protection but not the underlying charge to substantiate the violation.

Plaintiff asserts due to these errors, whether willfully, negligently, and/or maliciously,

that plaintiff was deprived her rights to fair and equal proceedings, justice, and

protection of the laws. Specifically, on one case against MEADOWS, plaintiff was

told by Hon. Kevin Keane the courts were not there to unjustly enrich her by seeking

reimbursement of monetary damages done to her property.

64.     Plaintiff avers she has exhausted every administrative remedy available to her.

Plaintiff has reached out to several different governmental agencies which include,

but are not limited to: Chief of Police, Commissioner of Police, Office of the Erie

County Sheriff, New York State Attorney General Letitia James, Governor Andrew

Cuomo, Federal Bureau of Investigation, Buffalo Common Council, Office of the

Mayor, Department of Justice, New York State Commission on Judicial Misconduct,

Chief Craig Hannah, and several other agencies that she was referred to by the

aforementioned. Plaintiff has even attempted mediation through the Center of

Resolution for Justice.

65.     Plaintiff asserts she has done everything within her legal rights to mitigate the

damages between her and defendants, as required. Every attempt plaintiff made to

mitigate damages, defendants used against ECKERT in order to deprive her of her

legal and lawful rights. Defendants used this tactic to their advantage to hold

authority over ECKERT, and even to this day, in every form of communication

defendants claim ECKERT is in a "tit-for-tat feud" with defendant MEADOWS. Defendants refuse to acknowledge plaintiffs right to assert her rights, without interference from governmental agencies and her duty to mitigate any damages prior to holding one accountable for liability. Throughout the entirety of this instant action, plaintiff attempted to provide POLICE with video footage to prove or disprove the allegations made between MEADOWS and ECKERT but POLICE would not watch most of plaintiff's videos. Plaintiff asserts this was to avoid doing their job, to further the conspiracy, to deprive plaintiff of her property rights and rights under the United States Constitution, and to allow the unlawful conduct to continue.

66.    In addition to the timeline presented and conduct complained of, plaintiff further asserts she has been deprived of her rights under Article 6 Public Officers Law and she has had several complaints ignored by the Department of Permits and Inspections due to violations of City Ordinances. Plaintiff asserts she has documentary evidence to prove her claims which consist of unanswered FOIL requests and unanswered 311 complaints. Plaintiff has not been afforded an opportunity to schedule a fair hearing for a ticket she received in error after mailing in her plea of not guilty. Plaintiff also asserts there are several other incidents that were not mentioned in the original complaint as she believes she has provided more than enough facts to substantiate her claims. Plaintiff asserts these other incidents can arise out of discovery or at trial as it would cause an undue burden on plaintiff listing every detail and having to pay for copies for each defendant. Plaintiff has already suffered severe and significant financial damages due to defendants acts and behaviors. Plaintiff is having difficulty keeping up with her bills due to the damages sustained thusfar.

67.     Plaintiff asserts and alleges that at months at a time, defendants BUFFALO, ERIE, NEW YORK, POLICE, HOWARD, BROWN, BASKIN, LOCKWOOD, JOYCE, KURDZIEL, DIXON, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), FARLEY, COMERFORD, CURTIN, and MYERS allowed MEADOWS to deprive plaintiff of her legal and lawful property rights. Defendants' allowed MEADOWS to build contraptions on plaintiff's property and arrested plaintiff for removing them. Defendants' allowed MEADOWS to repeatedly trespass on ECKERTS property and refused to enforce and uphold the laws of this State and the United States Constitution. Defendants' allowed MEADOWS to harass, annoy, and alarm plaintiff and her property despite the fact of a safety concern from MEADOWS extending a metal pole from her roof to ECKERTS roof, near her electricity lines. Plaintiff asserts she has documentary evidence to prove her claims which consists of affidavits in other lawsuits, police reports, videos, and photographs.

68.     Plaintiff alleges she has documentary evidence which includes documents from lawsuits, police reports, photographs and videos, complaints, non-spoliation notices, FOIL requests, emails, notices, and a host of other documents. Plaintiff also has witnesses she intends to call to testify.

69.     Plaintiff asserts defendant MEADOWS aggressively ran the campaign for defendant BROWN, was good friends with defendants' BROWN and BASKIN, is the relative of defendant OGDEN, and knew most, if not all, the government officials in Erie County due to her political ties and involvement as an Erie County Democratic Committee Member, member of grassroots, and unity coalition. For these reasons, plaintiff believes defendants abused their power to protect MEADOWS and deny

ECKERT her rights under local, state, and federal law. Plaintiff asserts defendants'
committed several acts complained of in her timeline to further acts of a conspiracy in
an attempt to deprive plaintiff of her legal and lawful rights and to protect their image
and campaigns. Through public information, plaintiff found two common interests
between MEADOWS, BASKIN, BROWN, PANEPINTO, GRISANTI, and SIWEK
which is the Working Family Party and the Erie County Democratic Committee.
Plaintiff asserts BROWN ignored all of plaintiff's complaints to protect MEADOWS
in exchange for her aggressive campaign tactics used during the Write Down Brown
campaign.

70.      Plaintiff alleges defendants BROWN, BASKIN, and OGDEN abused their
political power and coerced defendants PANEPINTO, GRISANTI, and SIWEK into
conspiring to interfere and deprive plaintiff of her rights under the United States
Constitution. At some point in 2020, BROWN blocked plaintiff and her family from
posting to his Facebook page, a public forum and government page, due to their
criticisms. This is a form of suppression of speech and expression as the Fourth
Circuit Court of Appeals ruled that the interactive portion of a public official's
Facebook page is a "public forum," so an official cannot block people from it because
of the opinions they hold. See *Davison v. Randall, 912 F. 3d 666 (4th Cir. 2019)*, as
amended (Jan. 9, 2019).

71.      Furthermore, plaintiff asserts an unknown individual in the New York Courts
system, violated the rules of the courts and accessed sealed criminal records from
2018 for a family member of plaintiffs, which was given to defendant MEADOWS.
Plaintiff asserts she has documentary evidence of this in the form of photographs and

with a subpoena she intends to file. When a criminal case is sealed, records can only
be seen by:

- The defendant, with ID

- Someone you (the defendant) authorize to ask for your records, with ID

- The defendant's employer, if you apply for a job where you carry a gun

- The defendants parole officer, if you're arrested while on parole or
  probation

- The prosecutor if you move for an ACD on a marijuana charge, and

- A law enforcement agency after a request to the court

None of these situations arose or warranted for someone in the New York State
Unified Court System, to access sealed records from 2018 without a court order and
give non-public information to MEADOWS. Plaintiff considers this stalking as
MEADOWS is unlawfully accessing sealed court records in an attempt to harass
plaintiff's family.

72.     Regarding each cause of action below, plaintiff asserts defendants' knew, or in
the exercise of reasonable care should have known, in the totality of the events, that
defendant MEADOWS was abusing the process of both criminal and civil procedures
to cause significant financial, mental, and emotional harm to plaintiff. Since 1991,
MEADOWS filed twenty-one small claims cases: SC-011469-90/BU; SC-016756-
92/BU; SC-018159-92/BU; SC-023163-93/BU; SC-023164-93/BU; SC-050982-
98/BU; SC-057680-00/BU; SC-059747-01/BU; SC-059748-01/BU; SC-059749-
01/BU; SC-067238-03/BU; SC-071544-05/BU; SC-080636-08/BU; SC-080637-
08/BU; SC-001504-13/BU; SC-001897-13/BU; SC-000863-15/BU; SC-000312-

17/BU; SC-000336-21/BU; SC-000322-22/BU; SC-004462-98/RO; six federal cases:

1:10-cv-00223; 1:13-cv-00894; 1:14-cv-00762; 1:2015-cv-00297; 1:21-cv-00769;

1:21-cv-00449; and eleven Supreme Court Indexes: 0009505/1993; 0002650/1995;

0005965/2008; 2946/2012; 3267/2012; 44/2015; 700006/2016; 805300/2020;

000013/2021; 806407/2021; and 803580/2022.

It appears this professional and vexatious litigator has started this pattern of behavior

just shortly before her cousin, defendant OGDEN, took the bench; where it

increasingly continued almost thirty-years costing taxpayers thousands upon

thousands of dollars. Wasting multiple resources at the taxpayer's expense. In less

than thirty-years, MEADOWS was able to file thirty-eight lawsuits, harassing

individuals, corporations, municipalities, etc. Plaintiff finds this abhorrent behavior

unacceptable in an equitable court of law. Interestingly, defendant SIWEK claims her

decision to deny ECKERT poor person relief was due to the fact plaintiff had filed

three suits against MEADOWS and may not be familiar with applying the CPLR, but

failed to mention how MEADOWS has been involved in thirty-eight lawsuits in less

than thirty-years. What is even more interesting, is that for the eleven pro-se litigants

SIWEK heard poor person relief on since 2015, never has she once told any pro-se

litigator they may not be familiar with the CPLR. All around plaintiff has been treated

with bias, prejudice, and partiality from all defendants. Plaintiff is left completely

perplexed as to why defendants BUFFALO, ERIE, NEW YORK, FLYNN,

PANEPINTO, GRISANTI, and SIWEK would continue to allow such abuse of

processes by MEADOWS and why they allow her to continuously waste taxpayers

dollars and resources on frivolous matters. MEADOWS should have been deemed

incompetent and a vexatious litigator years ago. Through plaintiff's own experience, MEADOWS creates a host of problems with everyone she comes in contact with in hopes of a big payday. MEADOWS has learned to abuse the process of the courts into forcing people into settling with her over false and frivolous claims due to the time, money, and resources it takes to fight a lawsuit. This behavior eliminates any kind of fair proceedings for the opposing party.

73.     As a result of defendants brazen and iniquitous behavior, plaintiff suffered significant harm. Plaintiffs reputation has been impugned, plaintiff flunked out of school despite previously graduating with a 3.8 GPA, plaintiff resigned from full-time employment due to stress and anguish, plaintiff has lost the enjoyment of life and participating in events, plaintiff has a decrease in sex drive which strains her relation, plaintiff experiences daily episodes of anxiety and often undue stress, plaintiff has troubles eating, sleeping, concentrating and focusing, has ongoing headaches, and has fears of having developed a paranoid personality disorder due to defendants' conspiracy, and plaintiffs children have been physically, emotionally, and mentally affected. Plaintiff has suffered severe depression which makes it hard for her to take part in daily functions. Plaintiff has also been battling suicide with the help of crisis services and mental health counseling due to the actions of all defendants. Plaintiff has been injured and damaged, which damages exceed the jurisdictional limit of all lower courts.

74.     Plaintiff avers that the egregious conduct committed by all defendants' fall under several different causes of action. Plaintiff, for the most part, listed causes of action under their respective titles but some may intersect.

## AS AND FOR THE FIRST CAUSE OF ACTION

### Deprivation of Rights, against all defendant's

75.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in

Exhibit A as if set forth fully once again.

76.     The conduct complained of in all prior allegations herein and stated in exhibit A

was committed by persons acting under the color of state law, as well as in concert with

a "state actor", defendant MEADOWS.

77.     The conduct complained of deprived plaintiff of her right to expression and free

speech, her right to due process and equal protection, and deprived plaintiff the right to

a speedy trial, an impartial district, and to fair compulsory process.

78.     Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

79.     Thus, each defendant is liable to plaintiff for deprivation of rights pursuant to 42

U.S.C. § 1983.

## AS AND FOR THE SECOND CAUSE OF ACTION

### Conspiracy to Interfere with Civil Rights, against all defendant's

80.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in

Exhibit A as if set forth fully once again.

81.     Due to defendant MEADOWS familial relationship to defendant OGDEN and

political involvement with defendants' BROWN, BASKIN, and several Buffalo City

Court Judges, the purpose of denying ECKERT equal protection of the laws and equal

privileges by defendants was racially and politically motivated for their own personal

gain and agendas.

82.     Several acts by the conspirators were committed to further the conspiracy. These acts include, but are not limited to: stonewalling the plaintiff and not allowing any lawful complaints to be filed, stonewalling plaintiff as a victim and would not let her be heard nor participate in any victim rights, ordering plaintiff to immediately stop posting about political corruption to social media sites in an attempt to silence her, witness statements in an assault were thrown out to cover up a false arrest and malicious prosecution, all lawsuits filed by ECKERT were thrown out to interfere and deprive her of receiving justice and denying her the right to sue, her property rights were unlawfully taken away prior to due process and then unlawfully transferred against common law, she was blackmailed, her order of protection was not upheld and then went missing, her supporting depositions went missing, and several other acts plead in Exhibit A to further the conspiracy.

83.     As a result of the acts committed by the conspirators, plaintiff was injured on multiple occasions and has had thousands of dollars-worth of damages done to her property. Plaintiff has also been deprived of her property rights, due procedural rights, and first, second, sixth, and fourteenth amendment rights.

84.     Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A. Plaintiff further asserts defendants knew, or in the exercise of reasonable care should have known, in the totality of the events, that defendant MEADOWS was abusing the process of both criminal and civil procedures thus causing significant financial, mental, and emotional harm to plaintiff.

85.     Thus, each defendant is liable to plaintiff for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985.

## AS AND FOR THE THIRD CAUSE OF ACTION

**Action for neglect to prevent, against defendants BUFFALO, ERIE, NEW**

**YORK, JAMES, POLICE, HOWARD, BROWN, BASKIN, LOCKWOOD,**

**JOYCE, FARLEY, COMERFORD, FLYNN, and WALDEN**

86.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in

Exhibit A as if set forth fully once again.

87.     Plaintiff asserts she has either written or spoken with each named defendant in this

cause of action. Plaintiff complained of a conspiracy due to defendant MEADOWS

political involvement and having relatives in the court system. Plaintiff also mentioned

how several Judges such as Judge Phillip Dabney Jr., Judge Carrie Marie Phillips,

Judge Shannon Heneghan, Judge Janelle Faso, and others have recused themselves

from criminal prosecutions in light of knowing defendant MEADOWS. It was also

discovered that defendant ELMORE knew defendant MEADOWS outside of the

criminal proceedings and never once told plaintiff.

88.     The defendants' named in this cause of action had the power to prevent or aid in

preventing the commission of the same, neglected and refused so to do.

89.     In fact, where a quasi-sovereign interest of the State in the well-being of its

citizens is involved, the Attorney General, JAMES, may initiate civil actions pursuant

to the common law doctrine of *parens patriae*. See *Alfred L. Snapp & Son, Inc. v.*

*Puerto Rico ex rel. Baretz, 458 U.S. 592, 600 (1982)*. The Attorney General may seek

legal relief on behalf of state citizens. Plaintiff alleges defendant JAMES refused to

invoke this power due to plaintiffs lawful and legal complaints about discriminatory

practices and racial prejudices. The Attorney General is authorized to prosecute

unchecked police misconduct that is motivated by race; as she has recently displayed by her investigations into incidents of "racial profiling" by the New York City Police Department.

