**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

Rachel Eckert,

       Plaintiff,

    vs.

City of Buffalo, et al,

       Defendant.

Case No.: 1:22-cv-00540

**PLAINTIFF'S RICO STATEMENT**

# I.   INTRODUCTION

Plaintiff moves this Court to label the City of Buffalo, the State of New York, and the County of Erie criminal enterprises involved in enterprise corruption, and to label the individual Defendant's named in this suit as an association in-fact enterprise. Plaintiff alleges the City of Buffalo, the State of New York, and Erie County, through their agents, employees, and/or servants participated in the following offenses under RICO: conspiracy to violate the Hobbs Act, evidence tampering, extortion, fraud, obstruction of justice, public corruption, and victim/witness intimidation. This unlawful conduct violates 18 U.S.C. § 1961 and 18 U.S.C. § 1962 (c), and (d).

These prohibited acts are continuous and interrelated, meant to harass, intimidate, and injure the Plaintiff, both personally and professionally, which affected interstate commerce. The members of the enterprises intended to commit these acts knowing they were illegal. Plaintiff alleges the common interest of each enterprise was to deprive her of her rights and property.

# II.  BACKGROUND

Plaintiff commenced this instant action seeking relief for ongoing violations of her Constitutionally protected rights. Since the filing of this suit, Plaintiff has suffered further injury by officers of

the City of Buffalo and Erie County. Plaintiff feared this behavior would get worse after filing this suit and asked for immediate relief by way of injunction. *See* Amd. Compl. ¶ 1.

### III. ARGUMENT

### RICO

### 18 U.S.C. § 1962(C)

The Plaintiff avers the allegations contained in the preceding paragraphs, the Second Amended Complaint, and Second Amended Timeline, and incorporates them as if set forth at length herein.

The Defendants, April Baskin ("BASKIN"), Frank BiFaro ("BIFARO"), Byron Brown ("BROWN"), James Comerford ("COMERFORD"), Timothy Curtin ("CURTIN"), Corey Dixon ("DIXON"), Michael Farley ("FARLEY"), Melissa Kurdziel ("KURDZIEL"), Carolette Meadows ("MEADOWS"), Sean Myers ("MYERS"), Jeff Rinaldo ("RINALDO"), Jacob Salazar ("SALAZAR"), and Denise Walden ("WALDEN") (collectively, the "RICO Defendants") are all "persons" within the meaning of 18 U.S.C. § 1961(3) and make up the association in-fact enterprise.

The Buffalo Common Council Enterprise ("BCC"), City of Buffalo Enterprise ("BUFFALO"), County of Erie Enterprise ("ERIE"), and State of New York Enterprise ("NEW YORK") are all "persons" within the meaning of 18 U.S.C. § 1961(3). See, e.g. *United States v. Parise,*

159 F.3d 790, 795 (3d Cir. 1998); *United States v. McDade*, 28 F.3d 283, 295-96 (3d Cir. 1994).

### The RICO Enterprise(s)

At all relevant times, the RICO Defendants conducted the affairs of an association in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4). The association in-fact Enterprise collaborated with the BCC, BUFFALO, ERIE, and NEW YORK Enterprises with the common goal of injuring the Plaintiff.

It is well-established in law, that "the existence" of an association-in-fact is oftentimes more readily proven by 'what it **does** rather than by abstract analysis of its structure';" and that proof of various racketeering acts may establish the existence of the enterprise. *United States v. Coonan*, 938 F.2d 1553, 1559-61 (2d Cir. 1991) cert. denied, 503 U.S. 941 (1992). *See also United States v. Jones*, 455 F.3d 134, 144-45 (2d Cir. 2006).

The members of the Enterprise are a group of persons associated together for the common purpose of carrying on an ongoing enterprise; specifically, the Enterprise(s) had a common, unlawful and unconstitutional goal of corruptly and wrongfully violating Plaintiff's right to life, liberty, and property, impeding her ability to access the courts, and otherwise sabotaging her professional career

104 through deceptive, criminal, and fraudulent means. The
105 actions undertaken by the RICO Defendants in
106 furtherance of this goal were intended to inflict the
107 type of injury and harm suffered by the Plaintiff (the
108 "victim").

109    The Enterprise(s) were formed as early as March
110 2020, when MEADOWS first deprived the victim of her
111 property rights and began conspiring with BUFFALO,
112 ERIE, and NEW YORK through their agents, employees,
113 servants, and/or officers, and remains ongoing and
114 continuing to this present day.

115    At all relevant times, the Enterprise(s) has had a
116 longevity sufficient to permit the RICO Defendants to
117 pursue the Enterprise's purpose. Indeed, the
118 Enterprise's conduct remains ongoing as the RICO
119 Defendants continue to perpetuate their fraudulent
120 scheme by spreading disinformation, harmful lies, and
121 false narratives concerning the Plaintiff in
122 furtherance of their attempts to damage her reputation.
123 In addition, given the fact MEADOWS is well connected
124 and has family working for the BUFFALO and NEW YORK
125 Enterprise's, such as JSC Jeannette Ogden and Ada
126 Hopson-Clemons, there is significant likelihood that
127 the Enterprise's racketeering conduct will repeat in
128 the future, including but not limited to, obstruction
129 of justice.

130    The Enterprise(s) is, and at all relevant times
131  was, a continuing unit(s) that functioned with a common
132  purpose and had an ascertainable structure for carrying
133  out its objectives. The Enterprise(s) has been
134  structured to operate as a continuing unit(s) to
135  accomplish the common goals and purposes of its scheme.

