UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



RECEIVED
JUN 05 2025
ERIE COUNTY
DEPARTMENT OF LAW

**Rachel Eckert**

Write the full name of each plaintiff or petitioner.

Case No. 1:22 CV 00540(LJV)

CITY OF BUFFALO
DEPARTMENT OF LAW
JUN 05 2025
RECEIVED

-against-

NOTICE OF MOTION

**Carolette Meadows, et al**

Write the full name of each defendant or respondent.

PLEASE TAKE NOTICE that **defendant** **Carolette Meadows**
plaintiff or defendant / name of party who is making the motion

requests that the Court:

that the plaintiff, Rachel Eckert and the plaintiff's children be ordered to undergo mental and physical health examinations in accordance with FRCP 35(A) and that all activity in this matter be held in abeyance until all exams are completed.

Briefly describe what you want the court to do. You should also include the Federal Rule(s) of Civil Procedure or the statute under which you are making the motion, if you know.

In support of this motion, I submit the following documents (check all that apply):

- ☒ a memorandum of law
- ☒ my own declaration, affirmation, or affidavit
- ☐ the following additional documents:

FILED
JUN 5 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY
UNITED STATES DISTRICT COURT

Dated: 06/05/2025

Signature: [signed]

Name: CAROLETTE MEADOWS

Address: 28 BARNARD ST  City: BFLO  State: NY  Zip Code: 14206

Prison Identification # (if incarcerated):

Telephone Number (if available):

E-mail Address (if available):

WDNY Rev: 01/2021

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Rachel Eckert

Fill in above the full name of each plaintiff or petitioner.

Case No. 1:22 CV 00540(LJV)

-against-

Carolette Meadows,

et al

Fill in above the full name of each
defendant or respondent.

## DECLARATION

### Defendant's request for mental/physical health exam of plaintiff and plaintiff's children in accordance with FRCP 35(A)

Briefly explain above the purpose of the declaration, for example, "in Opposition to Defendant's Motion for Summary Judgment."

I, **Carolette Meadows**, declare under penalty of perjury that the following facts are true and correct:

In the space below, describe any facts that are relevant to the motion or that respond to a court order. You may also refer to and attach any relevant documents.

The Plaintiff has made a multitude of assertions regarding her mental and physical health. Due to such, Meadows challenges the plaintiff's ability to make and proceed with pro se filings which are detailed in the accompanying defendnat's brief.

Rev. 02/2021

Attach additional pages and documents if necessary.

06/05/2025 — Executed on (date)     [Signature] Signature

CARLOTTE MEADOWS
Name     Prison Identification # (if incarcerated)

281 BARNARD B[?] [10] NY 14206
Address     City     State     Zip Code

Telephone Number (if available)     E-mail Address (if available)

United States District Court
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Rachel Eckert,<br>    Petitioner | **AFFIRMATION IN SUPPORT OF MOTION<br>DIRECTING FORENSIC EVALUATION** |
| -against- | File No: Docket No(s): 1:22-CV-00540(LJV) |
| Carolette Meadows,<br>    Defendant | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR INDEPENDENT MEDICAL EXAMINATION OF PLAINTIFF

### Introduction

Plaintiff has placed his mental and physical health at issue in this lawsuit by claiming damages "that will compensate [Plaintiff] for the emotional, physical, educational and psychological injuries caused by Defendants..." and by submitting expert reports in which Plaintiff's experts opine regarding Plaintiff's mental and physical health. As such, good cause is shown under FRCP 35 and this Court should order Plaintiff to undergo the below described Independent Medical Examination at a date and time to be agreed upon by the parties.

Defendant Meadows also requests of this Court that all filing activities be held in abeyance until the plaintiff's mental exam is complete.

### Governing Law

According to FRCP 35(a):

(a) Order for an Examination. (1) In General. The court where the action is pending may order a party whose mental or physical condition-including blood group-is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.