90.     Interestingly, Attorney General JAMES previously invoked this authority to address an out-of-control town police force. See *Spitzer v. Town of Walkill, No. 01-Civ-0364 (S.D.N.Y. March 16, 2001)*(order denying motion to dismiss).

91.     Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

92.     Thus, each defendant in this cause of action is liable to plaintiff for action for neglect to prevent pursuant to 42 U.S.C. § 1986.

93.     Furthermore, plaintiff alleges certain defendants such as JAMES, BROWN, BASKIN, LOCKWOOD, and WALDEN failed to act as they were unlawfully discriminating against ECKERT due to her color and retaliating against her legal and lawful complaints. Plaintiff asserts this is racial prejudice.

## AS AND FOR THE FOURTH CAUSE OF ACTION

### Unlawful discrimination and retaliation, against defendant Dixon

94.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

95.     On or around May 23, 2020, plaintiff asserts defendant DIXON unlawfully discriminated against ECKERT because she was white.

96.     On or around January 02, 2021, plaintiff asserts DIXON unlawfully retaliated against her for filing a legal and lawful discrimination complaint.

97.     Plaintiff alleges defendant DIXON conspired with defendant MEADOWS on more than one occasion to interfere and deprive ECKERT of her rights, to harass her, and

cause undue stress and anxiety. Plaintiff asserts this is because she is white and defendant is black.

98.     Plaintiff asserts defendants DIXON and GRIFFIN conspired together to interfere and deprive plaintiff of her rights. Plaintiff asserts this was unlawful discrimination and DIXON went as far as throwing out witness statements to cover-up his illegal and unlawful arrest of plaintiff.

99.     Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

100.     Thus, defendants are liable to plaintiff for unlawful discrimination and retaliation pursuant to 42 U.S.C. § 2000d, et seq.

## AS AND FOR THE FIFTH CAUSE OF ACTION

### First Amendment Retaliation, against defendant's DIXON, PANEPINTO, GRISANTI, and SIWEK

101.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

102.     Since June of 2020, plaintiff complained of public and political corruption involving defendants BROWN, BASKIN, and DIXON. These complaints and criticisms were lawful and protected under the first amendment of the United States Constitution.

103.     January of 2021, defendant DIXON retaliated against plaintiffs protected speech, communicated to defendant FARLEY and to the public. Defendant DIXON attempted to file false charges against plaintiff, stood by in the commission of a crime, and deprived plaintiff of her property.

104.    October of 2021, defendant PANEPINTO dismissed a meritorious cause of action filed by plaintiff. Plaintiff asserts defendants BROWN, BASKIN, and PANEPINTO conspired together to interfere and deprive plaintiff of her right to sue and to punish her for exercising her first amendment right.

105.    March of 2022, defendant GRISANTI ordered plaintiff to stop exercising her right to speech and right to expression on all social media sites. Plaintiff asserts defendants BROWN, BASKIN, and GRISANTI conspired together to interfere and deprive plaintiff of her right to speech and expression and retaliated against her for such. Defendant GRISANTI also went against common law and granted defendant MEADOWS an easement on plaintiff's property, unjustly depriving plaintiff of her property.

106.    May of 2022, defendant SIWEK dismissed a meritorious cause of action filed by plaintiff. Plaintiff asserts defendants BROWN, BASKIN, and SIWEK conspired together to interfere and deprive plaintiff of her right to sue and to punish her for exercising her first amendment right.

107.    The actions by the above-named defendants had an adverse effect on plaintiff, severely prejudicing her. Plaintiff asserts these adverse effects were to punish her for exercising her rights.

108.    Plaintiff exercised her rights as a private citizen.

109.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

110.    Thus, each defendant in this cause of action is liable for First Amendment retaliation under Section 1983.

### AS AND FOR THE SIXTH CAUSE OF ACTION

**Deprivation of the right of the people to keep and bear arms, against defendants**

**BUFFALO, ERIE, NEW YORK, DIXON, GRIFFIN, DOE'S (1-23), and**

**MEADOWS**

111.    Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in

Exhibit A as if set forth fully once again.

112.    In March of 2021, plaintiff was stripped of her right to keep and bear arms for

lawful uses. This was the direct result of abuse of process by said defendants against

plaintiff.

113.    Due to plaintiff being unlawfully discriminated against and unlawfully arrested by

defendants DIXON and GRIFFIN, defendant MEADOWS was able to secure an order

of protection against plaintiff. This order of protection ordered plaintiff to turn over

any and all legal guns in her possession. Plaintiff turned over two weapons to her father.

114.    July 07, 2022, the charges filed by said defendants were outright dismissed in

plaintiff's favor.

115.    Plaintiff avers she was maliciously arrested and maliciously prosecuted in an

attempt to deprive her of life and liberties. Plaintiff was deprived her right to bear arms

from March 30, 2021 to July 07, 2022 due to abuse of process in criminal process and

procedure.

116.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

117.    Thus, each defendant in this cause of action is liable to plaintiff for depriving her

the right to keep and bear arms for lawful purposes.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**

**Failure to provide plaintiff a speedy trial without unnecessary delay, against**

**defendants BUFFALO, ERIE, NEW YORK, BROWN, BASKIN, and FLYNN**

118.     May 23, 2020, defendants DIXON and GRIFFIN conspired together to interfere and deprive plaintiff of her life, liberty, and property under the United States Constitution. Plaintiff alleges defendants DIXON and MEADOWS conspired with each other to interfere and deprive plaintiff of her freedom. Defendants DIXON and GRIFFIN filed a felony assault charge against plaintiff.

119.     December 05, 2020, plaintiff was served with an appearance ticket relative to the aforementioned charges, demanding that plaintiff appear in Buffalo City Court on January 26, 2021.

120.     Plaintiffs scheduled arraignment date for January 26 was rescheduled to March 30, 2021, due to no fault of her own.

121.     Plaintiff has made every last appearance on these charges on the following dates: August 26, 2021, September 27, 2021, November 01, 2021, December 03, 2021, February 04, 2022, April 22, 2022, May 06, 2022, and July 07, 2022.

122.     Plaintiff alleges the defendants named in this action have caused unnecessary delays in her prosecution, to cause significant harm financially, emotionally, and mentally. Plaintiff is guaranteed the right to a fair and speedy trial which means that a criminal defendant must be brought to trial for his or her alleged crimes within a reasonably short time after arrest.

123.     Plaintiff recently discovered there is a one-year and ninety-day requirement to file a lawsuit for false arrest, hence plaintiff not bringing this action. However, plaintiff respectfully asks the courts to permit her to file this cause of action as well due to the

brazen and iniquitous behavior of all defendants. Plaintiff alleges the defendants had several ulterior motives in their decision to unnecessarily delay the prosecution of ECKERT, one of which was to time bar ECKERT from filing such action. Plaintiff further asserts defendants knew, or in the exercise of reasonable care should have known, they were maliciously prosecuting ECKERT. Plaintiff has been requesting from the beginning why the prosecution never spoke with her witnesses and it was later discovered defendant DIXON tampered with evidence to falsely charge ECKERT. The prosecution was aware there were witnesses and documentary evidence in all charges against ECKERT and they continued to aggressively prosecute her.

124.     Plaintiff asserts she has made numerous requests to defendants BUFFALO and FLYNN to give her a speedy trial. Plaintiff also made these requests through her attorneys Mayada Osman and Crystal Wentz.  Plaintiff avers the unnecessary delays has harmed plaintiff and hurt her ability to have a fair trial. Plaintiff further asserts she has been denied the right to fair proceedings and has made multiple requests to have her cases transferred to a County that has not displayed partiality towards plaintiff.

125.     Plaintiff alleges the unnecessary delays in her right to a fair trial were tactics used by the defendants in this cause of action to interfere and deprive her of her rights and due process. Plaintiff further alleges defendants BROWN and BASKIN conspired with defendants BUFFALO, ERIE, NEW YORK, and FLYNN to cause the unnecessary delays in an attempt to silence plaintiff and intimidate her as a witness in other cases against defendant MEADOWS.

126.      Plaintiff alleges she has not been afforded certain rights as a crime victim during several criminal cases against defendant MEADOWS and the unnecessary delay in prosecuting plaintiff was for this reason.

127.      Plaintiff was not treated with dignity and was not afforded the right to protection. In fact, plaintiff was assaulted in Buffalo City Court during a small claims hearing on March 17, 2022 in front of Magistrate Penny Wolfgang. To date, plaintiff has not been allowed to file charges for this assault or a violation of the order of protection.

128.      Plaintiff further asserts the acts committed by defendants were done intentionally to punish plaintiff for her exercising her first amendment right and to stonewall her from receiving any justice against defendant MEADOWS. In fact, when plaintiff was assaulted by defendant MEADOWS for the third time, defendant ECKERT's court case was prolonged by two additional months. ECKERT alleges this was done intentionally to prevent her from acting as a witness in the latest assault by defendant MEADOWS. To date, plaintiff made several complaints about the charges filed by POLICE and has not been given an opportunity to speak with the District Attorney's office about them. Plaintiff has been treated poorly by the District Attorney's Office and has been treated like a criminal. Plaintiff has been denied the opportunity to have a crime victim advocate assigned to her, despite multiple requests over the years.

129.      Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

130.       Thus, each defendant in this cause of action is liable to plaintiff for failure to

provide right to a speedy trial pursuant to the Sixth Amendment to the United States

Constitution.

## AS AND FOR THE EIGHTH CAUSE OF ACTION

### Deprivation of rights under the Fourteenth Amendment of the U.S. Constitution, against all defendant's

131.       Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated

in Exhibit A as if set forth fully once again.

132.       Plaintiff asserts she was deprived of her life, liberty, and property by all

defendants without fair legal proceedings, and at times, without any legal proceedings

at all. This was done through unlawful acts of blackmail, harassment, conspiracy, first

amendment retaliation, sixth and fourteenth amendment violations, threats of false

arrests through show of authority, false arrest, malicious prosecution, discrimination,

and other unlawful and retaliatory acts.

133.       Plaintiff asserts she was deprived of her right to sue and her right to freely have

access to the open courts.

134.       Plaintiff asserts she has not been afforded equal protection of the laws. Plaintiff

has made several complaints to the New York State Hate Crime Task Force which is

overseed by the Erie County Sheriff's office for my jurisdiction. The Erie County

Sheriff's office notified plaintiff that the laws do not apply to her because she is white.

A law based on the color of someone's skin is discriminatory in itself. No state shall

make or enforce any law which shall abridge the privileges or immunities of citizens

of the United States. What plaintiff finds discriminatory is that she has video of

defendant MEADOWS calling her white trash and witnesses of defendant MEADOWS calling plaintiff white trash and cracker before brutally assaulting her. What is interesting is that not too long ago, a man by the name of Jeffrey Calhoun, was charged with a hate crime by defendant FLYNN. In this case, racial slurs were alleged but not recorded on camera. Plaintiff has both video footage and witnesses of defendant MEADOWS using racial slurs towards plaintiff which has been ongoing for over two years. Even more interesting, in July of 2021, a man by the name of Michael Cremen was charged with a hate crime for "allegedly" using racial slurs. Plaintiff repeats, she has video footage and witnesses of defendant MEADOWS using racial epithets towards plaintiff, which eventually led to defendant MEADOWS assaulting plaintiff over and over. In the case of Charles Vacanti, he was charged with a hate crime as defendant GARCIA claimed "race was the determining factor". This case too only alleged racial slurs.

135.     Plaintiff asserts she has been denied equal protection of the law by other defendants plead in her timeline as they refused to uphold the integrity of the law and the courts and refused to enforce the plaintiffs order of protection on several occasions.

136.     Furthermore, plaintiff alleges certain defendants such as JAMES, BROWN, BASKIN, LOCKWOOD, and WALDEN failed to provide equal protection of the law to ECKERT due to the color of her skin. Plaintiff asserts this is racial prejudice. Plaintiff is a white woman complaining of hate crimes by a black woman to black elected officials.

137.     As previously mentioned, the New York State Attorney General has the authority to initiate civil actions.

138.     Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

139.     Thus, each defendant in this cause of action is liable to plaintiff for violations of her rights under the Fourteenth Amendment to the United States Constitution.

## AS AND FOR THE NINTH CAUSE OF ACTION

### Conspiracy against Rights, against all defendant's

140.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

141.     Plaintiff alleges that defendants conspired to injure, oppress, threaten, and intimidate plaintiff for exercising her legal rights.

142.     Plaintiff asserts the defendants' specific intent was plead within Exhibit A.

143.     Thus, every defendant in this cause of action is liable to plaintiff for conspiracy against rights pursuant to 18 U.S.C. § 241.

## AS AND FOR THE TENTH CAUSE OF ACTION

### Deprivation of Rights under Color of Law, against all defendant's

144.     Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

145.     Plaintiff asserts every defendant in this action was acting under color of law, or as a non-state actor, when they willfully and/or negligently interfered and deprived plaintiff of her rights, privileges, and immunities protected by the Constitution of the United States and laws thereof.

146.     Plaintiff asserts these actions and conduct committed by defendants were both within the bounds or limits of their lawful authority and without and beyond the bounds

of their lawful authority. The defendants purported to act in the performance of his/her official duties when acting outside their jurisdiction.

147.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

148.    Thus, every defendant in this cause of action is liable to plaintiff for deprivation of rights under color of law pursuant to 18 U.S.C. § 242.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION

### Deprivation of federally protected activities, against all defendants

149.    Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

150.    Plaintiff asserts she has been denied access and participation in federally protected activities by all defendants. Plaintiff also asserts all defendants interfered with her right to participate in federally protected activities to willfully interfered and deprived her of her rights, while acting under color of law. This was done in furtherance to intimidate plaintiff.

151.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

152.    Thus, every defendant is liable to plaintiff for deprivation of participation federally protected activities pursuant to 18 U.S.C. § 245.

## AS AND FOR THE TWELFTH CAUSE OF ACTION

### Malicious prosecution, against defendants BUFFALO, ERIE, NEW YORK, DIXON, GRIFFIN, DOE'S (1-23), and FLYNN

153.    Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

154.   On or around May 23, 2020, plaintiff was arrested by defendants unlawfully, maliciously, and without probable cause, and charged with the following Felony under the New York Penal Law: assault in the second degree.

155.   On or around January 18, 2021, plaintiff was arrested by defendants unlawfully, maliciously, and without probable cause, and charged with the following Misdemeanors under the New York Penal Law: petit larceny and criminal mischief.

156.   On or around September 20, 2021, plaintiff was arrested by defendants unlawfully, maliciously, and without probable cause, and charged with the following Felony under the New York Penal Law: criminal possession of a chemical weapon or biological weapon in the first degree.

157.   All criminal charges against plaintiff were dismissed in plaintiff's favor. Additionally, an Erie County Grand Jury dismissed the chemical weapon charges due to lack of probable cause.