136    At all relevant times, each of the RICO Defendants
137  were aware of each other's conduct in furtherance of
138  the scheme and were knowing and willing participants in
139  that conduct. The RICO Defendants had communications
140  amongst themselves for the purpose of orchestrating,
141  coordinating, and carrying out their unlawful actions.

142    Since the Enterprise(s) activities had a
143  significant impact on the victim's business, the
144  Enterprise(s) affected interstate commerce.

145  Plaintiff asserts the City of Buffalo is its own
146  separate enterprise.

147    Plaintiff asserts the County of Erie is its own
148  separate enterprise.

149    Plaintiff asserts the Buffalo Common Council is its
150  own separate enterprise.

151    Plaintiff asserts the State of New York is its own
152  separate enterprise made up of members of the Erie
153  County Supreme Court including Mark Grisanti, Donna
154  Siwek, Catherine Nugent-Panepinto, and Jeanette Ogden.

155    Plaintiff asserts the members of the association-
156  in-fact have various relationships between them and

157  with members of the BCC, BUFFALO, ERIE, and NEW YORK
158  Enterprises. For ex. MEADOWS is the cousin of JSC
159  Jeannette Ogden and WALDEN is claimed to be the sibling
160  of MEADOWS. Plaintiff asserts MEADOWS provides
161  political career services to BROWN, BASKIN, and other
162  non-party politicians. RICO Defendant's BROWN, BIFARO,
163  DIXON, FARLEY, & RINALDO are agents of BUFFALO and
164  members of the association-in- fact. RICO Defendant's
165  MEADOWS and WALDEN were agents of BUFFALO and are
166  members of the association-in-fact-enterprise. RICO
167  Defendant BASKIN is an agent of ERIE and a member of
168  the association-in-fact. The Defendants share the same
169  social relationships and affiliations in groups like
170  the Erie Co. Democratic Committee, Grassroots of
171  Buffalo, Unity Coalition Inc, the Working Family
172  Parties, The Buffalo School Board, and several others.
173  This type of involvement and activism by MEADOWS
174  threatens public trust in the courts and our democracy.
175  MEADOWS was a member of the Erie County Democratic
176  Committee and plays an active role in political
177  organizations. MEADOWS ran BROWN'S social media
178  campaign and illegally sat on the Masten District
179  Assembly which BCC was aware of.

180      The inability of a corporation to operate except
181  through its officers is not an impediment to § 1962(c)
182  suits.

183                      **PREDICATE ACTS**

184   Section 1961(1) of RICO also provides that
185 "racketeering activity" includes any act indictable
186 under 18 U.S.C. § 1343 (related to wire fraud); 18
187 U.S.C. § 1503 (related to obstruction of justice); 18
188 U.S.C.  18 U.S.C. § 1509 (related to obstruction of
189 justice); § 1512 (related to obstruction of justice);
190 and 18 U.S.C. § 1951 (relating to interference with
191 interstate commerce). As set forth herein, in
192 furtherance of their scheme to harm the Plaintiff, her
193 reputation and business, the RICO Defendants engaged in
194 numerous acts in violation of 18 U.S.C. § 1343, 1503,
195 1509, 1512, and 1951.

196   Each RICO Defendant has conducted and participated
197 in, directly or indirectly, the management, conduct,
198 and/or operation of the Enterprise(s) and its affairs
199 affairs through a pattern of racketeering activity
200 including acts indictable under 18 U.S.C. § 1343, 1503,
201 1509, 1512, and 1951.

202   The RICO Defendants have consistently and regularly
203 committed acts of racketeering activity spanning from,
204 at least, March 2020 through, at a minimum, January 11,
205 2023. These multiple acts shared a common or related
206 purpose, goal, result, participants, victims, and
207 methods of commission.

208   Beginning on or around March 28, 2020, the RICO
209 Defendants engaged in a wide-ranging scheme to
210 unlawfully steal the Plaintiffs property and deprive

211  her of her constitutional right to life, liberty, and
212  property.

213      Beginning on or around May 23, 2020, the RICO
214  Defendants engaged in a wide-ranging scheme to concoct
215  a false narrative that the Plaintiff was racist and
216  assaulted MEADOWS.

217      The RICO Defendants, through their deceptive and
218  illegal conduct intended to mislead law enforcement,
219  the media, and the public at large through the spread
220  of disinformation and fraudulent claims; to unlawfully
221  obtain confidential and sensitive data that could be
222  falsified and weaponized against Plaintiff; and to
223  obstruct and falsely provoke criminal investigations
224  against the Plaintiff.

225      In furtherance of this scheme, the Defendants
226  committed multiple related acts, each of which
227  constitutes an act of racketeering activity, and which,
228  collectively, constitute a pattern of racketeering.

229                    **RICO COUNT I**
230                  **18 U.S.C. § 1343**
231                     **Wire Fraud**

232      Whoever, having devised or intending to devise any
233  scheme or artifice to defraud, or for obtaining money
234  or property by means of false or fraudulent pretenses,
235  representations, or promises, transmits or causes to be
236  transmitted by means of wire, radio, or television
237  communication in interstate or foreign commerce, any

238 writings, signs, signals, pictures, or sounds for the
239 purpose of executing such scheme or artifice, shall be
240 fined under this title.

241     A scheme to defraud includes any plan to deprive a
242 person of something of value by trick, deceit,
243 chicanery or overreaching, including through
244 affirmative misrepresentations, material omissions of
245 fact, or any deceptive or dishonest behavior.

246     As described herein, the Enterprise(s) engaged in a
247 calculated scheme to defraud the public for the purpose
248 of proliferating a false narrative of assault and
249 racial motives against the Plaintiff. The Enterprise(s)
250 further engaged in a scheme to defraud law enforcement
251 for the purpose of having the Plaintiff falsely
252 arrested and maliciously prosecuted, on three separate
253 occasions.