(2) Motion and Notice; Contents of the Order. The order: (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

"Before a court may compel a party to submit to a mental or physical examination under Rule 35, the movant must demonstrate (1) that the party's mental or physical condition is actually in controversy and (2) that there is good cause for the examination." J.H. v. Sch. Town of Munster, 38 F. Supp. 3d 986, 987–90 (N.D. Ind. 2014). "Good cause" means more than merely being relevant. Nevertheless, the pleadings alone may be sufficient to determine whether good cause exists. After all, a plaintiff who seeks damages for a "mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schlagenhauf v. Holder, 379 U.S. 104, 119 (citation omitted).

## Argument

I. Plaintiff Has Undoubtedly Placed Her Physical And Mental Health At Issue.

There can be no question that Plaintiff has placed his physical and mental health at issue in this litigation based on the pleadings, the damages claimed, and accommodations requested under ADA guideline. As such, an IME should be ordered.

In Plaintiff's Amended Complaint, she alleges the following pertinent facts regarding his physical and mental health:

73) … plaintiff flunked out of school…resigned from full-time employment due to stress and anguish, plaintiff has lost the enjoyment of life… decreased sex drive which strains her relationship,… daily episodes of anxiety and often undue stress,,, trouble eating, sleeping, concentrating and focusing, has ongoing headaches, and has fears of having developed a paranoid personality disorder due to the defendants' conspiracy, **and plaintiffs children has suffered severe depression which makes it hard for her to take part in daily functions. Plaintiff has also been battling suicidewith the help of crisis services and mental health counseling** due to the actions of all defendants…

82)… several acts by the conspirators were committed to further the conspiracy… all lawsuit filed were thrown out to interfere or deprive her… property rights were unlawfully taken… and unlawfully transferred… she was blackmailed… Exhibit A to further conspiracy.

83) … acts committed by the conspirators, plaintiff was injured on multiple occasions…

84)... significant financial, mental, and emotional, harm done to plaintiff

93)... plaintiff asserts racial prejudice

97)... deprive defendant of her rights to harass her, and cause undue stress and anxiety... because she is white...

106) ... defendants...deprive plaintiff of her right to sue and to punish her...

136) ... defendants... James, Brown, Baskin, Lockwood, and Walden failed to provide equal protection of the law to Eckert due to the color of her skin... racial prejudice...

141) ... defendants did conspire to injure....

185)... serious injuries which include headaches, stomach aches, paranoia, anxiety, undue stress, physical injury and suffering including head contusions, cervical sprains, body contusions, and lacerations;... chronic depression, ... loss of sex drive. Short term memory loss, high blood pressure, mental anguish, and overall loss of enjoyment of life.

186)... injuries are debilitating... potentially for the remainder of her life.

187) ... all of the injuries have resulted in grievous pain and suffering, mental pain and anguish, and have lasted for almost three years to date...

193)... failing to remedy and/or rectify the hostile and unsafe living environment for the plaintiff... allowing discriminatory practices, hate crimes, and public corruption...

Amended Complaint.

If this were not enough, the Amended Complaint makes it abundantly clear that medical testimony and information will be central tenets in this case. The Amended Complaint, and indeed many of the filings by Plaintiff, along with her request for ADA assistance in support of her claim, were replete with discussions of assaults, attempted murder, poisoning, hate crimes, property theft, severe/debilitating injuries, mental and emotional damage that may be lifelong, mass conspiracies, and racial discrimination for failing to protect her from people who are not responsible for protecting the plaintiff.

This further supports a conclusion that once such claims were applied to the Defendants, it is Plaintiff's physical and mental health which are the central issues of this lawsuit. In addition, Plaintiff has identified Crisi Services as a potential witness and disclosed has been treating the plaintiff for suicidal ideation.

**Plaintiff's Memorandum of Law in Support of Emergency Motion for Injunctive Relief Pursuant to FRCP Rule 65**

### OTHER ACTS OF OBSTRUCTION

"Defendant Meadows… attempts to harass, annoy, alarm, and defame the plaintiff…the plaintiff is experiencing retaliation and harassment … Buffalo Board of Education who publicly claimed the Plaintiff was a "true rasict! Bully!" The plaintiff has a school aged child and the Board attacks on the plaintiff is considered reckless endangerment… plaintiffs daughter was subject to abuse…"

### VI APPLICATION OF LAW TO FACTS

B. Irreparable Harm Plaintiff faces continuous and escalating harm:
   …physical threats… emotional and psychological distress….