158.   Malice is defined as commencing a proceeding based on wrong or improper motives, something other than the desire to see the ends of justice served. See *Nardelli v. Stamberg, 44 NY2d 500, 377 N.E.2d 975, 406 N.Y.S.2d 443 (1978); Moultan v. State, 114 AD3d 115, 977 N.Y.S.2d 797 (2013); Britt v. Monachino, 73 AD3d 1462900 N.Y.S.2d 576(2010).*

159.   Malice may be inferred from lack of probable cause. See *Berman v. Silver, Forrester & Schisano, 156 AD2d 624, 549 NYS2d 125 (2nd Dept 1989); Chu v. Greenpoint Bank, 257 AD2s 589, 684 NYS2d 268 (2nd Dept 1999).*

160.   The commencement of the aforesaid criminal actions were without probable cause and without any hope of success.

161.    Thus, defendants are liable to plaintiff for malicious prosecution. See *Torres v. Jones, 26 NY3d 742, 47 N.E.3d 747, 27 N.Y.S.3d 468 (2016); Broughton v. State of New York, 37 NY2d 451, 335 N.E.2d 310, 373 N.Y.S.2d 87 (1975); Shaw v. City of New York, 139 AD3d at 698-699, 31 N.Y.S.3d 155.*

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION

### Negligent hiring, training, and supervision, against defendants BUFFALO, ERIE, NEW YORK, POLICE, LOCKWOOD, and COMERFORD

162.    Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

163.    Upon information and belief, defendants BUFFALO, POLICE, and LOCKWOOD, their agents, servants, and employees, hired defendants JOYCE, KURDZIEL, DIXON, GRIFFIN, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), RINALDO, FARLEY to perform work as police officers of defendants BUFFALO, POLICE, and LOCKWOOD.

164.    Upon information and belief, defendants BUFFALO, POLICE, and LOCKWOOD, their agents, servants, and employees, trained defendants JOYCE, KURDZIEL, DIXON, GRIFFIN, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), RINALDO, FARLEY to perform work as police officers of defendants BUFFALO, POLICE, and LOCKWOOD.

165.    Defendants BUFFALO, POLICE, and LOCKWOOD were negligent in the hiring of defendants JOYCE, KURDZIEL, DIXON, GRIFFIN, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), RINALDO, FARLEY in that they knew, or in the exercise of reasonable care should have known, that said defendants did not possess

the temperament and psychological makeup to properly carry out their duties as responsible and law-abiding police officers.

166.     Defendants BUFFALO, POLICE, and LOCKWOOD were negligent in the training of defendants JOYCE, KURDZIEL, DIXON, GRIFFIN, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), RINALDO, FARLEY in that they failed to train said defendants in the proper bases for making arrests and in the rights of citizens under the United States Constitution in general and how to otherwise properly carry out their duties as responsible and law-abiding police officers.

167.     Defendants BUFFALO, POLICE, and LOCKWOOD were negligent in the supervision of defendants JOYCE, KURDZIEL, DIXON, GRIFFIN, SALAZAR, COSTANTINO, SKRZVNSKI, DOE'S (1-23), RINALDO, FARLEY in that they permitted said defendants to arrest citizens without probable cause or reasonable suspicion, encouraged an atmosphere of disregard of the rights of citizens under the United States Constitution, and failed to discipline police officers who committed such offenses.

168.     Upon information and belief, defendants BUFFALO and COMERFORD, their agents, servants, and employees, hired defendants CURTIN, MYERS, and BIFARO to perform work as building and equipment inspectors of defendants BUFFALO and COMERFORD.

169.     Upon information and belief, defendants BUFFALO and COMERFORD, their agents, servants, and employees, trained defendants CURTIN, MYERS, and BIFARO to perform work as building and equipment inspectors of defendants BUFFALO and COMERFORD.

170.    Defendants BUFFALO and COMERFORD were negligent in the hiring of defendants CURTIN, MYERS, and BIFARO in that they knew, or in the exercise of reasonable care should have known, did not have the knowledge to properly carry out their duties as responsible and law-abiding inspectors.

171.    Defendants BUFFALO and COMERFORD were negligent in the training of defendants CURTIN, MYERS, and BIFARO in that they failed to train said defendants in the rights of citizens under the United States Constitution in general and how to otherwise properly carry out their duties as city inspectors.

172.    Defendants BUFFALO and COMERFORD were negligent in the supervision of defendants CURTIN, MYERS, and BIFARO in that they permitted said defendants to violate the unalienable rights of plaintiff and failed to discipline inspectors who committed such offenses.

173.    Upon information and belief defendants NEW YORK and/or ERIE, their agents, servants, and employees, hired defendants JAMES, HOWARD, GARCIA, BASKIN, FLYNN, ELMORE, OGDEN, PANEPINTO, GRISANTI, and SIWEK to perform work as agents of the State of New York and/or County of Erie.

174.    Upon information and belief defendants NEW YORK and/or ERIE, their agents, servants, and employees, trained defendants JAMES, HOWARD, GARCIA, BASKIN, FLYNN, ELMORE, OGDEN, PANEPINTO, GRISANTI, and SIWEK to perform work as agents of the State of New York and/or County of Erie.

175.    Defendants NEW YORK and ERIE were negligent in the hiring and/or electing of defendants JAMES, HOWARD, GARCIA, BASKIN, FLYNN, ELMORE, OGDEN, PANEPINTO, GRISANTI, and SIWEK in that they knew, or in the exercise of

reasonable care should have known, that said defendants did not possess the temperament and psychological makeup to properly carry out their duties as Attorney General, Sheriff, Erie County Legislature, District Attorney, Assistant District Attorney, and Supreme Court Justices (respectively).

176.    Defendants NEW YORK and/or ERIE were negligent in the training of defendants JAMES, HOWARD, GARCIA, BASKIN, FLYNN, ELMORE, OGDEN, PANEPINTO, GRISANTI, and SIWEK in that they failed to train said defendants in the rights of citizens under the United States Constitution in general and how to otherwise properly carry out their duties as elected officials.

177.    Defendants NEW YORK and/or ERIE were negligent in the supervision of defendants JAMES, HOWARD, GARCIA, BASKIN, FLYNN, ELMORE, OGDEN, PANEPINTO, GRISANTI, and SIWEK in that they permitted said defendants to violate the unalienable rights of plaintiff and failed to discipline officials who committed such offenses.

178.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

179.    In fact, plaintiff assets there has been years of ongoing misconduct in the City of Buffalo under the BROWN administration which has caused the taxpayers of this city 18 million dollars (if not more) in lawsuits since 2015. Monica Lalley, a former Buffalo Police Department report technician fraudulently collected overtime, detective Lauren McDermott and other Buffalo Police officers recently "framed" a man through a "web of lies", a now retired Buffalo Police detective, Mark Stambach, was recently found guilty of fabricating evidence against a citizen, and what should have been honored as a stand-up officer for stopping the abuse of private citizens, Cariol Horne was

discharged from her duties and had her pension stolen from her. These incidents do not even break the tip of the iceberg of the amount of negligence there is in the City of Buffalo and County of Erie. Defendants continuously fail to provide proper training and/or supervision to their agents, servants, and employees.

180.    Thus, each defendant is liable to plaintiff for negligence.

### AS AND FOR THE FOURTEENTH CAUSE OF ACTION

### Intentional infliction of emotional distress, against all defendants

181.    Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

182.    Defendants intentionally, maliciously, and recklessly falsely arrested plaintiff, maliciously prosecuted her, interfered and deprived her of her property and her rights protected under the Constitution of the United States, retaliated against her for her lawful complaints, failed to provide protection under and order of protection, failed to provide equal protection of the laws, interfered and deprived plaintiff of her due process rights, failed to give plaintiff a fair and speedy trial, unlawfully discriminated against her, and committed several other unlawful acts plead throughout her timeline marked Exhibit A.

183.    The defendants knowingly, recklessly, and intentionally committed these unlawful acts to harm plaintiff financially, emotionally, and mentally.

184.    Defendants' brazen conduct constitutes iniquitous behavior far beyond all possible bounds of human decency; and it is so abhorrent and utterly intolerable in any civilized community.

185.    As a result of the malicious and intentional behavior of the defendants, the

plaintiff, ECKERT, suffered serious injuries which include: headaches;

stomachaches; paranoia; anxiety; undue stress; physical injury and suffering

including head contusions, cervical sprains, body contusions, and lacerations;

personal property damage; reputational damage; chronic depression; changes in

appetite and sleeping patterns; loss of sex drive; short-term memory loss; high blood

pressure; mental anguish; and overall loss of enjoyment of life.

186.    Some of these injuries are debilitating in nature and are of a nature which the

plaintiff, ECKERT, has suffered and will continue to suffer for an unknown period of

time; potentially for the remainder of her life.

187.    All of these injuries have resulted in grievous pain and suffering, mental pain and

anguish, have required medical intervention and have lasted for almost three years to

date.

188.    A reasonable duty to care was created the moment plaintiff was issued an order of

protection by Hon. Amy Martoche of Buffalo City Court.

189.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

190.    Thus, defendants are liable to plaintiff for intentional infliction of emotional

distress. See *Rich v. Fox News Network, LLC, 939 F.3d 112 (2d Cir. 2019)(quoting*

*Howell v. N.Y. Post Co., Inc., 596 N.Y.S.2d 350, 353 (N.Y.1993))*. As the Second Circuit

has explained:

Under New York Law, although the standard of outrageous conduct is strict,

rigorous and difficult to satisfy, that is not the case when there is a deliberate and

malicious campaign of harassment and intimidation. To be sure, it is manifestly

neither practical nor desirable for the law to provide a remedy against any and all activity which an individual might find annoying. At the same time, where severe mental pain and anguish is inflicted through a deliberate and malicious campaign of harassment and intimidation, intentional infliction of emotional distress provides a remedy. In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions- under the totality of the circumstances- amounted to a deliberate and malicious campaign.

*Id.* (internal quotation marks, citations, and alterations omitted).

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

### Negligent infliction of emotional distress, against all defendants

191.   Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

192.   Defendants negligently and recklessly falsely arrested plaintiff, maliciously prosecuted her, interfered and deprived her of her property and her rights protected under the Constitution of the United States, retaliated against her for her lawful complaints, failed to provide protection under and order of protection, failed to provide equal protection of the laws, interfered and deprived plaintiff of her due process rights, failed to give plaintiff a fair and speedy trial, unlawfully discriminated against her, and committed several other unlawful acts plead throughout her timeline marked Exhibit A. Defendants did not act with a reasonable level of care when committing these unlawful acts against plaintiff.

193.     The allegations of negligence, carelessness, and recklessness of defendants

BUFFALO, ERIE, STATE OF NEW YORK, and POLICE through the acts of its

agents, employees, representatives and/or servants, who were acting in the scope of

their employment, include, but are not limited to the following: creating a hostile and

unsafe environment to plaintiff, her local business, and her children; failing to take

appropriate measures so as to prevent such a hostile and unsafe environment from

existing; failing to take proper and necessary precautions to safeguard against the

unsafe and hostile environment; failing to properly investigate the unsafe and hostile

environment that existed; failing to uphold the integrity of an order of protection

which further led to the hostile and unsafe environment; failing to use due and

reasonable care; failing to protect plaintiff and her property under an order of

protection while on actual and constructive notice of same; failing to take appropriate

measures to prevent such hostile and unsafe environment while on actual and

constructive notice of same; failing to investigate claims of discriminatory practices,

hate crimes, and public corruption while on actual and constructive notice of same;

failing to take appropriate measures to prevent such discriminatory practices, hate

crimes, and public corruption while on actual and constructive notice of same; failing

to observe said public corruption and discriminatory practices against plaintiff; failing

to remedy and/or rectify the discriminatory practices, hate crimes, and public

corruption against plaintiff; failing to remedy and/or rectify the hostile and unsafe

living environment for plaintiff, her business, and her children; allowing the

discriminatory practices, hate crimes, and public corruption to exist; allowing the

hostile and unsafe environment to exist; and otherwise acting carelessly, recklessly, and negligently.

194.    As a result of the negligence, recklessness, and carelessness of the defendants, the plaintiff, RACHEL ECKERT, suffered serious injuries which include: headaches; stomachaches; paranoia; anxiety; undue stress; physical injury and suffering including head contusions, cervical sprains, body contusions, and lacerations; personal property damage; reputational damage; chronic depression; changes in appetite and sleeping patterns; loss of sex drive; short-term memory loss; high blood pressure; mental anguish; and overall loss of enjoyment of life.

195.    Some of these injuries are debilitating in nature and are of a nature which the plaintiff, ECKERT, has suffered and will continue to suffer for an unknown period of time; potentially for the remainder of her life.

196.    All of these injuries have resulted in grievous pain and suffering, mental pain and anguish, have required medical intervention and have lasted for almost three years to date.

197.    A reasonable duty to care was created the moment plaintiff was issued an order of protection by Hon. Amy Martoche of Buffalo City Court.

198.    Defendants brazen and egregious behavior constitutes iniquitous conduct far beyond all possible bounds of human decency; and it is so abhorrent and utterly intolerable in any civilized community.

199.    Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

200.    Thus, defendants are liable to plaintiff for negligent infliction of emotional

distress. See *Francis v. Kings Park Manor, Inc., 14-CV-3555, 2015 WL 1189579, at*

*\*13 (E.D.N.Y. Mar. 16, 2015)*(citations and quotations marks omitted).

## CONCLUSION

WHEREFORE, plaintiff respectfully demands judgment against the defendants in an

amount which exceeds the jurisdictional limits of all lower courts which might otherwise have

jurisdiction, declaratory relief seeking a statement by the courts of the rights of the parties,

immediate injunctive relief against GRISANTI and SIWEK in the event he/she does not recuse

himself/herself, nominal, actual/compensatory, special, general, and punitive damages, and for

such other and further relief this court deems just and proper.

Respectfully,

Rachel Eckert, pro-se

Dated: n/18/2022

County: Erie

TO:

ALL PARTIES

# Exhibit A
## TIMELINE OF EVENTS- **AMENDED**

**March 28, 2020:**

Defendant MEADOWS cut the exhaust pipe to plaintiff's newly installed furnace at her residence. This resulted in plaintiff and her children contracting carbon monoxide poisoning, and plaintiff suffered monetary loss due to the damage. Defendant SALAZAR filed a report for criminal mischief, trespassing, and harassment.

**March 29, 2020:**

Defendant MEADOWS pounded on plaintiff's front door threatening to beat her up. Defendant KURDZIEL responded and advised MEADOWS to stay off ECKERT'S property. ECKERT asked KURDZIEL to retrieve the furnace pipe MEADOWS cut off. MEADOWS told KURDZIEL she owned the pipe because it was on her (MEADOWS) property. The vent pipe protruded about an inch or two off the side of plaintiff's house and plaintiff has over a foot of land on that side. KURDZIEL, for a second time, advised MEADOWS to return the pipe. MEADOWS whipped the pipe towards plaintiff, trying to hit her, but hit her home instead. KURDZIEL told MEADOWS she is glad she didn't break anything. MEADOWS responded to KURDZIEL she is "tired of these white bitches moving in the neighborhood……". As a result of defendant's actions, plaintiff suffered undue stress.