254     Additionally, the Enterprise(s) engaged in a
255 calculated scheme to defraud the Plaintiff of money and
256 property by means of fraudulent pretenses and
257 misrepresentations.

258     Plaintiff was the intended target of the fraudulent
259 scheme; in committing the acts of wire fraud described
260 *infra*, the RICO Defendants sought to mislead others
261 (journalists, reporters, law enforcement officials,
262 public at large, etc.) as a means of depriving
263 Plaintiff of tangible and/or intangible property,
264 including, without limitation, causing loss of business

265 reputation, loss of goodwill, and/or loss of
266 contractual relations.

267     As a direct and proximate result of the RICO
268 Defendants' actions, Plaintiff did in fact suffer said
269 injuries and/or deprivation of said property.

270     As part of and in furtherance of the scheme, the
271 RICO Defendants made repeated use of, or caused their
272 agents, representatives, and/or subordinates to
273 repeatedly make use of, the interstate wires to
274 transmit various documents and/or communications.

275     Each separate use of the interstate wire facilities
276 employed by the RICO Defendants was related, had
277 similar intended purposes, involved similar
278 participants and/or targets, utilized similar
279 techniques and methods of execution, and negatively
280 affected the same victim- the Plaintiff.

281     Many of the precise dates of the RICO Defendants'
282 use of the interstate wire facilities have been, and
283 continue to be, concealed by the RICO Defendants and
284 therefore are not knowable at the present time.
285 Knowledge of the Enterprise(s) fraudulent acts is
286 peculiarly within the RICO Defendants control.

287     In spite of her diligent efforts, Plaintiff does
288 not, and cannot, know the full extent of the
289 Enterprise(s) fraudulent scheme. At a minimum, however,
290 the RICO Defendants' use of interstate wire facilities

to perpetuate their unlawful scheme include the
following:

    a. March 31, 2020, CURTIN and MYERS called A-
       District Buffalo Police Dept and told RT Wojtanik
       to arrest the Plaintiff if she removes any
       structures off her property or if she attempts to
       gain access to the Northside of her home

    b. May 12, 2020, BIFARO emailed MEADOWS cc'ing
       members of BCC "If your neighbor relocates the
       vent termination to the rear of your house, will
       you drop your complaint against her?" Ultimately,
       Plaintiff respectfully declined and BIFARO then
       extorted her to relocate the vent. The Plaintiff
       refused to do anything without a valid court
       order.

    c. May 23, 2020, an unknown agent of BUFFALO,
       believed to be Candace Craig, falsely docked a
       911 call that "ANOTHER CALL...FEMALE CALLER SAID
       NEIGHBORS ARE ATTACKING EACH OTHER...NO WEAPONS
       SEEN". The 911 calls discovered from a criminal
       case file do not collaborate with the statement
       made by Ms. Craig. Plaintiff asserts this was
       done to further the Enterprise(s) agenda. To
       protect MEADOWS, employees of the Enterprise(s)
       made misleading statements and wrote false
       narratives to cover up their crimes and to

317    further perpetuate the conspiracy against the
318    Plaintiff.

319 d. November 10, 2020, BCC recording a live interview
320    with MEADOWS, published to their social media
321    page on Facebook. This interview was to give
322    MEADOWS a platform to publicly defame the
323    Plaintiff and further push MEADOWS false
324    narratives to continue the scheme against the
325    Plaintiff.

326 e. December 05, 2020, James Reese, an agent with
327    BUFFALO signed an "Information/Complaint" against
328    the Plaintiff charging her with assault in the
329    third degree. The officer in charge of a case is
330    the officer with the most knowledge of the events
331    leading to the arrest. DIXON was the first
332    officer on the scene and had the most interaction
333    between the parties and the witnesses. Plaintiff
334    asserts Mr. Reese falsely signed the complaint to
335    further the conspiracy against the Plaintiff.

336 f. April 30, 2021, the RICO Defendants introduced a
337    statement into evidence the Plaintiff made when
338    she was in custody and under interrogation on May
339    23, 2020. The Plaintiff was not read her Mini
340    Miranda Rights. Plaintiff asserts this written
341    introduction was to further the Enterprise(s)
342    scheme to have her maliciously prosecuted.

g. October 25, 2021, JSC Catherine Nugent-Panepinto uploaded a decision to NYSECF stating the Plaintiff's claims were meritless. This misrepresentation by Panepinto was intended to defraud the Plaintiff and cost the Plaintiff over $400 in court filing fees that the Sup. Ct. has refused to give back after ordered by the Appellate Division. This action ultimately led to a 3-year egregious, defamatory campaign against the Plaintiff and the order was reversed by the Fourth Department.

h. March 17, 2022, an unknown agent of BUFFALO known only as "JC" made written communication in eTrack LC that "Plaintiff & Defendant were thrown out of Judge Wolfgang's courtroom and were in an altercation with each other and they were escorted out of the building". This statement is inaccurate and is providing a false narrative to further the conspiracy and scheme against the Plaintiff. The Plaintiff was escorted to her vehicle 2 blocks away by an officer of the court due to MEADOWS assaulting the Plaintiff in front of magistrate Wolfgang. The Plaintiff tried to file a report and was denied. Plaintiff had a valid order of protection.

i. May 20, 2022, JSC Donna Siwek uploaded a supplemental decision and order to NYSCEF stating

370           the Plaintiff was not familiar with the CPLR,
371           therefore could not have equal access to the
372           courts. Plaintiff asserts this was abuse of power
373           to cover-up her crimes of denying the Plaintiff
374           due process and to further the scheme and
375           conspiracy against her. This decision was
376           misleading and meant to defraud Plaintiff out of
377           court filing fees.