### IX REQUEST FOR ACCOMMODATIONS

Plaintiff further notifies this Court that she has sustained a traumatic brain injury (TBI) which impairs her ability…. Reasonable request under the Americans with Disabilities Act (ADA) has been submitted..

Therefore, there can be no doubt that Plaintiff has placed his physical and mental health at issue in this lawsuit.

**II. There Is Substantial Good Cause To Order The Examination.**

This is not a situation in which a plaintiff has vaguely alleged some minor, garden-variety form of emotional distress in an attempt to recover some additional damages. The physical and mental harm allegations are detailed, significant and form the central tenet to Plaintiff's claims against Defendants. Plaintiff alleges that she has had to undergo counseling and other therapy because of Defendants' actions. It is abundantly clear that once the parties get beyond the policies that were applied to Plaintiff that the remaining issues in this lawsuit are entirely about Plaintiff's physical and mental health and what damages Plaintiff claims to have suffered. It would be patently

unfair and highly prejudicial to Defendants to allow Plaintiff to have a potential medical professional examine Plaintiff and provide an expert report, yet deny Defendants that same opportunity. Even in more routine circumstances, courts regularly grant IMEs. In Usher v. Lakewood Eng'g & Mfg. Co., 158 F.R.D. 411, 412–13 (N.D. Ill. 1994) the court held that "[t]here is no question that Usher has put her mental state into controversy in this action, so as to trigger the potential use by Lakewood of the Fed.R.Civ.P. 35(a) opportunity to conduct a mental examination." The court based this conclusion on the fact that the plaintiff had alleged mental harm as part of her damages and had been treated by a clinical psychologist. Id. See also J.H. v. Sch. Town of Munster, 38 F. Supp. 3d 986, 987–90 (N.D. Ind. 2014); Walti v. Toys R Us, No. 10 C 2116, 2011 WL 3876907, at *2-3 (N.D. Ill. Aug. 31, 2011) (ordering IME in light of the plaintiffs long-term history of post-traumatic stress disorder and other traumatic life events, which were relevant to the assessment of emotional distress damages in Title VII case); Chrissafis v. Cont'l Airlines, Inc., No. 95 C 5080, 1997 WL 534874, at *2 (N.D. Ill. Aug. 21, 1997) (ordering IME where the plaintiff was not seeking ordinary damages for pain and suffering and instead suffered from a "specific psychiatric condition," even though plaintiff claimed she was no longer suffering from the condition); see also Nguyen v. Qualcomm, Inc., No. 09-1925- MMA, 2013 WL 3353840, at *6 (S.D. Cal. July 3, 2013) (ordering IME to evaluate pre-existing causes of plaintiff s emotional distress, and noting that plaintiff could not "thwart a request for an IME by asserting that [she is] no longer suffering from emotional distress"); Allshouse v. JBL Ltd., No. 3:05-CV-403-DRH, 2006 WL 517615, at *2 (S.D. Ill. Mar. 2, 2006) (ordering IME in part because "Defendant is not required to rely solely on the Plaintiff's witnesses['] assessment of her mental condition"); EEOC v. Grief Bros., 218 F.R.D. 59, 63 (W.D.N.Y. 2003) (ordering IME over EEOC's objection because "whether Defendant's expert will be able to discern, four years after the fact, whether it is plausible that [plaintiff] was severely depressed during the relevant period and that such condition was or was not caused or aggravated by the alleged harassment, is a question of competency and credibility that must await trial").

Additionally, Defendant Meadows asserts that with the mental claims being asserted by the plaintiff, that it should be evaluated whether or not the plaintiff should be allowed to file pro se complaints and whether or not she should be allowed to continue with suits without counsel.