Plaintiff posted "PRIVATE PROPERTY No Trespassing KEEP OUT" after this incident, as she has the right to exclude others off her property. This is not a crime nor is it in any way, shape, or form illegal. In fact, private parties have the right to exclude unwanted visitors from coming onto their property, and the right to prevent others from claiming an ownership interest in their property. This right is afforded under the Fifth Amendment's guarantee to property rights.

Later this day, plaintiff tried to make emergency repairs to her furnace. She was shoved off her property by defendant MEADOWS and the police were called. Defendants' DOE (1) told plaintiff she could not make the repairs to her furnace and that she'd be trespassing. DOE (1) said to deal with it in civil court.

Officer Devin Salter-Brown, and/or DOE (1), ordered for building inspector, and defendant, MYERS to handle the property line issue, per police reports. Plaintiff asserts she has the right of possession, the right of control, the right of exclusion, the right to derive income, and the right to disposition of her property. Plaintiff asserts defendants recklessly and negligently denied plaintiff of her private property rights, causing undue stress.

**March 30:**

DOE (2) threatened to arrest plaintiff for trespassing when attempting to make necessary repairs to her home. Plaintiff was told to contact the Buffalo City Building Inspectors to get authorization to do so. Plaintiff contacted defendant CURTIN and her Real Estate Lawyer, Todd Potter, Esq.

After speaking with her lawyer, she removed a fence from her property to gain access to the damaged exhaust pipe. POLICE were called and defendant KURDZIEL, with show of authority, threatened to arrest plaintiff for removing said fence off her land. KURDZIEL then forced plaintiff to install the fence back on her property against her will. KURDZIEL remained at plaintiff's residence for 15 minutes or more while she watched ECKERT install the fence, humiliating plaintiff not only to all her neighbors, but the entire Kaisertown and S. Buffalo page on the social media platform known as FaceBook a.k.a. Meta, as defendant MEADOWS recorded KURDZIEL and posted it to social media. Plaintiff repeats, reiterates, and reasserts, she has the right of control over her property and defendant KURDZIEL'S deprivation of that right

humiliated plaintiff, caused undue stress, and gave defendant MEADOWS the impression that she can utilize plaintiff's property without her authorization. In fact, May 20, 2021 MEADOWS used KURDZIELS threat in a conversation with defendant SALAZAR in an attempt to have plaintiff unduly arrested. Plaintiff asserts she has this incident on video as well as the incident with KURDZIEL forcing her to put up a fence or go to jail in the middle of a pandemic. Later this evening, ECKERT'S family member spoke with an unknown Lieutenant on duty (unknown as POLICE refused to give the name of the Lieutenant). They explained to the Lieutenant the dangers of ECKERT'S exhaust pipe being disconnected and mentioned he'd be responsible for three deaths in the event of carbon monoxide poisoning as officers are depriving ECKERT access to her property to make repairs. The Lieutenant agreed with her family that the repair needed to be made and stated to have ECKERT call the department when she was ready to make the repairs and they would send a squad car out to meet me and make sure there weren't any problems with me making the repair.

**March 31, 2020:**

Plaintiff contacted POLICE to make repairs since she was sent home from work and was advised the night before that a Lieutenant said for her to call the station and get a car dispatched. She was told by POLICE that a night shift Lieutenant cannot tell day shift cops what to do and they would not dispatch a car out to her home.

Defendants' CURTIN and MYERS, employees of the City of Buffalo Permits and Inspections Dept. came out to ECKERT'S house in accordance with the recommendation from defendants POLICE. It was the duty of defendants' CURTIN and MYERS to make the decision on whether or not ECKERT could repair her own home without a court order. Upon investigation, City Inspectors verified plaintiff owned at least 1.5 feet on the northside of her home and it was

critical her exhaust pipe be repaired. After their findings, they contacted POLICE to give them an update. Plaintiff contacted POLICE and spoke with RT Maureen Wojtanik to ask what the inspectors told her. In a very nasty and hostile tone, she stated that while plaintiff does own property on the northside, she was only allowed to repair it. Wojtanik stated if plaintiff goes on that side of her house again, POLICE were advised to arrest her (by defendants' CURTIN and MYERS). RT Maureen Wojtanik also told plaintiff they would arrest her if she tried to remove the fence post off her property again. Defendants' CURTIN and MYERS do not have the jurisdiction to have plaintiff arrested nor the jurisdiction to deprive her of her property without a court order.

Plaintiff was sick the entire day and her daughter started throwing up. Plaintiff and her children went to the MAC center where her children tested over 2.0 blood levels for carbon monoxide poisoning. After leaving the hospital plaintiff notified Detective Lauren McDermott that her children sustained carbon monoxide poisoning. McDermott stated she would add endangering the welfare of two minors to the charges. Two days later, Detective McDermott said her supervisor (unknown) told her she is not to file the endangering charge against defendant MEADOWS and that they didn't know her intent so the charge is invalid. New York State Penal law 260.10 reads:

A person is guilty of endangering the welfare of a child when:


1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health; or

The penal law does not mention intent anywhere as that is a jury's job to decide, not a police supervisor. Defendant DOE (3) failed in applying the law and was negligent in upholding the law. Defendant MEADOWS is a registered nurse practitioner and worked for the Buffalo Dept. of Veterans Affairs. She has worked with vent patients before and is aware what carbon monoxide poisoning can do. She intentionally and without regard to the consequences cut the exhaust pipe that ventilates plaintiff's home. There was much testimony about this incident on Index No. 805300/2020 filed in New York Supreme Court, County of Erie. Defendants' BUFFALO, JOYCE, POLICE, LOCKWOOD, and DOE (3) conspired together to deprive plaintiff of her lawful rights causing serious injuries to her minor children.

Lastly, defendants' CURTIN and MYERS stated plaintiff was not allowed to put up a fence to protect her property from being further damaged and if she put one up, they would rip it down. Defendants later apologized for this and stated they did not think it was that serious. Defendants' CURTIN and MYERS conspired together, along with defendants' POLICE and MEADOWS in an attempt to deprive plaintiff of her rights under the United States Constitution. Due to defendant's actions, plaintiff and her children suffered physical injuries, mental stress, and undue stress. Plaintiff was also deprived of her property in front of MEADOWS by City Officials leading her to believe that plaintiff does not have control over her property and that MEADOWS can do as she sees fit. Defendants' CURTIN and MYERS later apologized about their behavior which plaintiff asserts she has video of.

**April 02, 2020:**

Plaintiff sent a notice of non-spoliation to defendants' JOYCE and LOCKWOOD via email and mail. She also sent a copy to Corporate Council Timothy Ball. The notice was acknowledged as received by RT Maureen Wojtanik on April 3, 2020 and plaintiff was told to forward it to the

FOIL department which she did. The non-spoliation sought to preserve specific body camera data from officers who responded to plaintiff's home between March 29 and March 31, 2020.

Plaintiff attempted to file a complaint with City of Buffalo Police Headquarters.

Plaintiff reached out to Erie County District Attorney's ("ECDA") Office.

**April 20,2020:**

Defendant BIFARO with the City of Buffalo came out to inspect plaintiffs furnace installation. Her furnace passed inspection and was installed up to code.

**May 12, 2020:**

Defendant BIFARO called plaintiff (on behalf of defendant CURTIN) and her HVAC installer, Nicholas Speck, on three-way demanding she relocate her existing furnace pipe because defendant MEADOWS was complaining. Defendant BIFARO did not have a court order nor proper jurisdiction to order plaintiff to relocate the pipe that was installed to code, passed inspection, and up to date with local city ordinance. Plaintiff refused to cooperate without a court order, so defendant BIFARO blackmailed her saying to either "relocate the pipe or go to court for not having a permit pulled and getting fined". The permit issue has since been remediated. Plaintiff alleges defendants' BROWN, BASKIN, BIFARO and CURTIN conspired together in an attempt to deprive plaintiff of her legal rights under the United States Constitution. As a result of defendant's behavior plaintiff suffered damage and injury in the form of undue stress.

**May 13, 2020:**

Plaintiff contacted Buffalo Common Council to complain of the complaints that give rise to this suit. She was brushed off and given the runaround.

Plaintiff contacted the ECDA office to speak with Chelsyea Herring with the Victim Witness Services.

Plaintiff spoke with an unknown individual at the Erie County Executive's Office who referred her back to the ECDA Office.

**May 14, 2020:**

Plaintiff filed a complaint with Buffalo Common Council regarding issues raised in this suit. Plaintiff spoke with a woman who told her to send her complaint to          . She never received a response.

Plaintiff filed a complaint with defendant COMERFORD regarding the behavior of his department. She requested that defendant have his department remove the unlawful, unconstitutional order they placed on file with defendant POLICE to unlawfully arrest her and from depriving her of her property rights without a court order. COMERFORD did not respond. Plaintiff spoke with Chelsyea Herring regarding more current events.

**May 18, 2020:**

Defendant DOE (4) called plaintiff while she was at work and threatened to file charges against her over her vent pipe. She requested for a valid court order to be produced that she is to relocate a structural component of her home and without one she will not be moving anything. Plaintiff alleges defendants BUFFALO, ERIE, JOYCE, DOE (4), CURTIN, and MYERS conspired together in an attempt to deprive plaintiff of her property rights.

Plaintiff emailed Corporate Council, Timothy Ball, requesting assistance with the unlawful order defendant's CURTIN and MYERS made on March 31, 2020 to R.T. Maureen Wojtanik to have her arrested. She did not receive a response. As a result of defendant's behavior, plaintiff suffered damages and injury in the form of undue stress and mental anguish.

**May 20, 2020:**

Plaintiff ECKERT removed a fence off her property, that was verified by defendants' CURTIN and MYERS which stated the fence was on her property according to her survey. Defendant MEADOWS contacted POLICE on ECKERT and defendant SALAZAR responded to the scene. Defendant SALAZAR told plaintiff that the fence was MEADOWS, despite ECKERT having record it was hers and on her property. Defendant SALAZAR also told plaintiff she has to let MEADOWS trespass on ECKERTS property to be able to park her car. Plaintiff asserts there was no recorded easement on file, no knowledge of any easement on file, nor any record of a prescribed easement on plaintiff's property. Plaintiff asserts she has been denied several times by defendants' JOYCE, KURDZIEL, SALAZAR, DIXON, DOE'S (1-23), FARLEY, and GRISANTI to exclude people from her property, and the right to control and possession, which rights guaranteed to plaintiff and protected by the United States Constitution. Plaintiff has this incident as well as several others on video. Plaintiff suffered injury and damages in the form of undue stress, mental anguish, and loss of quiet enjoyment of her home.

Defendant MEADOWS covered plaintiff's security cameras with paper towels. Defendant then ran down the walkway while pounding on plaintiff's house. This was on camera and plaintiff called 911. DOE (5) would not file a report and said they cannot determine the property line, so they could not file anything against defendant for pounding on plaintiff's house because she could have "done it while on her own property". They advised MEADOWS to leave ECKERT'S cameras alone. Plaintiff suffered injury and damages in the form of undue stress, mental anguish, and loss of quiet enjoyment of her home.

Plaintiff tried to follow up with Buffalo Common Council regarding her complaint filed on May 14, 2020 and did not receive a response.

Plaintiff filed a complaint with Nadine Marrero with the City of Buffalo regarding violations of the Buffalo Green Code UDO 8.2.2(B) and requested assistance with remediating it. She did not receive a response.

**May 21, 2020:**

Defendant MEADOWS is on camera covering ECKERTS cameras after the police strictly advised her not to touch her property.

Defendant went in plaintiff's backyard and started pounding on her house in the back.

Plaintiff spoke with Chelsyea Herring who told plaintiff she was working on getting her an emergency restraining order.

Plaintiff spoke with an unknown individual at the Civil Service Commission, a city government office in the City of Buffalo in which she complained of the complaints that give rise to this suit.

**May 23, 2020:**

A panel of plaintiffs was missing from her privacy fence in the backyard. Plaintiff saw the missing panel in defendant MEADOWS yard and called 911 (plaintiff took pictures of this prior to the police arriving). When defendant DOE'S (6-7) arrived, they retrieved the panel from defendant's backyard, returned it back to ECKERT'S yard and laid it down near her shed. The unknown officer refused and/or failed to file a police report for possession of stolen property or for theft. Plaintiff believes this was in retaliation due to several complaints she filed against their district. The officer intimidated her, by show of authority, and told her the wind blew the fence panel down and defendant picked it up. DOE (6) said there is no theft because the fence was only two feet away from plaintiff's property (plaintiff has pictures and it was way more than two feet. It was at least ten feet away). DOE (6) ignored a crime and intimidated a victim. DOE (6) refused and/or failed to let her file a report. Plaintiff alleges defendants LOCKWOOD, JOYCE,

and DOE'S (6-7) conspired together to deprive plaintiff of her rights. Plaintiff suffered damages and injury due to defendant's action in the form of undue stress, mental anguish, and loss of quiet enjoyment of her home.

Later that evening defendant MEADOWS was in ECKERT'S backyard with an electric sawzall, which she used to cut up the fence panel DOE's (6-7) retrieved earlier that day. Plaintiff ran outside to tell defendant to get off her property and MEADOWS attacked PLAINTIFF with the sawzall. After trying to stab plaintiff with the saw, she hit defendant in self-defense.

MEADOWS then bit plaintiff in the neck, breaking the skin, and grabbed her by the hair, punching her in the head and pinching her breasts. Plaintiff had multiple contusions and wounds from the attack. Plaintiff's son and another neighbor called 911. A second neighbor hopped the fence and removed MEADOWS off ECKERT. When POLICE arrived, MEADOWS ran up to the squad car and lied to the police saying plaintiff snuck up behind her with a skillet and battered her. Around ten officers arrived on scene. There were three [white] witnesses that night which defendant DIXON (a black officer) refused and/or failed to take witness statements from after speaking to them. DIXON threatened to taze a concerned (white) citizen who was questioning why he wouldn't take witness statements. DIXON called plaintiff a liar which was recorded on his body cam. DIXON discriminated against plaintiff due to her color and falsely charged her with a felony assault. POLICE were on scene for an hour or more where they attempted to delay if not deny medical attention. Plaintiff was told that MEADOWS was getting the ambulance that was dispatched and if she wanted one, she'd have to "wait hours because it was busy". After a while, plaintiff agreed to take herself as she was in pain.

Plaintiff was intimidated by GRIFIFN who told her the only way she could press charges on MEADOWS is if they allow MEADOWS to press charges on ECKERT. At the time, plaintiff

was unaware of what charges POLICE had filed against her. Plaintiff alleges DIXON conspired with defendants' MEADOWS and GRIFFIN to falsely arrest plaintiff and have her maliciously prosecuted. DIXON and GRIFFIN issued MEADOWS a warrant card against ECKERT for felony assault. This warrant card was later reduced by John Schoemick with the ECDA office. However, to date, this warrant card remains on MEADOWS Facebook page which has plaintiff's unlisted phone number on it. POLICE gave this woman non-public information and she turned around and blasted it all over line to further harass, annoy, alarm, and defame plaintiff and POLICE refused to file a police report. POLICE failed to properly investigate the attack before falsely arresting plaintiff. At this time, she did not have defendant DIXONS name and A-District POLICE refused to give it to her. They stated she had to FOIL it. Plaintiff tried several times and was unsuccessful. FOIL refused to give the name of this officer.