378     Each of the foregoing transmission listed above
379 constituted the transmittal by means of wire
380 communication in interstate commerce of signals, sounds
381 or writings for the purpose of executing or attempting
382 to execute the predicate acts or the scheme to defraud
383 described herein, and within the Plaintiff's second
384 amended complaint and timeline.

385     In sending the foregoing transmissions, the RICO
386 Defendants sought to deceive and defraud the respective
387 recipients, including journalists, reporters, media
388 contacts, law enforcement officials, and the general
389 public, and intended for the respective recipients to
390 rely on their false, misleading, and/or fraudulent
391 misrepresentations.

392     Regarding the false and fraudulent transmissions,
393 the RICO Defendants intended to deceive the general
394 public, journalists, reporters, and/or media so that
395 they would publish false, defamatory, and inaccurate

articles, stories, and/or new pieces about the Plaintiff.

Regarding the false and fraudulent transmissions sent to law enforcement officials, the RICO Defendants intended to deceive the law enforcement officials to provoke them into launching one or more investigation(s) into Plaintiff. The officials did in fact rely upon the RICO Defendants' fraudulent misrepresentations in launching one or more investigation(s) into Plaintiff.

The violations were willful and intentional, thereby warranting an award of punitive damages under 18 U.S.C. § 2707(c).

The Plaintiff was aggrieved as a direct and proximate result of the Defendants actions, and was caused to suffer significant damage, entitling him to an award for monetary relief under 18 U.S.C. § 2707(c).

The Plaintiff also seeks an award for any attorneys' fees and costs as permitted pursuant to 18 U.S.C. § 2707(c).

**RICO COUNT II**

**18 U.S.C. § 1503**

**Influencing or Injuring Officer or Juror Generally**

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United

423  States, or officer who may be serving at any
424  examination or other proceeding before any United
425  States magistrate judge or other committing magistrate,
426  in the discharge of his duty,....or corruptly or by
427  threats or force, or by any threatening letter or
428  communication, influences, obstructs, or impedes, or
429  endeavors to influence, obstruct, or impede, the due
430  administration of justice, shall be punished under this
431  title in subsection (b).

432      The RICO Defendants, through and using the
433  Enterprise(s) and association in-fact, engaged in, and
434  continues to engage in, a coordinated effort to destroy
435  the Plaintiff's professional career, impede her ability
436  to access equal protection of the laws and access to
437  the courts, and deprive her of life, liberty, and
438  property. These coordinated efforts amount to a set of
439  related predicate acts with similar purposes, results,
440  and methods, which included acts in violation of 18
441  U.S.C. § 1503.

442      May 23, 2020, MEADOWS used her affiliation with
443  BASKIN to influence DIXON'S decision to arrest the
444  Plaintiff.

445      November 21, 2021, MEADOWS used her affiliation
446  with BASKIN during trial to influence JSC Mark
447  Grisanti's decision on an easement and recording
448  privileges.

449      MEADOWS again used her affiliation with BASKIN in

Buffalo City Small Claims Court attempting to influence the courts to rule against the Plaintiff.

Plaintiff asserts BASKIN abused her position to influence ECKERT being falsely arrested on May 23, 2020.

Plaintiff asserts BROWN abused his position and influenced JSC Mark Grisanti to violate Plaintiff's First Amendment right. Grisanti ordered Plaintiff to immediately stop posting to FaceBook regarding public corruption. *Carolette Meadows v. Rachel Eckert*, Index No. 805300/2020 (MG) June 05, 2020.

Plaintiff made several complaints regarding BROWN on FaceBook, where BROWN and BASKIN blocked ECKERT from posting to their governmental page(s) to avoid criticism. BROWN then blocked ECKERT'S family members from posting to his page and then made the public governmental page private so nobody could leave reviews or make public posts. BASKIN then made her governmental page private so no private citizen can leave a complaint or a review. The Plaintiff has a right to freedom of speech which is guaranteed protection by the United States Constitution.

Plaintiff asserts BROWN unlawfully influenced JSC Mark Grisanti to deprive Plaintiff of her property rights and freedom of speech and expression, guaranteed by the United States Constitution.

476   The Plaintiff was injured as a direct and proximate
477 result of the Enterprise(s) scheme to influence
478 judicial officers. The Plaintiff's property has been
479 subjected to degradation leading to a decrease in the
480 property's value.

481   The violations were willful and intentional,
482 thereby warranting an award of punitive damages under
483 18 U.S.C. § 2707(c).

484   The Plaintiff was aggrieved as a direct and
485 proximate result of the Defendants actions, and was
486 caused to suffer significant damage, entitling him to
487 an award for monetary relief under 18 U.S.C. § 2707(c).

488   The Plaintiff also seeks an award for any
489 attorneys' fees and costs as permitted pursuant to 18
490 U.S.C. § 2707(c).

491                    **RICO COUNT IV**
492                    **18 U.S.C. § 1505**
493   **Obstruction of Proceedings Before Departments,**
494            **Agencies, and Committees**

495   Whoever corruptly, or by threats or force, or by
496 any threatening letter or communication influences,
497 obstructs, or impedes or endeavors to influence,
498 obstruct, or impede the due and proper administration
499 of the law under which any pending proceeding is being
500 had before any department or agency of the United
501 States, or the due and proper exercise of the power of
502 inquiry under which any inquiry or investigation is

503  being had by either House, or any committee of either
504  House or any joint committee of Congress, shall be
505  fined under this title.