### Proposed Examination

FRCP 35 also requires that the Court specify "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Defendant Meadows propose the following as to the mental health examination which is necessary given the allegations at issue:

• Time: to be determined based on mutual agreement between the parties, but not later than August 1, 2017. The examination may take place on more than one day. However, the examination shall not take place on more than four occasions nor shall it cover more than 8 total hours.

• Place: at the offices of the below identified medical professional or, if unavailable, based on mutual agreement between the parties.

• Manner: in a manner consistent with generally accepted psychological methods of evaluation and testing. The process will consist of an initial interview of approximately 2-3 hours; a second session of testing that will last approximately 2-3 hours; and a final session consisting of a 2-3 hour interview. • Conditions: no additional conditions are anticipated at this time.

• Scope: To include examination of Plaintiff, and possibly plaintiff's children since the plaintiff has made their mental/physical health a focal point of her claims, in regards to any mental health issues identified in the Amended Complaint and plaintiff's memorandum of law discovery including, but not limited to: (1) PTSD, (2) anxiety, (3) depression, (4) suicidal thoughts, (5) poisoning, (6) low self-esteem, (7) social isolation, (8) difficulty eating and sleeping properly, and (9) difficulty concentrating (10) sexual dysfunction (11) physical injuries, (12) traumatic brain injuries (11) memory loss (12) high blood pressure (13) spinal injuries (14) paranoia (15) conspiracy theories (16) racial conspiracies, and other related issues. Also, the examination may include the cause of such issues, the impact of such issues on Plaintiff and/or plaintiff's children in relation to the claims asserted in this lawsuit and the harm or damages suffered by Plaintiff and/or plaintiff's children. The time period at issue includes 2009 to present which covers the time period in which Plaintiff attended Tremper High School along with several years prior to establish the necessary psychological baselines. It shall include examination of other circumstances in Plaintiff's personal, social and school life which may or may not have also contributed to the alleged symptoms and conditions described by Plaintiff. Finally, the examination may include appropriate psychological tests including, but not limited to, the Minnesota Multiphasic Personality Inventory test.

• Medical Professional: Dr. Jessica Englert is a licensed neuropsychologist practicing at the Buffalo Behavioral Psychology Center located at 8616 Main St Suite @ Williamsville, NY, P. (716) 634-0627  F.(716) 634-0746.

**Conclusion**

Defendant Meadows has demonstrated that Plaintiff's mental or physical condition is actually in controversy and that there is good cause for the examination. Defendant has also demonstrated that the time, place, manner, conditions, and scope of the examination is reasonable. And, lastly the person proposed to conduct the IME is fully qualified to do so.

Thus, Defendants' motion should be granted and all legal activity on this matter held in abeyance until said exam is complete.

~~Dated this 28th day of April, 2017.~~

I declare under penalty of perjury under the laws of the USA that the foregoing is true and correct.

06/05/2025

Carolette Meadows

Exhibit A

82. Several acts by the conspirators were committed to further the conspiracy. These acts include, but are not limited to: stonewalling the plaintiff and not allowing any lawful complaints to be filed, stonewalling plaintiff as a victim and would not let her be heard nor participate in any victim rights, ordering plaintiff to immediately stop posting about political corruption to social media sites in an attempt to silence her, witness statements in an assault were thrown out to cover up a false arrest and malicious prosecution, all lawsuits filed by ECKERT were thrown out to interfere and deprive her of receiving justice and denying her the right to sue, her property rights were unlawfully taken away prior to due process and then unlawfully transferred against common law, she was blackmailed, her order of protection was not upheld and then went missing, her supporting depositions went missing, and several other acts plead in Exhibit A to further the conspiracy.

83. As a result of the acts committed by the conspirators, plaintiff was injured on multiple occasions and has had thousands of dollars-worth of damages done to her property. Plaintiff has also been deprived of her property rights, due procedural rights, and first, second, sixth, and fourteenth amendment rights.

84. Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A. Plaintiff further asserts defendants knew, or in the exercise of reasonable care should have known, in the totality of the events, that defendant MEADOWS was abusing the process of both criminal and civil procedures thus causing significant financial, mental, and emotional harm to plaintiff.