DIXON and MEADOWS were discussing the George Floyd movement and MEADOWS falsely claimed to DIXON that because ECKERT is white and she is black that she was receiving disparate treatment. Plaintiff has never committed a crime against MEADOWS hence why plaintiff was never charged previously. Plaintiff exerted her legal and lawful rights to mitigate damages between MEADOWS and herself. POLICE, instead of doing their job, ignored plaintiff's lawful attempts to protect her rights and property and claimed plaintiff was in a "tit-for-tat feud" with MEADOWS to deprive her of her legal rights and to allow unlawful acts to continue by all defendants. Due to defendant's reckless and negligent behavior, plaintiff suffered severe injury and damages including physical injury, outstanding medical bills, property damage, undue stress, mental anguish, and was subjected to a relentless and abusive defamatory campaign.

**May 25, 2020:**

Plaintiff filed a complaint through United States Department of Justice. Complaint number 463-BJG. Plaintiff received a generic response that she should deal with the Federal Bureau of Investigations ("FBI"). Plaintiff has reached out to the FBI on several occasions throughout the entirety of the actions complained of. Plaintiff alleges several agencies failed to act and/or failed to uphold their duties as agents of the defendants' STATE OF NEW YORK, CITY OF BUFFALO, and/or COUNTY OF ERIE.

**May 26, 2020:**

Plaintiff tried following up again with Buffalo Common Council. They did not respond.

**May 29, 2020:**

Plaintiff filed a complaint with the New York State Public Integrity Bureau ran and overseen by defendants NEW YORK and JAMES. This complaint was in reference to defendants POLICE failing to take police reports, the complaint about the unknown Lieutenant ignoring carbon monoxide poisoning due to defendant MEADOWS crime, and complaints about defendants BROWN and BASKIN. Plaintiff was assigned intake id: 1-157831072 and did not receive a response.

**June 1 and 2, 2020:**

Plaintiff sent a new notice of non-spoliation to defendant's JOYCE and LOCKWOOD via mail and email. She also sent this request to the Buffalo FOIL dept, and Corporate Council Timothy Ball.

**June 4, 2020:**

Plaintiff filed a complaint with Buffalo Common Council regarding issues raised in this suit. She did not receive a response.

Plaintiff filed a complaint with defendant BROWN regarding issues raised in this suit and did not receive a response.

Plaintiff was given the following email to file a complaint, in which she did "psd@bpdny.org". Defendant MEADOWS brought legal action against plaintiff. This case was assigned to defendant GRISANTI and given Index No. 805300/2020. GRISANTI granted MEADOWS poor person relief, without the approval of the Erie County Attorney. Plaintiff asserts MEADOWS withheld income/savings from her poor person application and defendants knew, or in the exercise of reasonable care should have known, MEADOWS did not fully report her income/savings. Plaintiff asserts she has not been treated fairly and equally in the Supreme Courts, County of Erie, State of New York. Every poor person application she filed was denied, every lawsuit she filed was thrown out, she was not able to move forward pro-se, nobody would sign her order to show cause, and was requested to pay for records that were provided to MEADOWS free of charge.

**June 5, 2020:**

Plaintiff has several videos of MEADOWS hitting her house with her vehicle, causing damage to her siding and gutters. In an attempt to mitigate further damages to plaintiff's home, ECKERT installed plumbing pipes extending from her porch to the end of her property line. Plaintiff also hung up a "NO PARKING SIGN" to express MEADOWS was unwanted on her property and not welcome to trespassing with her vehicle. Defendant MEADOWS sawed the pipes off plaintiff's house while she was at work. Buffalo police filed an incident report but did not follow up.

**June 10, 2020:**

Plaintiff, in an attempt to mitigate further damages to her house, installed a second pipe extending from her porch to the property line. Defendant MEADOWS sawed the second pipe off plaintiff's house while she was at work and loosened the fence post on ECKERTS property damaging the concrete. Plaintiff's daughter broke down into tears as she watched defendant walk down the driveway with the saw from her brother's room and said defendant was coming to kill her. Plaintiff had to arrange for her daughter to be picked up and called the police. Buffalo police filed a criminal mischief report but did not follow up.

By this time, plaintiff reached out to Internal Affairs ("IA"), defendant JOYCE, and Community Police Officer, Anthony LeBraun over fifteen times. Defendant JOYCE refused to return any of her calls and told officer Handsor in IA he was not going to address ECKERTS concerns or complaints. Plaintiff has record of the following phone calls placed to A-District Buffalo Police Dept, which include, but are not limited to: 03/29/2020, 03/30/2020, 03/31/2020, 04/02/2020, 04/03/2020, 05/14/2020, 05/20/2020, 05/21/2020, 05/23/2020, 05/24/2020, 05/26/2020 (phone call history printout).

**June 12, 2020:**

Plaintiff tried to file a formal complaint with IA. Officer Handsor told her she was harassing IA by trying to file a legitimate complaint and she had already spoken with defendant JOYCE and plaintiff cannot file the complaint. IA never allowed plaintiff to formally file a complaint. Plaintiff alleges defendant JOYCE conspired with Officer Handsor to deprive plaintiff of her legal and lawful rights. Plaintiff was injured and damaged due to defendant's actions.

**June 13, 2020:**

Defendant MEADOWS covered plaintiff's cameras, took an unknown object, and cut a 1.5' hole into her siding. Instead of calling 911, plaintiff filed a 311 complaint because every time she

called 911, POLICE and DOE'S (1-23) retaliated against her and refused and/or failed to take a police report to generate a trail and pattern of abuse.  POLICE never came and followed up. Plaintiff tried on five separate occasions to have them take a report for the property damage and they refused. Plaintiff did this verbally and through 311 twice.

**June 15, 2020-June 17,2020:**

Plaintiff attempted to FOIL records she asked to be preserved in the two non-spoliation notices sent to city officials on March 31, 2020, and June 1, 2020, respectively.

Plaintiff emailed RT Maureen Wojtanik requesting the name of an officer from the incident on May 23 (who turned out to be defendant DIXON). RT Wojtanik would not provide his name and stated that it had to be FOIL.

Plaintiff emailed "psd@bpdny.org" and "foil@bpdny.org" requesting the name of defendant DIXON. She did not have defendant DIXON name at this time and it was not discovered until September 03, 2020. Someone from FOIL said they forwarded the email to IA and if plaintiff wanted to file a complaint, she'd have to contact defendant FARLEY with IA.

Plaintiff reached out to FARLEY. She did not receive a response.

**June 17, 2020:**

Plaintiff sent a non-spoliation notice to defendant's JOYCE and LOCKWOOD, Buffalo Police FOIL Dept, and Corporate Council, Timothy Ball. This non-spoliation noticed covered body camera data from the May 20 incident and both incidents on May 23.

**June 18, 2020:**

Plaintiff reached out to Buffalo Common Council.

**June 25, 2020:**

Plaintiff tried to follow up with on her FOIL request to obtain defendant DIXON name. She did

not receive a response. Plaintiff alleges defendants' LOCKWOOD, JOYCE, FARLEY and

RINALDO conspired together to deprive plaintiff of her right to access records maintained by

government agencies.

**June 30, 2020:**

Plaintiff attempted to FOIL the information she sent non-spoliation notices on June 2, 2020 and

17, 2020, respectively. She did not receive a response. Plaintiff alleges defendants'

LOCKWOOD, JOYCE, FARLEY, and RINALDO conspired together to deprive plaintiff of her

right to access records maintained by government agencies.

**July 7, 2020:**

Plaintiff attempted to follow up on her FOIL requests per ss 89(3)(a) of the Freedom of

Information Law. Still no response. Plaintiff alleges defendants' LOCKWOOD, JOYCE,

FARLEY, and RINALDO conspired together to deprive plaintiff of her right to access records

maintained by government agencies.

**July 20, 2020:**

Defendant MEADOWS brought her saw into ECKERT'S backyard, cut the padlock off her shed,

and stole her gardening tools and gas grill. POLICE filed a report after arguing with plaintiff and

telling her she couldn't file one causing plaintiff undue stress and mental anguish.

**August 6, 2020:**

Plaintiff received a response from FOIL. Defendants' POLICE and/or RINALDO lost or

destroyed all evidence she asked them to preserve under New York State law on spoliation of

evidence, except one partial video. These notices were sent electronically and via certified postal

mail to ensure delivery. They were also sent to four different city officials who have access to

those records. RINALDO stated in response to plaintiff's FOIL request, they were only able to retrieve one video from several requested which displayed a pattern of police misconduct, police negligence, lack of training and supervision, and deprivation of property rights. RINALDO has still failed to provide records that were requested in FOIL requests which plaintiff has since appealed. To date, BUFFALO, ERIE, and/or NEW YORK will not release the requested FOIL records to plaintiff.

Plaintiff made a new request under FOIL to receive a copy of forms P-1375 in accordance with Article 6. RINALDO refused her FOIL request and told her she must appeal the original request. However, the original request did not seek form P-1375. RINALDO refused to provide her with P-1375 on August 21, 2020, which she is entitled to under Article 6 of Public Officers Law. Plaintiff alleges defendants LOCKWOOD, JOYCE, FARLEY, and RINALDO conspired together to deprive plaintiff of her right to access records maintained by government agencies.

**August 8, 2020:**

Defendant MEADOWS trespassed in ECKERT'S backyard again. Police filed a report.

**August 12, 2020:**

Plaintiff sent a complaint to defendants' CURTIN and COMERFORD requesting for intervention and to address Unified Development Ordinance. She did not receive a response.

**August 13, 2020:**

Plaintiff emailed ECDA Emilia Rodriguez and notified her of the witnesses from the assault on May 23, 2020.

**August 21, 2020:**

Defendant RINALDO of the FOIL Dept responded stating City Hall is investigating plaintiffs appeal and she has to wait to hear from them. Plaintiff explained to FOIL this is not the same

request that was sent for appeal, but a new request under Article 6 Public Officers Law. They did not respond any further. Plaintiff alleges defendants' LOCKWOOD, JOYCE, FARLEY, and RINALDO conspired together to deprive plaintiff of her right to access records maintained by government agencies.

**August 24, 2020:**

Plaintiff attempted to file a complaint with defendant FARLEY with IA regarding POLICE ignoring the fact her minor children contracted carbon monoxide poisoning due to MEADOWS crime. She also sent videos of defendant DIXON threatening to taze bystanders. She did not hear back from defendant FARLEY.

**August 25, 2020:**

Plaintiff emailed defendant FARLEY a copy of her land survey.

**September 3, 2020:**

Defendant MEADOWS started harassing plaintiff in save-a-lot. POLICE were unable to take a report.

Plaintiff was finally able to obtain the name of the officer that A-District POLICE refused to provide. FOIL failed to give her this information upon several requests. Plaintiff obtained the officers information by seeing him in the police station and asking his name. He was identified as defendant DIXON and plaintiff forwarded the name to defendant FARLEY.

**September 04, 2020:**

Plaintiff requested an emergency restraining order against defendant MEADOWS. This request was made to ECDA Emilia Rodriguez.

**September 19 thru 24, 2020:**

Plaintiff emailed ECDA Milton Gordon several videos per his request. She also sent him her land survey.

A 50-H hearing was conducted for notice of claim issued on or around June 19, 2020.

**September 27, 2020:**

Defendant MEADOWS stole Halloween decorations off ECKERTS porch. Plaintiff filed a 311 complaint where it was just closed. No officials followed-up with her.

**October 15, 2020:**

A restraining order was issued from Buffalo City Court by Honorable Judge Amy Martoche in ECKERTS favor against MEADOWS.

**October 25, 2020:**

Defendant MEADOWS damaged ECKERT'S privacy fence panels in the backyard with her sawzall and cut down her fence post. Defendant then stole the panel that was retrieved by DOE'S (6-7) in May. Plaintiff and her son called 911 three times this day due to nefarious acts by MEADOWS. When defendants' SKRZYNSKI and COSTANTINO arrived, plaintiff had a copy of the signed order of protection from Judge Martoche and videos of defendant sawing her fence and stealing the panel. SKRZYNSKI and COSTANTINO stated that since defendant MEADOWS was "standing on the walkway while sawing up her fence it was a civil matter". They also stated that "her stealing the panel out of my backyard is a civil matter". Plaintiff was told since the order of protection isn't in the system, they could not violate MEADOWS even though plaintiff produced a hard copy of the signed court order. Plaintiff had documented proof including her purchase paperwork from the sale of her house, her survey, her appraisal, and her MLS listing that she owned the fence. SKRZYNSKI, and COSTANTINO refused and/or failed to file a police report or charge defendant MEADOWS for violating the court order. Plaintiff

alleges defendants' SKRZYNSKI and COSTANTINO conspired together in an attempt to
deprive plaintiff of her legal and lawful rights under the United States Constitution. Plaintiff
further alleges SKRZYNSKI and COSTANTINO were under directive by higher ranking
officials to ignore the issues complained of by plaintiff and to fail to uphold local, state, and
federal law. Due to defendant's actions, plaintiff was severely injured and damaged in loss of
quiet enjoyment of her home, deprived of her right to possession and right to control her
property, plaintiff underwent undue stress and mental anguish, and their actions and behavior led
to the continuance of such unlawful behavior by MEADOWS.

**October 26, 2020:**

Defendant MEADOWS parked her car directly in front of plaintiff's sons window and blared the
radio for over an hour; distracting her son from his homework and her contractor with autism
disorder where he couldn't work with the noise. Plaintiff alleges this was done with the intent to
annoy plaintiff and her family which violates the order of protection. Plaintiff's contractors
contacted POLICE and after thirty-minutes or so, were able to get the car radio shut off.
Later this day, POLICE returned with crisis management stating they do not want to violate
MEADOWS for all the violations she has committed, disregarding the restraining order, and
wants us to work it out instead. Plaintiff was not home at the time but had a houseful of
witnesses that POLICE flat out refused to file charges for MEADOWS violating a court order.
This is unlawful compromise and violates the Rules and Regulations of the Buffalo Police
Department Manual of Procedures Chapter IV 4.14.
Plaintiff emailed Milton Gordon additional videos of new events that have arose since May 23,
2020.

Plaintiff tried to setup an appointment with the Mayor or Deputy Mayor by emailing Bernadette Taylor at "btaylor@city-buffalo.com". She did not receive a response.

**October 27, 2020:**

Plaintiff emailed "civil.rights@ag.ny.gov". She did not receive a response.