506      The RICO Defendants, through and using the
507  Enterprise(s) and association in-fact, engaged in, and
508  continues to engage in, a coordinated effort to destroy
509  the Plaintiff's professional career, impede her ability
510  to access equal protection of the laws and access to
511  the courts, and deprive her of life, liberty, and
512  property. These coordinated efforts amount to a set of
513  related predicate acts with similar purposes, results,
514  and methods, which included acts in violation of 18
515  U.S.C. § 1505.

516      On one or more occasions, RICO Defendant MEADOWS,
517  knowingly and deliberately made false statements to law
518  enforcement officials, with the intention of
519  obstructing, impeding, influencing and/or impairing
520  their investigations into her own crimes, and/or
521  conspired with others to carry out these acts.

522      On May 23, 2020, MEADOWS made false statements to
523  DIXON and provided misleading records to several
524  officers within the Buffalo Police Department,
525  including an outdated survey, to create a false
526  narrative of ECKERT assaulting MEADOWS.

527      Late May, early June of 2020, ECKERT filed a
528  complaint with FARLEY regarding DIXON'S behavior and
529  discriminatory practices. FARLEY gave ECKERT the run-

530 around for over a year before closing her complaint
531 claiming DIXON did nothing wrong. It has now been
532 discovered DIXON did not follow the BPD Manual &
533 Procedures and did not follow the AXON Body Worn Camera
534 Policy, both of which caused direct and proximate
535 injury to ECKERT.

536     July of 2020, Erie County District Attorney Milton
537 Gordon sought DIXON'S AXON body camera footage from
538 RINALDO. RINALDO would not turn over the evidence,
539 impeding the investigation.

540     November 21, 2020, FLYNN sought DIXON'S AXON body
541 camera data from RINALDO. RINALDO did not comply, again
542 impeding the investigation.

543     December 01, 2020, FLYNN sought DIXON'S AXON body
544 camera data from RINALDO. RINALDO did not comply,
545 impeding the investigation.

546     December 07, 2020, FLYNN sought DIXON'S AXON body
547 camera data. Again, RINALDO would not comply, impeding
548 the investigation.

549     On January 18, 2021, MEADOWS made false statements
550 to SALAZAR to create a false narrative of theft. ECKERT
551 was falsely arrested.

552     On September 20, 2021, MEADOWS made false
553 statements to DOE to create a false narrative of ECKERT
554 coughing on MEADOWS. ECKERT'S son called 911 as MEADOWS
555 was threatening ECKERT and ECKERT was falsely arrested.

556    Presumably, January 05, 2022, during a committee
557  meeting, WALDEN, without a vote from the board members,
558  dismissed the complaint ECKERT made to the Buffalo
559  Police Advisory Board. This complaint was being
560  investigated by the Board. Plaintiff asserts WALDEN
561  dismissed ECKERT'S complaint at the request of MEADOWS.
562  WALDEN did this knowingly to impede ECKERT'S rights and
563  the investigation.

564    The BCC failed to institute a policy that should be
565  followed in the event of a conflict of interest. The
566  BCC'S failure to create a conflicting policy led to the
567  Plaintiff sustaining further injuries.

568    The Plaintiff was injured as a direct and proximate
569  result of the Enterprise(s) scheme to obstruct
570  proceedings. The injuries include, but are not limited
571  to: personal injury, destruction of property,
572  defamation, false arrest, lost wages, lost revenue,
573  loss of business assets, loss of clients, loss of
574  reputation, etc.

575    The violations were willful and intentional,
576  thereby warranting an award of punitive damages under
577  18 U.S.C. § 2707(c).

578    The Plaintiff was aggrieved as a direct and
579  proximate result of the Defendants actions, and was
580  caused to suffer significant damage, entitling him to
581  an award for monetary relief under 18 U.S.C. § 2707(c).

582    The Plaintiff also seeks an award for any
583 attorneys' fees and costs as permitted pursuant to 18
584 U.S.C. § 2707(c).

**RICO COUNT V**

**18 U.S.C. § 1509**

**Obstruction of Court Orders**

588    The RICO Defendants, through and using the
589 Enterprise(s) and association in-fact, engaged in, and
590 continues to engage in, a coordinated effort to impede
591 the Plaintiff's ability to access equal protection of
592 the laws and deprive her of life, liberty, and
593 property. These coordinated efforts amount to a set of
594 related predicate acts with similar purposes, results,
595 and methods, which included acts in violation of 18
596 U.S.C. § 1509.

597    October 15, 2020, Plaintiff was issued an order of
598 protection by Hon. Amy Martoche in Buffalo Criminal
599 Court.

600    October 25, 2020, SKRZYNSKI and COSTANTINO
601 responded to a call by the Plaintiff in which they
602 corruptly refused to enforce ECKERT'S order.

603    November 07, 2020, DOE corruptly refused to enforce
604 Plaintiff's order of protection.

605    November 08, 2020, DOE'S corruptly refused to
606 enforce Plaintiff's order of protection.

607    December 10, 2020, SALAZAR corruptly refused to
608 enforce Plaintiff's order of protection.

December 15, 2020, DOE'S corruptly refused to enforce Plaintiff's order of protection.

December 16, 2020, DOE corruptly refused to enforce Plaintiff's order of protection.

December 18, 2020, MORROW stated the Buffalo Police Department would not be upholding or enforcing the order of protection unless Plaintiff was physically assaulted.

December 27, 2020, DOE'S corruptly refused to enforce Plaintiff's order of protection.

September 17, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

September 19, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

September 20, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

September 23, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

October 12, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

November 15, 2021, DOE corruptly refused to enforce Plaintiff's order of protection.

December 30, 2021, DOE'S corruptly refused to enforce the Plaintiff's order of protection.

March 17, 2022, FLYNN and DOE corruptly refused to enforce the Plaintiff's order of protection.