85. Thus, each defendant is liable to plaintiff for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985.

unchecked police misconduct that is motivated by race; as she has recently displayed by her investigations into incidents of "racial profiling" by the New York City Police Department.

90. Interestingly, Attorney General JAMES previously invoked this authority to address an out-of-control town police force. See *Spitzer v. Town of Walkill, No. 01-Civ-0364 (S.D.N.Y. March 16, 2001)*(order denying motion to dismiss).

91. Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

92. Thus, each defendant in this cause of action is liable to plaintiff for action for neglect to prevent pursuant to 42 U.S.C. § 1986.

93. Furthermore, plaintiff alleges certain defendants such as JAMES, BROWN, BASKIN, LOCKWOOD, and WALDEN failed to act as they were unlawfully discriminating against ECKERT due to her color and retaliating against her legal and lawful complaints. Plaintiff asserts this is racial prejudice.

## AS AND FOR THE FOURTH CAUSE OF ACTION

### Unlawful discrimination and retaliation, against defendant Dixon

94. Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

95. On or around May 23, 2020, plaintiff asserts defendant DIXON unlawfully discriminated against ECKERT because she was white.

96. On or around January 02, 2021, plaintiff asserts DIXON unlawfully retaliated against her for filing a legal and lawful discrimination complaint.

97. Plaintiff alleges defendant DIXON conspired with defendant MEADOWS on more than one occasion to interfere and deprive ECKERT of her rights, to harass her, and

104. October of 2021, defendant PANEPINTO dismissed a meritorious cause of action filed by plaintiff. Plaintiff asserts defendants BROWN, BASKIN, and PANEPINTO conspired together to interfere and deprive plaintiff of her right to sue and to punish her for exercising her first amendment right.

105. March of 2022, defendant GRISANTI ordered plaintiff to stop exercising her right to speech and right to expression on all social media sites. Plaintiff asserts defendants BROWN, BASKIN, and GRISANTI conspired together to interfere and deprive plaintiff of her right to speech and expression and retaliated against her for such. Defendant GRISANTI also went against common law and granted defendant MEADOWS an easement on plaintiff's property, unjustly depriving plaintiff of her property.

106. May of 2022, defendant SIWEK dismissed a meritorious cause of action filed by plaintiff. Plaintiff asserts defendants BROWN, BASKIN, and SIWEK conspired together to interfere and deprive plaintiff of her right to sue and to punish her for exercising her first amendment right.

107. The actions by the above-named defendants had an adverse effect on plaintiff, severely prejudicing her. Plaintiff asserts these adverse effects were to punish her for exercising her rights.

108. Plaintiff exercised her rights as a private citizen.

109. Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

110. Thus, each defendant in this cause of action is liable for First Amendment retaliation under Section 1983.

**AS AND FOR THE SIXTH CAUSE OF ACTION**

defendant MEADOWS calling her white trash and witnesses of defendant MEADOWS calling plaintiff white trash and cracker before brutally assaulting her. What is interesting is that not too long ago, a man by the name of Jeffrey Calhoun, was charged with a hate crime by defendant FLYNN. In this case, racial slurs were alleged but not recorded on camera. Plaintiff has both video footage and witnesses of defendant MEADOWS using racial slurs towards plaintiff which has been ongoing for over two years. Even more interesting, in July of 2021, a man by the name of Michael Cremen was charged with a hate crime for "allegedly" using racial slurs. Plaintiff repeats, she has video footage and witnesses of defendant MEADOWS using racial epithets towards plaintiff, which eventually led to defendant MEADOWS assaulting plaintiff over and over. In the case of Charles Vacanti, he was charged with a hate crime as defendant GARCIA claimed "race was the determining factor". This case too only alleged racial slurs.

135. Plaintiff asserts she has been denied equal protection of the law by other defendants plead in her timeline as they refused to uphold the integrity of the law and the courts and refused to enforce the plaintiffs order of protection on several occasions.