Plaintiff spoke with Ms. Patton at the Police Commissioners office who said to email her. She did at "dmpatton@bpdny.org".

**November 03, 2020:**

Plaintiff sent a non-spoliation notice to defendants' JOYCE and LOCKWOOD for body camera data from October 25, 2020. She later tried to FOIL this information and was ignored. This request was also sent to Timothy Ball, Corporate Council.

Plaintiff tried following up with Ms. Taylor with the Commissioner of Police. Ms. Taylor emailed plaintiff back requesting her contact information. Once provided, plaintiff never heard from her again.

**November 04, 2020:**

Davette Patton with the Commissioner office emailed plaintiff asking who she was. Plaintiff emailed Davette with her information along with a request to setup a meeting with the Commissioner. She did not receive a response.

Plaintiff tried filing a complaint with the Police Advisory Board. She dealt with Jason Whitaker who ultimately gave her the run around for months and never gave her a resolution to her complaint. Plaintiff alleges defendants' BROWN and BASKIN conspired with Jason Whitaker to deprive her of her legal and lawful rights.

**November 05, 2020:**

Plaintiff followed up with "foil@bpdny.org" regarding the FOIL request she made in June. They did not respond until November 19, 2020 stating she needs to contact Corporate Counsel.

**November 7, 2020:**

Defendant MEADOWS hung harassing tarps directed towards plaintiff on the front and side of her house. Plaintiff filed a complaint, but it was difficult to get the Lieutenant to take the complaint. He said it is not harassment and not a violation of the order of protection so it would be an incident report only. Plaintiff alleges defendants' LOCKWOOD, JOYCE, and FARLEY conspired together to deprive plaintiff of her legal and lawful rights.

**November 8, 2020:**

Defendant MEADOWS trespassed into ECKERT'S yard topless and braless dumping leaves into her backyard. Defendant comes outside topless and braless in front of plaintiffs 5-year-old and 16-year-old son and her other neighbor's two minor children while DOE (7-8) are at plaintiff's house. DOE'S (7-8) do not file trespassing charges after viewing the video and do not charge MEADOWS with indecently exposing herself to four minor children in a public community. DOE'S (7-8) did not uphold the integrity of the order of protection issued by Hon. Amy Martoche. Plaintiff found it offensive for MEADOWS to expose herself to her minor children. Defendant MEADOWS hangs a tarp between her and plaintiff's house stating, "Rachel Eckert is a stalking bitch".

**November 09, 2020:**

Plaintiff emailed new videos/photos to Erie County DA Milton Gordon.

**November 10, 2020:**

Defendant MEADOWS was allowed to publicly defame plaintiff ECKERT during a town meeting held by defendant BUFFALO and Buffalo Common Council. This meeting was

streamed to their respective Facebook account, Buffalo Common Council. What's interesting is that plaintiff has been denied over four times a request to table issues regarding police misconduct and lack of training and supervision yet MEADOWS was allowed to table issues and publicly defame plaintiff in front of potentially millions of viewers.

**November 17, 2020:**

Plaintiff emailed William Matthewson with Corporation Counsel regarding FOIL requests she has been denied by defendant RINALDO.

**November 18, 2020:**

Plaintiff sent a request for FOIL records to defendant RINALDO of the FOIL department. This request was ignored. She did not even receive a confirmation they received her request. This request was also sent directly to the FOIL dept. The FOIL request was for body worn camera data relevant to the October 25 and November 08, 2020 incidents.

Mr. Matthewson replied to plaintiff's email asking for her to resend the appeal request. She emailed the request to Mr. Matthewson. This too, was regarding camera data from October 25 and November 08, 2020.

**December 5, 2020:**

Defendant MEADOWS writes "Like what you see bitch" on the side of her garage facing ECKERTS backyard.

On or around December 05, 2020, defendant MEADOWS was charged with damaging plaintiff's property. Officer Reese, with the A-District Buffalo Police Department took a statement, in the form of a supporting deposition, from plaintiff. This deposition never made it to the file, or disappeared from the file before MEADOWS court date. Plaintiff alleges defendants POLICE, BROWN, BASKIN, JOYCE, FARLEY, and FLYNN conspired together and destroyed

plaintiff's deposition, in an attempt to deprive plaintiff of equal protection of the laws. Plaintiff complains that defendants' actions amount to at least negligence.

**December 08, 2020:**

Plaintiff was cc'd in an email to BIFARO by her contractors, Energy Savings Solutions. This email included a full scope of work as well as complaints by her contractor regarding MEADOWS futile attempts to distract them and harass them while they worked. Plaintiff believes this request made by defendant BIFARO was made in further attempts to harass and annoy plaintiff.

**December 09, 2020:**

Plaintiff tried to follow up with Mr. Mathewson but did not receive a reply.

Plaintiff spoke with Chelsyea Herring who told her to email her concerns.

**December 10, 2020:**

Defendant MEADOWS hung additional tarps viewable from the street directed towards plaintiff saying "bitch" on one and something else on another one. Defendant SALAZAR refused and/or failed to file a violation of order of protection and said the messages are not directed towards plaintiff and if they were, they weren't offensive.

Defendant MEADOWS is on video giving plaintiff the middle finger through her side camera. Defendant SALAZAR stated it is not harassment or offensive behavior and said "if his neighbor had cameras pointing at his house, he'd be pretty mad too". Defendant SALAZAR is being partial. He is well-aware plaintiff's cameras are for self-preservation as they have defendant MEADOWS on video harassing her family on multiple occasions, destroying her property, and stealing her property. SALAZAR filed an incident only report. Plaintiff alleges defendants'

LOCKWOOD, JOYCE, SALAZAR, FARLEY and MEADOWS conspired together to deprive her of her legal and lawful rights.

**December 12, 2020:**

Plaintiff emailed BIFARO and cc'd Thomas Brodfuehrer, Assistant Director Department of Permit and Inspection Services, her concerns of such harassment and annoyance.

**December 15, 2020:**

Plaintiff followed up with her complaint with the Police Advisory Board. Mr. Whitaker stated her case is still under review.

Defendant MEADOWS drilled PVC pipe into plaintiff's fence to hang more offensive tarps directed towards her, violating the order of protection. POLICE refused and/or failed to file charges.

Defendants ERIE and/or FLYNN reduced the felony assault charge against plaintiff and changed it to a misdemeanor assault. The charges were officially filed.

Defendant MEADOWS screamed to a woman a few houses down "hey heffer…..guess what? They charged the bitch (while pointing and laughing at plaintiff's home)".

**December 16, 2020:**

Defendant MEADOWS spray-painted on the new tarp she hung facing plaintiff's window that read "got charges you mad". DOE (9 [plaintiff believes this was defendant SALAZAR, but not 100% sure]) stated the message was not meant for plaintiff and it was not a violation of the order of protection. Plaintiff asserts the evidence in totality shows the message was meant for plaintiff, which included a video of MEADOWS screaming out to the neighborhood that defendants ERIE and/or FLYNN charged plaintiff with assault.

**December 18, 2020:**

Lieutenant Morrow, with A-District Buffalo Police, stated that unless defendant MEADOWS physically assaults plaintiff, they will not be filing any further violations of the order of protection as they would have to charge her with a felony and prove it. Plaintiff attempted to file a complaint with defendant FARLEY as she was in fear of her life. Plaintiff mentioned that Lt. Morrow advised her they will not be upholding the order of protection and tried to file a complaint with FARLEY. He did not respond until January 01, 2021.

**December 22 thru 23, 2020:**

Plaintiff emailed Mr. Mathewson to follow-up on her request to appeal defendant RINALDO'S determination to deny her FOIL requests. Mr. Mathewson said he was working on collecting the requested records.

**December 27, 2020:**

Defendant MEADOWS painted "bitch" on plaintiff's rear window. DOE'S (10-11) refused and/or failed to file a report, not even with an unknown suspect. Plaintiff alleges defendants' BUFFALO, ERIE, LOCKWOOD, JOYCE, DOE'S (10-11), and FARLEY conspired together to deprive plaintiff of her legal rights under the United States Constitution. Plaintiff further alleges defendants were under directive by higher ranking officials, including defendants' BROWN and BASKINS, to ignore the issues complained of by plaintiff and to fail to uphold local, state, and federal law.

**December 31, 2020:**

Defendant MEADOWS, without authorization to do so, extended a metal pole, with a sheet of foil, from her roof to plaintiff's roof in an attempt to annoy and harass plaintiff, and deprive her of her property rights and right to quiet enjoyment. Plaintiff contacted both defendants POLICE and CURTIN due to safety concerns as the metal pole was extending toward electricity wires by

plaintiff's home. Detective Morrow with A-District Buffalo Police said that he did not have a problem with the pole and that MEADOWS was allowed to keep it there, depriving plaintiff of her property rights guaranteed under the Constitution of the United States.

**January 02, 2021:**

Defendant MEADOWS hit plaintiff's home security cameras with a hammer while trespassing on her property. Plaintiff went outside to adjust her cameras so MEADOWS could not damage them again. MEADOWS called POLICE on ECKERT stating ECKERT was harassing her by moving her cameras. Plaintiff was attempting to mitigate any further damages to her property by MEADOWS. Defendant DIXON responded to the call. DIXON again told ECKERT she is a liar and refused to watch ECKERT'S video of MEADOWS hitting her camera with a hammer. Plaintiff complained to DIXON about MEADOWS trespassing on her property and putting unauthorized wooden posts on her property which is damaging her gutters. DIXON told plaintiff that "he did not care what was plaintiff's property, that its stupid, and then told plaintiff he was going to charge her with harassment". Plaintiff was injured and damaged due to defendant's behavior which includes undue stress, property damage, mental anguish, unlawful discrimination and retaliation, loss of quiet enjoyment of her home, and deprived of her right to possession, right to exclude others, and right to control her property.

**January 03, 2021:**

Plaintiff attempted to file a complaint with defendant FARLEY regarding defendants' JOYCE and DOE'S (1-11) refusing to uphold the order of protection.

**January 06, 2021:**

Defendant MEADOWS, without authorization to do so, extended a metal pole with a sheet from her roof to plaintiff's roof in an attempt to annoy and harass plaintiff, and deprive her of her

property rights and right to quiet enjoyment. Plaintiff contacted both defendants POLICE and CURTIN due to safety concerns as the metal pole was extending toward electricity wires by plaintiff's home. Defendants once again said MEADOWS was allowed to keep the pole there, depriving plaintiff of her property rights.

MEADOWS snatched plaintiff's side camera off her house and threw it down the walkway in an attempt to break plaintiff's property, indefinitely depriving her from it. Plaintiff called POLICE and DOE (12) stated that it was impossible for MEADOWS to reach up and grab plaintiff's camera off the side of her house. This is a partial statement as plaintiff was there and DOE (12) was not. DOE (12) did retrieve the camera from MEADOWS. MEADOWS told DOE (12) it was her camera then told DOE (12) she found it in her driveway after DOE (12) fit plaintiff's battery into the camera. DOE (12) returned plaintiff her camera. Plaintiff watched her surveillance and found video of MEADOWS snatching the camera off her house before whipping it down the walkway. Plaintiff brought this footage to A-District Buffalo Police Dept where DOE (12) then agreed to file charges against MEADOWS.

**January 08, 2021:**

Plaintiff attempted to FOIL body camera data from January 02, 2021. This request was ignored.

**January 18, 2021:**

Defendants' DOE (13) and SALAZAR falsely and maliciously arrested plaintiff in an attempt to deprive her of her legal rights. Plaintiff alleges defendants' LOCKWOOD, JOYCE, SALAZAR, DOE (13), and FARLEY conspired together to deprive plaintiff of her legal rights under the United States Constitution. Plaintiff further alleges defendants were under directive by higher ranking officials, including defendants' BROWN and BASKIN, to ignore the issues complained of by plaintiff and to fail to uphold local, state, and federal law.

**January 20, 2021:**

Plaintiff attempted to FOIL body camera data for from January 19, 2021. This request was

ignored.

**January 21 thru 22, 2021:**

Plaintiff attempted to follow up with the Police Advisory Board and raise new concerns of

prejudice and bias within the Buffalo Police Department. Mr. Whitaker advised plaintiff her

complaint is still under review and to be patient. He also stated he would follow-up with IA.

Plaintiff alleges defendant BASKIN coerced James Whitaker into depriving plaintiff of her legal

and lawful rights.

Plaintiff received an email from defendant FARLEY that the investigation into her complaint

was still active.

**February 02, 2021:**

Plaintiff filed a discrimination complaint against defendant DIXON through the New York State

Public Integrity Bureau, ran and overseen by defendant JAMES. Plaintiff was assigned intake id:

1-229125692. Nobody from defendants NEW YORK or JAMES office responded to plaintiff's

complaint.

**February 18, 2021:**

Plaintiff attempted to table questions to Buffalo Common Council regarding violations of the

Buffalo Manual and Procedures. She was denied.

**February 22, 2021:**

Plaintiff discovered defendant MEADOWS is an Erie County Democratic Committee Member.

She filed a complaint with Katherine at the Erie County Democratic Committee regarding

defendant MEADOWS behavior over the last year. She also notified the committee that

defendant MEADOWS sits on an assembly in a District she does not even reside in, which violates their rules. Katherine did not respond.

**February 22 and 26, 2021:**

Plaintiff emailed new videos/photos of incidents to defendant ELMORE.

**February 24, 2021:**

Plaintiff spoke with Jeremy Zellner at the Erie County Democratic Committee regarding defendant MEADOWS behavior towards her family over the last year. She also notified Mr. Zellner that defendant MEADOWS does not live in the Masten District and per the election rules, she cannot represent that District. Mr. Zellner said he did not care and he would not remove her from the committee. Defendant MEADOWS was using defendant WALDENS address to unlawfully vote and sit on the committee. MEADOWS changed her address with the Erie County Board of Elections in January of 2020 to commit this illegal and unlawful act. Plaintiff tried to reach out to Mr. Whitaker regarding concerns she had about political corruption. Mr. Whitaker requested she speak with the ECDA office. Plaintiff tried to do that and was not successful. The ECDA office stated they cannot force defendant POLICE to do their job and unless POLICE do their job, the ECDA cannot do theirs. This is a flat out lie and the ECDA has the power to file charges if there is a victim. In fact, defendant FLYNN invoked this power when he filed charges against Betty Jean Grant and made a public announcement that because there is a victim, he is compelled to charge her. Ironically, the charges were for violations of the New York State Election Laws.

**March 02, 2021:**

Plaintiff attempted for a second time to table concerns of the practices and procedures of POLICE with Buffalo Common Council and was denied.

**March 10, 2021:**

Plaintiff filed a complaint with the Erie County Ethics Board regarding issues raised in this suit.

**March 12, 2021:**

Plaintiff filed a complaint with the Erie County Board of Elections due to defendant Meadow's violating election laws. She also filed a challenge form with the Election Board challenging defendant MEADOWS illegal voter card. The Board of Elections gave plaintiff the run around on this challenge form for over seven months and she eventually gave up trying to follow-up. Plaintiff alleges defendants' HOWARD, BROWN, BASKIN, and FLYNN conspired together in an attempt to deprive plaintiff of her legal and lawful rights. Defendant asserts she contacted the Erie County Sheriffs Office several times throughout the challenge against MEADOWS voter card with proof of MEADOWS legal residence.