635     June 23, 2022, DOE corruptly refused to enforce
636 Plaintiff's order of protection.

637     Each RICO Defendant named above failed to provide
638 equal protection of the laws of the State of New York
639 under an order of protection for the Plaintiff. This
640 ultimately led to her being assaulted for a 3rd time by
641 MEADOWS in May of 2022.

642     The Plaintiff was personally injured as a direct
643 and proximate cause of the Enterprise(s) scheme to
644 obstruct court orders. The Plaintiff also had private
645 property destroyed by the Defendant's scheme to
646 obstruct a court order.

647     The violations were willful and intentional,
648 thereby warranting an award of punitive damages under
649 18 U.S.C. § 2707(c).

650     The Plaintiff was aggrieved as a direct and
651 proximate result of the Defendants actions, and was
652 caused to suffer significant damage, entitling him to
653 an award for monetary relief under 18 U.S.C. § 2707(c).

654     The Plaintiff also seeks an award for any
655 attorneys' fees and costs as permitted pursuant to 18
656 U.S.C. § 2707(c).

657                    **RICO COUNT VI**
658                 **18 U.S.C. § 1512**
659     **Tampering with a Witness, Victim, or Informant**
660     May 23, 2020, Defendant DIXON responded to a call
661 at 277 Barnard St. for an assault. DIXON discriminated

662 against the Plaintiff, refused to take witness
663 statements from neighbors, threatened to taze a
664 neighbor for questioning the officer's decision to
665 ignore witness statements, called Plaintiff a liar, and
666 ultimately arrested the Plaintiff on false charges
667 which Plaintiff asserts was due to her color and
668 unlawful influence by BASKIN.

669 Plaintiff filed a discrimination complaint with
670 FARLEY and lodged a complaint against the officer's
671 behavior.

672 June 01, 2020, Plaintiff sent a Notice of Non-
673 Spoliation to preserve the AXON body camera data for
674 DIXON. This request was sent to JOYCE and LOCKWOOD, and
675 Timothy Ball as Corporate Counsel for the City of
676 Buffalo.

677 June 17, 2020, Plaintiff sent the above-mentioned
678 non-spoliation notice to RINALDO.

679 June 30, 2020, Plaintiff attempted to use NYS FOIL
680 to obtain the AXON data. Her request was not answered.
681 Plaintiff complained for two (2) months regarding her
682 FOIL requests being ignored.

683 On or around August 6, 2020, Plaintiff received a
684 response from RINALDO the video in question did not
685 exist. Plaintiff then requested DIXON'S P-1375 showing
686 why the camera was not on. Plaintiff's request was
687 ignored.

688    Sometime after this request, Plaintiff was told she
689  cannot have access to the AXON data because the
690  criminal investigation was still ongoing, and she'd
691  have to wait for closure.

692    August 12, 2022, Plaintiff made a new request for
693  DIXON'S AXON footage as she was cleared from all
694  charges. Plaintiff received a generic message the city
695  received her request. She did not get an answer
696  proscribed by law.

697    October 19, 2022, Plaintiff followed up with
698  Michelle Long in the FOIL division. Ms. Long responded
699  there was footage available, and Plaintiff would have
700  to pay $43.00.

701    March 31, 2023, Plaintiff brought a $43.00 money
702  order to police headquarters and was given a disk
703  purported to be the footage from DIXON on the night in
704  question of May 23, 2020. Instead, the disk contained a
705  3-minute snippet of the incident with DIXON threatening
706  a bystander. Plaintiff lodged a complaint with FOIL
707  officer Michelle Long.

708    April 04, 2023, Ms. Long responded that Plaintiff
709  could take the missing footage up with appeals. The
710  plaintiff requested a refund of the $43.00 and Ms. Long
711  ignored her request.

712    Plaintiff was forced to get a federal subpoena
713  which was served on Police Headquarters and scheduled
714  for May 15, 2023, directed to Michelle Long.

715    May 15, 2023, Michelle Long was nowhere to be found
716  and Plaintiff was again denied the AXON footage in
717  possession of the City of Buffalo. Later in the day,
718  Plaintiff received a call from Lt. Safransky, the new
719  FOIL and Discovery officer who claimed the video did
720  not exist and said he'd send the Plaintiff the audit
721  log for DIXON'S AXON camera. Lt. Safransky assured the
722  Plaintiff that videos could not be deleted outside of
723  policy.

724    June 09, 2023, Plaintiff received the audit log for
725  DIXON. The log shows DIXON was recording the incident.
726  Plaintiff questioned Lt. Safransky about the videos and
727  was told "he did not know". ECKERT is now waiting for
728  an audit trail on who deleted the videos.

729    The Plaintiff avers DIXON destroyed the evidence
730  from his AXON body camera from the night of May 23,
731  2020. Plaintiff has brought a separate motion for
732  sanctions due to the Defendants actions. This video
733  footage contained evidence of a scheme by DIXON,
734  BASKIN, and MEADOWS to unlawfully discriminate against
735  Plaintiff and have her unlawfully arrested. Plaintiff
736  asserts MEADOWS dropped BASKIN'S name to DIXON and
737  believes this is one of several reasons the video was
738  destroyed.

739    The Plaintiff asserts FARLEY further perpetuated
740  the fraudulent scheme when he cleared DIXON of any
741  wrongdoing despite the fact DIXON did not adhere to the

742 AXON body camera policy implemented by the City of
743 Buffalo Police Department. Plaintiff asserts this was
744 in retaliation for her legal and lawful complaints and
745 for exercising her rights under the Constitution of the
746 United States.

747     The Plaintiff was injured due to the direct and
748 proximate cause of the Enterprise(s) tampering with
749 witnesses and evidence. These injuries include but are
750 not limited to severe emotional and mental stress,
751 defamation, false arrest, and malicious prosecution.