136. Furthermore, plaintiff alleges certain defendants such as JAMES, BROWN, BASKIN, LOCKWOOD, and WALDEN failed to provide equal protection of the law to ECKERT due to the color of her skin. Plaintiff asserts this is racial prejudice. Plaintiff is a white woman complaining of hate crimes by a black woman to black elected officials.

137. As previously mentioned, the New York State Attorney General has the authority to initiate civil actions.

138. Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

139. Thus, each defendant in this cause of action is liable to plaintiff for violations of her rights under the Fourteenth Amendment to the United States Constitution.

## AS AND FOR THE NINTH CAUSE OF ACTION

### Conspiracy against Rights, against all defendant's

140. Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

141. Plaintiff alleges that defendants conspired to injure, oppress, threaten, and intimidate plaintiff for exercising her legal rights.

142. Plaintiff asserts the defendants' specific intent was plead within Exhibit A.

143. Thus, every defendant in this cause of action is liable to plaintiff for conspiracy against rights pursuant to 18 U.S.C. § 241.

## AS AND FOR THE TENTH CAUSE OF ACTION

### Deprivation of Rights under Color of Law, against all defendant's

144. Plaintiff repeats, reiterates, and realleges all prior allegations herein and stated in Exhibit A as if set forth fully once again.

145. Plaintiff asserts every defendant in this action was acting under color of law, or as a non-state actor, when they willfully and/or negligently interfered and deprived plaintiff of her rights, privileges, and immunities protected by the Constitution of the United States and laws thereof.

146. Plaintiff asserts these actions and conduct committed by defendants were both within the bounds or limits of their lawful authority and without and beyond the bounds

185. As a result of the malicious and intentional behavior of the defendants, the plaintiff, ECKERT, suffered serious injuries which include: headaches; stomachaches; paranoia; anxiety; undue stress; physical injury and suffering including head contusions, cervical sprains, body contusions, and lacerations; personal property damage; reputational damage; chronic depression; changes in appetite and sleeping patterns; loss of sex drive; short-term memory loss; high blood pressure; mental anguish; and overall loss of enjoyment of life.

186. Some of these injuries are debilitating in nature and are of a nature which the plaintiff, ECKERT, has suffered and will continue to suffer for an unknown period of time; potentially for the remainder of her life.

187. All of these injuries have resulted in grievous pain and suffering, mental pain and anguish, have required medical intervention and have lasted for almost three years to date.

188. A reasonable duty to care was created the moment plaintiff was issued an order of protection by Hon. Amy Martoche of Buffalo City Court.

189. Plaintiff asserts the defendants' actions and conduct were plead within Exhibit A.

190. Thus, defendants are liable to plaintiff for intentional infliction of emotional distress. See *Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019)(quoting *Howell v. N.Y. Post Co., Inc.*, 596 N.Y.S.2d 350, 353 (N.Y.1993)). As the Second Circuit has explained:

> Under New York Law, although the standard of outrageous conduct is strict, rigorous and difficult to satisfy, that is not the case when there is a deliberate and malicious campaign of harassment and intimidation. To be sure, it is manifestly

193. The allegations of negligence, carelessness, and recklessness of defendants BUFFALO, ERIE, STATE OF NEW YORK, and POLICE through the acts of its agents, employees, representatives and/or servants, who were acting in the scope of their employment, include, but are not limited to the following: creating a hostile and unsafe environment to plaintiff, her local business, and her children; failing to take appropriate measures so as to prevent such a hostile and unsafe environment from existing; failing to take proper and necessary precautions to safeguard against the unsafe and hostile environment; failing to properly investigate the unsafe and hostile environment that existed; failing to uphold the integrity of an order of protection which further led to the hostile and unsafe environment; failing to use due and reasonable care; failing to protect plaintiff and her property under an order of protection while on actual and constructive notice of same; failing to take appropriate measures to prevent such hostile and unsafe environment while on actual and constructive notice of same; failing to investigate claims of discriminatory practices, hate crimes, and public corruption while on actual and constructive notice of same; failing to take appropriate measures to prevent such discriminatory practices, hate crimes, and public corruption while on actual and constructive notice of same; failing to observe said public corruption and discriminatory practices against plaintiff; failing to remedy and/or rectify the discriminatory practices, hate crimes, and public corruption against plaintiff; failing to remedy and/or rectify the hostile and unsafe living environment for plaintiff, her business, and her children; allowing the discriminatory practices, hate crimes, and public corruption to exist; allowing the