**March 17, 2021:**

Plaintiff attempted for a third time to table concerns of the practices and procedures of Buffalo Police Department with Buffalo Common Council. She was denied.

**March 24, 2021:**

Plaintiff emailed defendant FARLEY requesting someone contact her back and intervene with POLICE failing and refusing to uphold an order of protection. By this time, plaintiff has been contacting IA via phone and email for 3 months and haven't received any communications back from them.

**March 25, 2021:**

Plaintiff followed up with the Police Advisory Board regarding her complaints. There is still no resolution at this time.

**March 29, 2021:**

Defendant MEADOWS filed case # 1:21-cv-00449 against plaintiff.

**April 01, 2021:**

New York State Election Board told plaintiff to go to the ECDA office regarding her challenge form being ignored in order to have the election law violations addressed. Plaintiff spoke with Gary Ertel at the District Attorney's office who said to send him documentation on the violations. Plaintiff did so and nothing transpired from it. Interestingly, defendant FLYNN invoked violations of the election laws against Betty Jean Grant but failed to do so with defendant MEADOWS. Plaintiff alleges her concerns and complaints are ignored due to a conspiracy with all defendants, retaliation for first amendment speech and expression, and for filing multiple legal and lawful complaints against all defendants with different regulatory boards.

**April 05, 2021:**

Plaintiff emailed defendant ELMORE more information that was requested for the cases pending against MEADOWS. Plaintiff asserts she has been ready for trial since the charges were filed. When the victim is ready, the people should be ready. Plaintiff alleges defendant ELMORE purposely prolonged the convictions of MEADOWS to allow the charges to be dismissed and thrown out. Plaintiff alleges this was due to a conspiracy between all defendants to deprive plaintiff of her legal and lawful rights under the United States Constitution and other rights. Due to the actions of defendants, plaintiff was severely injured and damaged mentally and financially. Due to ELMORE'S untimely prosecution, MEADOWS had several charges dismissed. Plaintiff has been unable to recover restitution to damages done to her fence, her car, her glasses, video surveillance, etc. The Crime Board Victims will not assist plaintiff in recovering restitution due to the false and malicious charges filed against plaintiff. Plaintiff so far has been unsuccessful in

obtaining reimbursement from damages done by MEADOWS and was told in criminal court that

they're not there to unjustly enrich plaintiff by giving her restitution.

**April 06, 2021:**

Hon. Shannon Heneghan recused herself from criminally prosecuting defendant MEADOWS.

**April 15 and 16, 2021:**

Plaintiff emailed defendant FARLEY regarding her complaint against defendant DIXON.

FARLEY said he would message plaintiff in the near future regarding her complaint.

Hon. Phillip Dabney Jr. recused himself criminally prosecuting defendant MEADOWS.

**April 22, 2021:**

Plaintiff attempted for a fourth time to table concerns of the practices and procedures of POLICE

with Buffalo Common Council. She was denied. Plaintiff alleges defendants conspired together

to deprive plaintiff of certain liberties and equal rights of others.

**May 04, 2021:**

Plaintiff received a letter from defendant FARLEY concluding the complaint against DIXON

stating he was cleared of any wrongdoing. However, FARLEY'S conclusion did not even

address plaintiff's initial complaint and gave a generic response. Plaintiff emailed FARLEY with

questions as to why the complaint lacked any investigation into his actions. FARLEY did not

respond.

**May 11, 2021:**

Plaintiff emailed defendant FARLEY again attempting to get a response as to why he did not

address her complaint properly. He did not respond.

**May 12, 2021:**

Plaintiff contacted Mr. Whitaker with the Police Advisory Board to get assistance with defendant FARLEY not responding to her actual complaint and closing the complaint against defendant DIXON.

Plaintiff attempted for a fifth time to table concerns of the practices and procedures of POLICE with Buffalo Common Council. She was denied.

**May 14, 2021:**

Defendant MEADOWS filed Index No. 806407/2021 against plaintiff for defamation, which she subsequently amended after getting poor person relief to include plaintiff's agents and family.

Plaintiff brought a motion to dismiss under several grounds including, and stressing, abuse of criminal and civil process by MEADOWS. MEADOWS is a professional litigator, a master manipulator, and abuses the processes of the courts to harass, annoy, and alarm several individuals. In fact, MEADOWS has filed six Federal lawsuits since 2010, twenty-one local small claims cases since 1991, and eleven Supreme Court cases since 1993. These cases have all been filed pro-se and in an attempt to abuse the processes of the courts and poor person status.

Plaintiff avers defendants BUFFALO, ERIE, and NEW YORK are well aware of the pattern of abusive practices by MEADOWS and continues to allow her behavior without remand.

Furthermore, there was ex-parte communication on this case July 08, 2021 which no related documents to this hearing were uploaded to NYSCEF nor provided to plaintiff. Plaintiff avers this communication could have prejudiced her in many ways.

**May 25, 2021:**

Plaintiff tried to follow-up with defendant FARLEY regarding her concerns on his handling of the complaint against defendant DIXON. He did not respond. Plaintiff complained to FARLEY that her legitimate complaints are going ignored through his office.

**June 07 and 09, 2021:**

Defendant ELMORE asks for videos/photos that were already previously supplied.

**June 08, 2021:**

Plaintiff tried to follow-up with defendant FARLEY regarding incident number 21-1560571. He did not respond.

**June 15, 2021:**

Plaintiff spoke with TJ brown at Buffalo Common Council regarding her concerns of defendant MEADOWS behavior towards her family for the last 1.5 years. Plaintiff also spoke with TJ regarding defendant MEADOWS unlawfully sitting on the Masten District in which he asked for her to send him documents which she did via email.

**June 21, 2021:**

Plaintiff attempted to file a defamation lawsuit against MEADOWS and others. Index No. 808096/2021.

**June 30, 2021:**

Plaintiff tried to follow-up on her challenge form to defendant MEADOWS voter card. She was told they are looking into it despite having already given them proof of defendant's address.

Plaintiff tried to follow-up with TJ Brown with Buffalo Common Council. She did not receive a response.

Plaintiff also contacted Ulysses Wingo with Buffalo Common Council. She did not get a response.

**July 02, 2021:**

Plaintiff attempted to file a nuisance suit against MEADOWS. This instant action was assigned to defendant GRISANTI. Ultimately, GRISANTI refused to sign plaintiffs order to show cause

and told her lawyer, Jason DiPasquale, on Index No. 805300/2020 that she should get an attorney to represent her. She was not allowed to move forward pro-se nor would GRISANTI sign her poor person application; despite signing MEADOWS poor person application and order to show cause. Plaintiff alleges this was due to first amendment retaliation and conspired with defendants BROWN and BASKIN to deprive plaintiff of her legal and lawful rights under the United States Constitution.

**September 17, 2021:**

Defendant MEADOWS hung a tarp pointed towards plaintiff's backyard and spraypainted the word "bitch" on it. Plaintiff contacted POLICE as this is considered offensive behavior towards her. DOE (14[plaintiff believes this may have been defendant SALAZAR, but not 100% sure]) watched the video and stated it was not meant towards plaintiff and would not take a report, causing plaintiff undue stress and mental anguish.

**September 19, 2021:**

Defendant Meadows sweeps trash into plaintiff's front yard while giving plaintiff the middle finger. MEADOWS then goes back to the tarp with the word "bitch" spray-painted on it, and spray-paints the word "ugly" over "bitch". Plaintiff attempted to report unwanted communication and offensive behavior to POLICE, in which DOE (15) stated it is not offensive, not meant towards plaintiff, and not a violation of the order of protection. Despite the fact plaintiff has videos of MEADOWS conduct and that plaintiff finds it harassing, annoying, alarming, and offensive.

**September 20, 2021**: Plaintiff called 911 for help as defendant MEADOWS was threatening to assault plaintiff and her son. DOE (16) arrived and briefly spoke with plaintiff where they refused to watch videos of MEADOWS threatening to assault plaintiff while standing at the edge

of plaintiff's driveway. DOE (16) spoke with witnesses Jody Wolfson and Alyssa Wolfson
regarding the incident. DOE (16) then, without probable cause, falsely charged ECKERT with
possession of a chemical or biological weapon and criminal contempt in the second degree.
Plaintiff asserts this was done maliciously with the intent to cause plaintiff significant harm.
MEADOWS was charged with violating an order or protection. However, at arraignment,
ECKERT'S order of protection was missing from the New York State registry and the judge
threw the charges out claiming they were dubious. The Assistant District Attorney ("ADA")
refused to take a copy of the order of protection in court and they refused to re-file the charges.
MEADOWS posted defamatory posts to plaintiff's business pages on yelp, google, and
Facebook in an attempt to unlawfully contact, harass, and annoy plaintiff. DOE (17) refused
and/or failed to file a report and said she was allowed to post because they are considered "third-
parties", causing plaintiff undue stress and mental anguish. This was despite the fact plaintiffs
order of protection prohibited third-party contact.

**September 21, 2021:**

Plaintiff was advised to email ADA Justin Wallens and request a modification to the order of
protection. She did and it was denied.

**September 23, 2021:**

Plaintiff was advised to email ADA James Harrington videos regarding the incident from
September 20, 2021.

MEADOWS posted defamatory posts concerning plaintiff on her google page in an attempt to
harass, annoy, and alarm plaintiff. DOE (18) refused and/or failed to file a report saying it didn't
violate the order of protection and she was allowed to do it because google is considered a
"third-party", causing plaintiff undue stress and mental anguish.

**October 06, 2021:**

Defendant OGDEN recused herself from Index No. 808096/2021 due to her familial relation to MEADOWS.

**October 12, 2021:**

Plaintiff attempted to file violations of the order of protection against MEADOWS at A-District Buffalo Police Dept. RT Schneider would not let her file a report and plaintiff had to call 911 to the station to be able to speak with an officer.

**October 13, 2021:**

Plaintiff spoke with defendant ELMORE regarding several defamatory posts MEADOWS made on plaintiff's business websites. DOE (19) would not allow her to file charges and said it did not violate the order of protection. Albeit, every post MEADOWS made tagged Mobile Tax and plaintiff which is unwanted communication.

**October 14, 2021:**

Plaintiff tried to reach out to defendant FARLEY regarding issues with defendant POLICE. He did not respond.

**October 16, 2021:**

Plaintiff emailed ADA Thomas Comfort regarding CD#21-1560571. She did not receive a response.

**October 18, 2021:**

Plaintiff contacted POLICE to obtain the incident number from the reports made on October 12, 2021. RT Wojtanik advised plaintiff per Detective Manly, they were not taking any report for the incidents complained of.

Plaintiff attempted to reach out to defendant FARLEY again regarding defendant POLICE refusing to uphold a valid order of protection and stressed how it is retaliation. He did not respond.

Plaintiff sent a new complaint to the Buffalo Police Advisory Board. She did not receive a response.

**October 25, 2021:**

Defendant PANEPINTO, without cause or authority, threw out Index No. 808096/2021 causing significant prejudice to plaintiff. Plaintiff alleges this was done maliciously to deprive plaintiff of her due procedural rights, to retaliate against her for her first amendment speech, and to deprive her of her legal and lawful rights under the United States Constitution. Plaintiff further alleges defendants BROWN, BASKIN, OGDEN, and PANEPINTO conspired together to deprive plaintiff of her rights guaranteed by the Constitution of the United States. Plaintiff asserts she has documentary evidence to prove this which includes electronically filed documents on Index No: 808096/2021 and research which shows plaintiff was treated differently than fifteen other pro-se litigants by defendant PANEPINTO, including poor person relief granted to defendant MEADOWS on Index No: 000013/2021. Plaintiff asserts she is not being provided equal protection and equal rights provided by law.

Plaintiff spoke with an advocate Tara at the Justice Center who advised her to contact the ECDA. She contacted defendant ELMORE as that's who she's been working with for almost a year. Plaintiff was told the cases were being turned over to ADA Thomas Comfort.

Lastly, and what plaintiff finds eerily strange, the same day PANEPINTO disposed of plaintiff's defamation claim on Index No. 808096/2021, Hon. Dennis Ward signed defendant MEADOWS

poor person application on Index No. 806407/2021 in which the courts did not even get

permission granted from the Erie County Attorney for MEADOWS to proceed.

Plaintiff recently discovered PANEPINTO sat in on an article 78 proceeding filed by defendant

MEADOWS on April 12, 2021, assigned Index No. 000013/2021. Interestingly, PANEPINTO

granted MEADOWS poor person relief.

**October 27, 2021:**

Plaintiff emailed the civil rights division, overseen by defendant JAME'S office. She did not

receive a response.

**November 01, 2021:**

Plaintiff, through her defense attorneys Mayada Osman and Crystal Wentz, discovered for the

first time the witness statements from May 23, 2020 never made it to the ECDA Office and the

names of the witnesses provided by defendants' DIXON and GRIFFIN were of no residents

within this area.

Plaintiff attempted to file a complaint with defendant FARLEY for discrimination and for

DIXON destroying evidence. He would not contact her back. Plaintiff left her concerns on

FARLEY's voicemail for over a week straight. He would not return any of her calls. DIXON'S

actions caused immeasurable and irreparable damage and injury to plaintiff including a relentless

and abusive defamatory campaign against her by defendant MEADOWS.

**November 02, 2021:**

Plaintiff emailed defendant ELMORE with new photos to forward to Thomas Comfort.

**November 03, 2021:**

Plaintiff was told by a one "Trina Curcio" that she had "a high up person talk to him (BROWN)

and he said she (MEADOWS) only does this when she is off her meds. He was then told to help

lock up his animal because it's disturbing others". It is confirmed, and can be confirmed, MEADOWS was on Topamax and Gabapentin at the times arising out of this suit. Studies show gabapentin has side effects which cause delusions and mood changes. Plaintiff avers BROWN cared more about his campaign and winning it than the safety of his citizens.

**November 05, 2021:**

Plaintiff filed a motion to reconsider and recuse to defendant PANEPINTO, providing several reasons why she should have recused herself.

**November 09, 2021:**

PANEPINTO recused herself claiming "she had knowledge of disputed evidentiary facts of the proceeding". Plaintiff was financially harmed and damaged due to PANEPINTO'S unethical and unlawful behavior. Plaintiff recently discovered this knowledge possibly came from an article 78 proceeding filed by MEADOWS and assigned to PANEPINTO. Plaintiff asserts an individual is assumed innocent until proven guilty by a court of law.

**November 10, 2021:**

Defendant GRISANTI'S law clerk, Douglas Curella contacted plaintiff regarding a motion to reconsider on Index No. 808096/2021. He asked if she wanted GRISANTI to hear her motion and if another Judge told her the case lacked merit, if she would drop it. Plaintiff told Mr. Curella she would get back to him on that. Plaintiff alleges defendants BROWN, BASKIN, OGDEN, PANEPINTO and GRISANTI conspired together in an attempt to deprive ECKERT of her legal and lawful rights under the United States Constitution.