752       The violations were willful and intentional,
753 thereby warranting an award of punitive damages under
754 18 U.S.C. § 2707(c).

755     The Plaintiff was aggrieved as a direct and
756 proximate result of the Defendants actions, and was
757 caused to suffer significant damage, entitling him to
758 an award for monetary relief under 18 U.S.C. § 2707(c).

759     The Plaintiff also seeks an award for any
760 attorneys' fees and costs as permitted pursuant to 18
761 U.S.C. § 2707(c).

762 **RICO COUNT VII**

763 **18 U.S.C. § 1512**

764 **Obstruction by Destruction of Evidence**

765     Whoever corruptly alters, destroys, mutilates, or
766 conceals a record, document, or other object, or
767 attempts to do so, with the intent to impair the
768 object's integrity, or availability for use in an

769  official proceeding, or otherwise obstructs,

770  influences, or impedes an official proceeding, or

771  attempts to do so shall be fined under this title.

772      Plaintiff repeats, reiterates, and realleges all

773  prior factual allegation plead under RICO COUNT VI and

774  reincorporates it herein as if fully stated.

775      The violations were willful and intentional,

776  thereby warranting an award of punitive damages under

777  18 U.S.C. § 2707(c).

778      The Plaintiff was aggrieved as a direct and

779  proximate result of the Defendants actions, and was

780  caused to suffer significant damage, entitling him to

781  an award for monetary relief under 18 U.S.C. § 2707(c).

782      The Plaintiff also seeks an award for any

783  attorneys' fees and costs as permitted pursuant to 18

784  U.S.C. § 2707(c).

785                    **RICO COUNT VII**

786                    **18 U.S.C. § 1951**

787  **Obstruction by Extortion Under Color of Official Right**

788      After being alerted to CO2 poisoning, BIFARO was

789  assigned to inspect ECKERT'S furnace installation by

790  CURTAIN.

791      April 20, 2020, BIFARO cleared ECKERT'S furnace

792  installation and deemed it to be installed up to code.

793      May 12, 2020, BIFARO contacted ECKERT and Nicholas

794  Speck on a three-way call. BIFARO told ECKERT she had

795  to relocate the flue pipe that exhausts her home. Mr.

796   Speck questioned BIFARO on why it needed to be
797   relocated when it passed inspection. BIFARO stated
798   "because the neighbor (MEADOWS) is complaining about
799   it". Plaintiff advised BIFARO that she would not
800   relocate the pipe without a valid court order. BIFARO
801   then stated "either you relocate the pipe to the back
802   of the house or I will take you to court and have you
803   fined for not having a permit". BIFARO then began
804   threatening Plaintiff's HVAC installer with fines for
805   not being licensed in the City of Buffalo if he did not
806   relocate the Plaintiff's pipe.

807      The Plaintiff was injured as a direct and proximate
808   result of BIFARO'S extortion. This includes Plaintiff's
809   right to property guaranteed by the Constitution and
810   loss of future business contracts.

811        The violations were willful and intentional,
812   thereby warranting an award of punitive damages under
813   18 U.S.C. § 2707(c).

814      The Plaintiff was aggrieved as a direct and
815   proximate result of the Defendants actions, and was
816   caused to suffer significant damage, entitling him to
817   an award for monetary relief under 18 U.S.C. § 2707(c).

818      The Plaintiff also seeks an award for any
819   attorneys' fees and costs as permitted pursuant to 18
820   U.S.C. § 2707(c).

821                    **RICO COUNT VIII**
822                    **18 U.S.C. § 1951**

### The Hobbs Act

823

824   Plaintiff alleges the following Defendants'
825 violated, attempted to violate, and/or conspired to
826 violate The Hobbs Act: BASKIN, BCC, ERIE, MEADOWS, NEW
827 YORK, & WALDEN.

828   Plaintiff alleges members of the State of New York
829 Enterprise had a duty to act impartially towards the
830 Plaintiff, to uphold the integrity and independence of
831 the judiciary, to avoid impropriety and the appearance
832 of impropriety in all their activities, and to conduct
833 their extra-judicial activities as to minimize the risk
834 of conflict with judicial obligations.

835   In this case, the Plaintiff, RACHEL ECKERT, is the
836 victim. The victim sustained irreparable injury to her
837 personal and professional reputation and right to
838 derive income from her business by way of robbery. The
839 victim regularly engages in interstate commerce. This
840 unlawful robbery resulted in the victim's business
841 having to temporarily cease operations, it depleted
842 some of the assets available to the victim's business,
843 and the victim is weighing a permanent closure due to
844 the irreparable damage.

845   A conspiracy to violate The Hobbs Act may be used
846 as a predicate racketeering act under subdivision B.
847 Conspiracy is a crime. The Hobbs Act is codified as 18
848 U.S.C. § 1951 and prohibits actual or attempted robbery

849   or extortion that affects intrastate or foreign
850   commerce.

851   June 01, 2021, the victim filed a defamation claim
852   for relief in Erie Co. Sup. Ct. The suit was assigned
853   to JSC Jeannette Ogden, MEADOWS cousin.

854   October 06, 2021, Ogden recused herself from
855   the claim and the case was reassigned to JSC Catherine
856   Nugent-Panepinto.

857   October 25, 2021, Panepinto deemed the victim's
858   complaint as "meritless" and disposed of her entire
859   case.

860   November 05, 2021, the victim filed a Motion for
861   Reconsideration and Recusal.

862   November 09, 2021, Panepinto recused herself for
863   **"having personal knowledge of the disputed evidentiary**
864   **facts".**

865   On or around November 10, 2021, JSC Grisanti had
866   his Law clerk, Douglas Curella, contact the victim and
867   ask if another judge told her the complaint was
868   "meritless" if she would drop it. The victim refused as
869   she had already paid a lawyer to review her complaint
870   and it had merit. The Fourth Dept. affirmed.