May 14, 2025

United States District Court
2 Niagara Square
Buffalo, NY 14202

UNITED STATES DISTRICT COURT
FILED
MAY 16 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

Letter to the Judge, ~~[illegible]~~
RE: Case # 1:22-cv-00540
Subject: Request for ADA Accommodations Due to Traumatic Brain Injury (TBI)

Dear Honorable Lawrence J. Vilardo,

I am writing to formally request reasonable accommodations under the Americans with Disabilities Act (ADA) due to a traumatic brain injury (TBI) I sustained in August of 2024.

As a result of the TBI, I experience challenges with maintaining focus and organizing my thoughts, which can result in stuttering or losing track of what I'm saying, memory issues, difficulty concentrating, fatigue, and dizziness. These symptoms significantly impact my ability to attend court hearings, retain information, participate in meetings, to communicate effectively in a courtroom setting, and the ability to organize complex legal arguments, track legal proceedings, and complete extended legal submissions in a singular, uninterrupted manner.

In light of these challenges, I respectfully request the following accommodations to ensure my full participation in court proceedings:

1. I request additional time for hearings and proceedings to accommodate cognitive fatigue and difficulties with concentration and memory.

2. I request access to a court reporter's transcripts of proceedings to ensure I can accurately review and comprehend what has been discussed. I further request to be provided with card services.

3. I request written summaries of all court proceedings and legal documents to help me better retain information.

4. I request frequent breaks during long hearings or trials to manage fatigue and ensure I can participate fully.

5. I request that legal terms and procedures be explained in simpler language, and that I be given time to process and ask questions if I need clarification.

6. I request flexibility in scheduling court dates to accommodate my medical needs, including appointments related to my recovery from the TBI.

7. I request to be given extra time during proceedings to pause and collect my thoughts, especially if I begin to lose track of where I am in a conversation. This will help me communicate my thoughts clearly and effectively.

8. I request that I be allowed to submit written statements to supplement my verbal testimony, particularly if I experience difficulty articulating my thoughts during proceedings.

9. I request that the court and all involved parties provide me with additional time and patience when I am speaking, and that they allow me to pause and clarify if I lose track of my thoughts or experience difficulty with stuttering; and

10. I request the assignment of a case manager or legal representative who can help me manage the logistical aspects of my case.

11. Any additional approved services I may need or request to protect my rights.

This support will enable me to focus on my health while ensuring that my legal needs are being met.

Please let me know if there is any further information you require to process this request. Thank you for your understanding and consideration. I look forward to your response and to ensuring that my participation in the proceedings is as effective as possible.

Sincerely,

Rachel Eckert

Revised 05/01 WDNY

# AFFIRMATION OF SERVICE
(If you are **not** having your signature notarized, use this form)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_Rachel Eckart_,

Plaintiff(s),

v.

_Carolette Meadows_,
ET AL
Defendant(s).

AFFIRMATION OF SERVICE

1:22-CV-00540 WV

I, (print your name) _Carolette Meadows_, served a copy of the attached papers (state the name of your papers) _Motion, Declaration, Brief, and Exhibits (A)_ _____ upon all other parties in this case by mailing _X_ by hand-delivering _X_ (check the method you used) these documents to the following persons (list the names and addresses of the people you served) _Erie Cty (Law) 95 Franklin Bflo NY 14202_   _City Bflo Corp Counsel 11th Floor City Hall Bflo NY 14202_

HAND

_R Eckart 277 Barnard St Bflo NY 14206_  E Mail

on (date service was made) _____

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Executed on _06/05/2025_   _Carolette [signature]_
             (date)                              (your signature)