Prior to speaking with Mr. Curella, Jason DiPasquale contacted plaintiff and told her another Judge could not listen to her motion to reconsider and she'd have to appeal the decision. He called her to tell her the case was transferred to GRISANTI after PANEPINTO recused herself.

**November 12, 2021 thru November 18, 2021:**

Plaintiff called and left messages for Tony LeBraun with the community police officers for City of Buffalo Police Department. He did not return any of her calls. This is the same experience she received with Mr. LeBraun back in 2020 when this all began and she left him twelve messages over a period of almost 6 months. She did not receive one phone call back.

**November 15, 2021:**

Defendant MEADOWS, for the second time, started an uncontained fire directly behind plaintiff's newly installed fence. Plaintiff called the fire department and before the fire department arrived, defendant put the fire out. Plaintiff asked the City of Buffalo Fire Department to escort her to the side of the home as there is an order of protection and ECKERT feared for her safety. Defendant MEADOWS threatened to "beat ECKERT'S ass" if she was escorted to check for damages. ECKERT had this on video-tape and called for POLICE assistance. Upon arrival, DOE (20) refused to do anything about MEADOWS threatening to assault plaintiff while she is protected under an order of protection. These ignorance's is what ultimately led to MEADOWS assaulting plaintiff twice in 2022.

**December 15, 2021:**

Defendant MEADOWS opened a package of plaintiff's that was accidentally delivered to her home. She removed several items out of the package.

**December 16, 2021:**

Plaintiff filed a complaint with the New York State Office of Inspector General regarding issues arising in this suit. Complaint #D077-00D-2021. The OIG stated that her complaints might be more appropriately addressed with the ECDA. At this time, plaintiff has tried for almost two years to address these issues with the ECDA and they refused to speak to her without a lawyer.

The lawyers she had assigned to her were through Legal Aid and they continuously reminded her they were there to defend her and could not help with her cases against MEADOWS. Plaintiff was practically barred from being able to speak with the ECDA regarding the cases against MEADOWS.

Plaintiff filed a complaint with the United States Dept of Justice civil Rights Division, report number 123330-RDX.

**December 17, 2021:**

Plaintiff contacted POLICE to leave messages for Officer Reed and a Lieutenant. During this call, RT Wojtanik told plaintiff to "take her cameras down if she wanted MEADOWS to stop harassing her". RT Wojtanik advised plaintiff a Detective was reducing charges against MEADOWS. Plaintiff requested a call back from the Lieutenant.

**December 18, 2021:**

Plaintiff contacted POLICE as MEADOWS did not attempt to return the package to sender and Fedex tried to call defendant on two occasions. DOE (21) stated MEADOWS accidentally opened the package, despite the fact several items were missing from the box. Plaintiff ended up having to return the item for a replacement.

Plaintiff also contacted POLICE to speak with a Lieutenant about the reduced charges against MEADOWS. RT (possibly Howell) spoke with LT. Morrow, in which he stated unless MEADOWS physically assaults plaintiff, they will not be filing any charges against her.

**December 30, 2021:**

Defendant MEADOWS trespassed onto ECKERT'S property and stole plaintiff's roofer's tools out of her front lawn. Plaintiff and her contractor contacted POLICE. Upon arrival, defendants' DOE (22-23) refused to order MEADOWS to return the tools. The two women officers

unlawfully compromised with plaintiff's contractor and told him "Let MEADOWS keep the tools in exchange for not having to clean up their mess". Plaintiff avers there was no mess to clean-up and the officers deprived plaintiff's contractors of their legal and lawful property. Plaintiff asserts there has been an ongoing pattern of POLICE unlawfully compromising between ECKERT and MEADOWS instead of upholding the integrity of the law. ECKERT was protected under an order of protection and POLICE continuously allow MEADOWS to trespass and damage her property.

**December 31, 2021:**

A third-party filed a new complaint with the Buffalo Community Police Advisory Board on behalf of plaintiff. Plaintiff followed-up on her complaint.

Plaintiff attempted to get protection under New York State red flag laws and was denied.

**January 03, 2022:**

Chairwoman and defendant WALDEN responded to plaintiff's complaint which she stated she would reach back out to her after their 1st board meeting. Plaintiff immediately emailed the third-party who helped her file the new complaint, and advised WALDEN is good friends with defendant MEADOWS. Plaintiff stressed her concerns that she would not get help, just as she hasn't been, due to MEADOWS partisan interest with BROWN and BASKIN and her familial status to defendant OGDEN.

Plaintiff's complaint contained concerns of violations of the Buffalo Police Department Manual of procedures which included, but were not limited to:

Chapter 2-25 10.3

Chapter 3-7 1.2

Chapter 3-13 2.0

Chapter 3-14 3.0

Chapter 3-16 3.7

Chapter 3-59 12.0

Chapter 5-5 1.0

Chapter 6-8 4.0

Chapter 8-13 3.5

Chapter 17-7 1.0

Chapter 17-8 1.5

Chapter 7-14 2.4

Rules and regulations 27 4.14

Rules and regulations 30 6.1

Rules and regulations 32 7.3

Plaintiff alleges defendant BASKIN coerced WALDEN into ignoring plaintiff's complaint,

denying her any type of resolve or justice.

**January 20, 2022:**

City of Buffalo Permits and Inspections Dept sends plaintiff a letter attempting to get her to

make modifications to her gutters. These gutters were newly installed in December of 2021 and

were installed to code. Plaintiff alleges defendants COMERFORD, CURTIN, and MYERS are

retaliating against plaintiff due to her previously complaints and attempting to harass her.

**March 10, 2022:**

Defendant GRISANTI, through an order and decision, ordered plaintiff to immediately stop

posting content between MEADOWS and ECKERT, to social media. Every single post

ECKERT made to social media was underlying the corruption she has experienced due to

MEADOWS relationships with BROWN, BASKIN, and OGDEN. In addition to attacking plaintiffs first amendment right, GRISANTI went against common law and granted MEADOWS an easement on plaintiff's property, furthering financial harm to plaintiff. GRISANTI went off the record during trial between MEADOWS and ECKERT and accused ECKERT of malice, despite ECKERT'S entire testimony stating otherwise.

Plaintiff left messages at the New York State Attorney General's office, Erie County complaint hotline, and the Erie County Legislatures Office. She did not receive a callback from anyone.

**March 11, 2022:**

An Erie County Grand Jury dismissed the following charges against plaintiff due to lack of probable cause: criminal possession of a chemical weapon or biological weapon in the first degree and criminal contempt in the second degree.

**March 16, 2022:**

Plaintiff emailed the civil rights division, overseen by defendant JAME'S office, a complaint of what has been ongoing for the last two years. She did not receive a response. Plaintiff asserts she has both emailed and used the online complaint forms for the civil rights department for two years complaining of the events complained of in exhibit A. JAME'S refused and/or failed to intervene and/or provide any remedy to plaintiff.

**March 17, 2022:**

Defendant MEADOWS battered Plaintiff in Buffalo City Small Claims Court in front of Magistrate Penny Wolfgang and an unknown Bailiff. Plaintiff was escorted to her vehicle by two Court Officer personnel for safety. She was not allowed to file a police report. The ECDA office refused and/or failed to file charges despite being guaranteed plaintiff had an order of protection in place.

**March 25, 2022:**

Defendant MEADOWS refiled Index No. 806407/2021 under a new Index No. 803580/2022 within days of 806407/2021 being dismissed. Plaintiff alleges New York Unified Court System is allowing frivolous and baseless lawsuits to be filed against plaintiff to cause significant harm and financial damage.

**April 06, 2022:**

Plaintiff was advised to email Erika Webb, Court clerk to obtain name of Bailiff and Magistrate on March 17. Plaintiff was provided the Magistrate name and was advised she'd be provided an update on the name of the Bailiff after their review. To date, she has not been provided his name nor has she been allowed to pursue any charges.

**April 12, 2022:**

Plaintiff contacted the Buffalo Offices for the New York State Attorney Generals Office. She spoke with Attorney General Karen Davis and asked for the proper complaint forms to lodge a complaint against her local police department. Karen told plaintiff they do not handle complaints against officers and she would have to contact the New York State Inspector General. Plaintiff contacted the Inspector General, where they advised, she does indeed need to go through the Attorney General. Plaintiff contacted the Attorney General back where Karen then agreed to send her a copy of the complaint forms.

**April 12, 2022:**

Plaintiff issued the Erie County Attorney, Hon. Dennis Ward, and Hon. Mark Grisanti letters opposing defendant MEADOWS multiple requests for poor person as she was willfully withholding income and abusing the process of the courts in an attempt to significantly harm plaintiff. She did not receive a response. Plaintiff resent this opposition on May 27, 2022.

**April 21, 2022:**

Plaintiff made a request to Kelly Rinehart, court reporter for defendant GRISANTI, to obtain the same copies of the trial transcript that were provided to MEADOWS, free of charge as well. Ms. Rinehart stated she would not provide them to plaintiff free of charge as well and she would have to pay $151.00 to obtain the same copies of the transcript she provided to MEADOWS. Plaintiff asserts she is not being provided equal treatment in the Supreme Courts, County of Erie, State of New York.

**May 02, 2022:**

Defendant MEADOWS assaulted plaintiff in front of her house. She was charged with the following charges: assault in the third degree, criminal mischief in the third degree, and criminal contempt in the first degree: telephones. Plaintiff asserts there was in no way, shape, or form a telephone involved in this incident.

**May 04, 2022:**

Plaintiff filed a discrimination complaint with the New York State Division of Human Rights against defendant DIXON. Plaintiff was advised they do not handle complaints of discrimination in law enforcement agencies and plaintiff has to deal with IA. Plaintiff asserts she has attempted to file a complaint on numerous occasions with defendant FARLEY regarding discriminatory and retaliatory acts by DIXOPN, and FARLEY would not take a complaint nor even contact ECKERT regarding her concerns. FARLEY'S decision to refuse and/or fail to take plaintiff's complaint injured and damaged plaintiff with undue stress and mental anguish.

**May 09, 2022**:

Plaintiff attempted to file a lawsuit against MEADOWS for a continued defamation campaign which financially crippled plaintiff. This case was assigned to Index No. 805547/2022.

**May 11, 2022:**

Defendant SIWEK threw out Index No. 805547/2022 and did not provide a reason for her decision. Plaintiff asserts this was done maliciously with an attempt to deprive plaintiff of her legal and lawful rights under the United States Constitution. Plaintiff further alleges defendants' BROWN and BASKIN conspired with SIWEK in an attempt to deprive plaintiff of her legal and lawful rights under the United States Constitution. Plaintiff asserts she has documentary evidence to prove this which includes electronically filed documents on Index No: 805547/2022 and research which shows plaintiff was treated differently than eleven other pro-se litigants by defendant SIWEK since 2015. Plaintiff asserts she is not being provided equal protection and equal rights provided by law. Due to defendant's actions, plaintiff has been injured and damaged mentally and monetarily.

**May 12, 2022:**

Plaintiff filed a complaint with the United Stated Dept of Justice in the civil rights division, report number 160271-SQH regarding discrimination and retaliation by defendant DIXON. The DOJ stated they do not enforce the situation described to them and provided the contact information for the American Bar Association and Legal Service Corporation. Plaintiff was further notified that her complaint should be sent to the IA Division. Plaintiff asserts she has attempted to reach out to defendant FARLEY regarding discrimination and unlawful retaliation against DIXON for over a year. FARLEY refused and/or failed to take a complaint from plaintiff. It appears, by reference of several regulating agencies, that IA is the appropriate department in charge of plaintiff's legal and lawful complaints. Due to defendant's actions, plaintiff was severely injured and damaged as a result.

**May 27, 2022:**

Plaintiff resent her letter opposing defendant MEADOWS poor person relief for the reason stated above. Plaintiff finds it interesting that every case MEADOWS has filed was allowed to go through, whether she understood the application of the CPLR or not, and every last suit plaintiff attempted to file was immediately dismissed severely damaging plaintiff.

**June 17, 2022:**

Hon. Carrie Marie Phillips recused herself from small claims SC-000336-21/BU due to a conflict between her and defendant MEADOWS.

**June 23, 2022:**

Plaintiff attempted to report several violations of the order of protection which include unwanted contacted against defendant MEADOWS and MEADOWS unlawfully recording plaintiff's minor son in his backyard with his shirt off. This was due to a recommendation by Christine with the Erie County Probation Department. Plaintiff spent almost an hour at A-District Buffalo Police Department where DOE (12) argued with plaintiff stating she could not file charges. Eventually, DOE (12) agreed to take a report after plaintiff cited violations of the Buffalo Police Manual and Procedures and threatening to have to visit another police station to take the report. To date, plaintiff has not been contacted by a detective.

**July 06, 2022:**

Index number 805547/2022 filed by plaintiff was restored.

**July 07, 2022:**

The following charges were dismissed in plaintiff's favor: petit larceny, criminal mischief, and assault in the second degree.

**July 13, 2022:**

Plaintiff spoke with ADA William Shapansky who told plaintiff he was not allowed to speak with her. Plaintiff advised Mr. Shapansky that all charges against her were dropped and there shouldn't be any further conflicts of interest. Mr. Shapansky stated when he received the file, he received an email from his Bureau Chief stating they're not to speak with ECKERT without her civil lawyer present because she filed a lawsuit against the DA office. Plaintiff asked Mr. Shapansky when he received the email and he stated he did not know. The Erie County DA office has been refusing to speak with plaintiff since somewhere around November of 2021. Prior to that, plaintiff was in constant contact with defendant ELMORE and was even able to work with an advocate by the name of Chelsyea Herring. When the ECDA office started refusing to speak with plaintiff without her criminal lawyers present, they claimed it was due to a conflict of interest because they were prosecuting plaintiff on cross-complaints. What plaintiff finds interesting, is that the ECDA office had been in contact without her lawyers present from the day they officially charged plaintiff on December 05, 2020 until November 02, 2021. The DA did not care for eleven months that they had been speaking to plaintiff without any legal representation available, did not advise plaintiff she needed representation available, and allowed plaintiff to freely discuss matters regarding her and defendant MEADOWS with ELMORE.

**July 14, 2022:**

Hon. Jenelle Faso recused herself from small claims SC-000336-21/BU due to a conflict between her and defendant MEADOWS. She did not give the reason as to why. Plaintiff asserts she has requested on numerous occasions to defendants BUFFALO, COUNTY, NEW YORK personally, and through her attorneys Mayada Osman, Crystal Wentz, and Jason DiPasquale. She was told she did not have a valid enough reason for the courts to grant her request. How many judges between City and Supreme Court does the plaintiff need to go through before defendant

ERIE and/or NEW YORK gives her a change of venue to have access to fair and equitable

justice of the law?