871   Due to a depletion in assets from MEADOWS
872   egregious, defamatory campaign, the victim had no other
873   option but to file a new tort against MEADOWS, filed
874   May 09, 2022.

875   May 11, 2022, JSC Donna Siwek denied the victim's

876 right to access the courts and interfered with her
877 requested relief to end an unlawful taking of her
878 property. Siwek disposed of the victim's tort case
879 without legitimate cause.

880     July 07, 2022, the victim made a Motion to Settle
881 the Record on Appeal (Index No. 808096/2021, appealed
882 as CA 22-00614) to Panepinto, as advised by chambers.

883     July 26, 2022, Grisanti had Jason DiPasquale, esq
884 contact the victim about the Motion on July 07.
885 Ultimately, Grisanti said to refile the Motion and make
886 it out to him. Plaintiff did as told and filed an
887 expedited Motion July 29, 2022.

888     August 02, 2022, MEADOWS had ex-parte communication
889 with Grisanti misrepresenting the status of ECKERT'S
890 appeal. Grisanti ultimately marked the victim's motion
891  off the calendar.

892     August 08, 2022, the victim contacted Grisanti's
893 new law clerk, Brigitte Roestel regarding her motion
894 still pending. Ms. Roestel told the victim Grisanti did
895 not advise Jason to tell her to make the motion to him
896 (even though he was the assigned judge). After much
897 back and forth, Grisanti agreed to settle the record on
898 September 02, 2022.

899     August 09, 2022, Siwek recused herself from the
900 victim's suit due to being named in this action. The
901 victim's suit was restored to the calendar, but only
902 after being forced to pay $250.00 for a certificate of

903 merit.

904     August 17,2022, the victim noticed her motion to
905 settle the record was marked off Grisanti's calendar.
906 The victim spoke with Kelly Vacco from Grisanti's
907 chambers who told her the Appellate Court denied her
908 appeal, so Grisanti no longer had to settle the record.
909 Plaintiff tried advising Ms. Vacco her appeal was still
910 active and they were relying on erroneous ex-parte
911 communication. Ms. Vacco got irate with the victim's
912 contention and abrasively told her to take it up with
913 the Appellate Court because her case was dismissed and
914 Grisanti wasn't hearing the motions.

915     August 18, 2022, the victim filed a Motion to
916 Recuse Grisanti for obstruction and interfering with
917 her appeal rights. Ms. Roestel emailed the victim
918 cc'ing Ms. Vacco and Lisa Smith stating the victim's
919 case is done and they won't be ruling on any motions.
920 The victim then threatened to file a motion to compel
921 to settle the record with the Fourth Dept. Grisanti
922 finally agreed to put the motion back on the calendar
923 for September 02.

924     January 11, 2023, Ogden sat on the victim's appeal.
925 Plaintiff asserts this was to further intimidate the
926 victim, an attempt to compromise the appeal, and to
927 further harass the victim for her participation in her
928 free speech and expression.

929     May 05, 2023, the Fourth Dept. affirmed Panepinto

abused her discretion and cited the victim's complaint had arguable merit.

Plaintiff asserts there was a conspiracy between BASKIN, BROWN, MEADOWS, and the NEW YORK Enterprise through its officers Grisanti, Ogden, Panepinto, and Siwek to deprive Plaintiff of her right to produce income, violate Plaintiff's right to due process, to harass and terrorize Plaintiff through fear of economic loss, to allow the continuance of unlawful libel and slander against the Plaintiff, and distribution of false and misleading information to Plaintiff's clients causing irreparable harm to the Plaintiff's business with the goal of destroying it. This conduct obstructed and affected interstate commerce for a period of three (3) years.

The Plaintiff was injured as a direct and proximate cause of the Enterprise(s) scheme to violate the Hobbs Act. Plaintiff asserts RICO Defendants BASKIN, BROWN, and MEADOWS, along with employees of the NEW YORK Enterprise, Grisanti, Ogden, Panepinto, and Siwek unlawfully robbed Plaintiff of business assets, revenues, and a good reputation by depriving Plaintiff fair and equal access to the courts; retaliating against her complaints for her legal and lawful complaints to the Commission.

955     The violations were willful and intentional,
956 thereby warranting an award of punitive damages under
957 18 U.S.C. § 2707(c).

958     The Plaintiff was aggrieved as a direct and
959 proximate result of the Defendants actions, and was
960 caused to suffer significant damage, entitling him to
961 an award for monetary relief under 18 U.S.C. § 2707(c).

962     The Plaintiff also seeks an award for any
963 attorneys' fees and costs as permitted pursuant to 18
964 U.S.C. § 2707(c).

965                    **Timeliness of Claims**

966     Despite her exercise of reasonable diligence,
967 Plaintiff was unable to discover her injury and/or the
968 fact that it was caused by a RICO violation(s) until
969 May 11, 2022, at the earliest, when JSC Donna Siwek
970 became the third judge to violate the Plaintiff's right
971 to due process and equal protection of the law.

972                         **CONCLUSION**

973     **WHEREFORE**, the Plaintiff, Rachel Eckert,
974 respectfully requests that this Court enter a judgment
975 for Rachel Eckert and against the Defendants, for
976 compensatory damages, punitive damages, costs,
977 attorneys' fees, and such further and other relief as
978 this Court may deem just and proper.

979 Dated: July 18, 2023            Rachel Eckert, pro-se
980                                 277 Barnard St.
981                                 Buffalo, NY 14206