UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

RACHEL ECKERT,

        Plaintiff,

   v.

CITY OF BUFFALO et al.,

        Defendants.

———————————————————

        22-CV-540-LJV
        DECISION & ORDER

On July 11, 2022, the pro se plaintiff, Rachel Eckert, commenced this action against a host of defendants including Carolette Meadows, a neighbor with whom she has had a long-running feud.  *See* Docket Item 1.  Eckert also sued New York State, Erie County, and the City of Buffalo; several New York State Supreme Court justices; and various government officers and officials, who, according to Eckert, have either favored Meadows or failed to respond adequately to Eckert's complaints in the course of the feud.  *See id.*; *see also* Docket Item 3 (amended complaint).

This Court dismissed several of Eckert's claims—including those against New York State and New York State Supreme Court Justices Jeannette Ogden, Catherine Nugent Panepinto, Mark Grisanti, and Donna Siwek—at the screening stage.  *See* Docket Item 4.  After Eckert's remaining claims proceeded to service, this Court decided motions to dismiss filed by several defendants, finding that several of Eckert's claims were subject to dismissal but granting Eckert leave to amend her complaint to address

those deficiencies.  Docket Item 57.  Shortly after that decision, Eckert timely filed a second amended complaint.[1]  Docket Item 58.

On November 8, 2024—more than two years after this Court had dismissed her claims against the State of New York and the state court justices—Eckert moved for relief from a judgment or order under Federal Rule of Civil Procedure 60(b) as to the dismissal of her claims against Justice Nugent Panepinto.  Docket Item 87.  About six months later, on May 16, 2025, Eckert moved for a preliminary injunction and a temporary restraining order ("TRO") "prohibiting [the d]efendants, including judicial and municipal agents, from continuing to obstruct [Eckert's] legal proceedings[ and] access to public records."[2]  *See* Docket Item 93 at 1, 22.  She also asked this Court to issue an injunction ordering: (1) "Erie County and New York State to accept and process [her Freedom of Information Law ('FOIL')] requests lawfully"; (2) "[i]mmediate judicial reassignment of any pending state court actions involving [Eckert] to a neutral venue";

---

[1] Meadows and several defendants associated with Erie County (including the County) have moved to dismiss Eckert's second amended complaint, Docket Items 68 and 70, and another defendant, Denise Walden, has moved for judgment on the pleadings, Docket Item 110.  And Eckert has filed two other motions related to certain defendants' deadlines to answer and to the service of other defendants, *see* Docket Items 90 and 115.  This Court will address all those motions in a separate order.

[2] On the same day, Eckert moved for "reasonable accommodations under the Americans with Disabilities Act" in these proceedings based on a "traumatic brain injury [she] sustained" last summer.  Docket Item 92 at 1.  Eckert requests various specific accommodations, including "additional time for hearings and proceedings"; "access to . . . transcripts"; "written summaries of all court proceedings and legal documents"; "frequent breaks during long hearings or trials"; "flexibility in scheduling court dates"; and "[a]ny additional approved services [she] may need . . . to protect [her] rights."  *Id.* at 1-2.  Because there are currently no hearings or trials scheduled in this case, this Court denies Eckert's motion without prejudice as premature.  But the Court is certainly willing to be flexible and to reasonably accommodate Eckert's medical needs as the case proceeds.

(3) "[c]essation of any unconstitutional prior restraint or retaliation based on protected speech"; and (4) "the New York State Commission on Judicial Conduct to respond to [Eckert's] complaints with an evidentiary review[] or [by] allow[ing] independent oversight."  *See id.* at 1, 22.

The City of Buffalo opposed Eckert's motion, Docket Item 99, as did defendants Erie County, former Chair of the Erie County Legislature April Baskin, former Erie County Sheriff Timothy Howard, and Erie County Sheriff John Garcia, Docket Item 100; Co-Chair of the Buffalo Police Advisory Board Denise Walden, Docket Item 102; and Meadows, Docket Item 108.[3]  Eckert filed a reply in support of her motion for a preliminary injunction and a TRO, Docket Item 101, as well as two supplemental declarations in further support of that motion, Docket Items 109 and 116.

While her motion was being briefed, Eckert moved to transfer this case to the United States District Court for the Southern District of Ohio.  Docket Item 105.  Based on the content of that motion, *see id.*, this Court understands it to be a motion for this Court's recusal and for transfer.  And last week, she filed two motions for expedited consideration, Docket Items 117 and 119, of her motion for a preliminary injunction and TRO, Docket Item 93, asking this Court to "[i]ssue a ruling on [that motion] without further delay" or, "[a]lternatively, set an expedited hearing on the motion prior to August

---

[3] Apparently in response to Eckert's motions, Meadows moved "for mental and physical health examinations."  Docket Item 97.  Because this case has not yet proceeded to discovery, this Court denies Meadows's motion.

25, 2025," which—she informed the Court for the first time—was her "criminal arraignment date,"[4] *see* Docket Item 117 at 3.

For the reasons that follow, Eckert's motions for recusal and transfer, for relief from a judgment or order, and for a preliminary injunction and a TRO are denied. Her two motions for expedited consideration are denied as moot.

## DISCUSSION[5]

## I.   MOTION FOR RECUSAL AND TRANSFER

The Court first addresses Eckert's motion to transfer this case to the Southern District of Ohio, Docket Item 105. She argues that transfer is warranted based on "extraordinary circumstances that prevent [Eckert] from receiving a fair and impartial adjudication in this [d]istrict," including this Court's "campaign contributions to individuals and committees central to this case." *See id.* at 1. This Court construes this motion as one for both recusal and for transfer.

### A.   Motion for Recusal

A judge has an obligation to recuse himself "in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a). A judge also must

---

[4] It is not clear whether Eckert's more recent requests for this Court to issue a ruling—which do not refer to her motion for recusal and transfer, *see* Docket Items 117 and 119—are intended to withdraw her earlier request for that relief. Regardless, this Court has fully considered Eckert's motion for recusal and transfer and denies that relief for the reasons stated below.

[5] In light of Eckert's pro se status, her filings are "construed 'liberally' and 'interpreted . . . to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alteration omitted) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Some bolding is omitted when quoting from the complaint.

recuse himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" or "a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," *id.* § 455(b)(1), (4).  And he must recuse himself from a case when a party "files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  "To be sufficient[,] an affidavit must show the objectionable inclination or disposition of the judge . . . [and] give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment."  *Sibley v. Geraci*, 858 F. App'x 415, 416 (2d Cir. 2021) (summary order) (alterations in original) (quoting *Rosen v. Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966)).  "Sections 144 and 455 are complementary, and the grounds for disqualification are the same under both statutes." *Myers v. New York*, 2017 WL 6408721, at *2 (N.D.N.Y. Sept. 28, 2017).

Regardless of the statute under which recusal is sought, "[a] recusal decision rests within the sound discretion of the judge whose recusal is sought."  *Id.* (citing *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).  Indeed, "a judge has 'an affirmative duty not to disqualify himself unnecessarily, particularly where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience.'"  *Goodman v. Bouzy*, 2023 WL 3961216, at *3 (S.D.N.Y. June 12, 2023) (alteration omitted) (quoting *McGann v. Kelly*, 891 F. Supp. 128, 137 (S.D.N.Y. 1995)); *accord LoCascio v. United States*, 473 F.3d 493, 498 (2d Cir. 2007).

Eckert says that "she cannot receive a fair hearing in this [d]istrict due to improper influence and political protection involving members of the judiciary." Docket Item 105 at 2. More specifically, she says that the undersigned "has made campaign contributions to individuals and committees central to this case," namely, Justice Nugent Panepinto and former City of Buffalo Mayor Byron Brown. *Id.* at 3-4. According to screenshots included in Eckert's motion, the undersigned donated $250 to Justice Nugent Panepinto in 2010 and $500 to Mayor Brown in 2013, years before being appointed as a judge.[6]

The undersigned has no memory of making those donations 12 and 15 years ago. But even assuming that Eckert's information regarding the donations to Justice Nugent Panepinto and Mayor Brown is accurate, courts have rejected similar motions to recuse based on past campaign contributions. *See Matter of Mason*, 916 F.2d 384, 385-88 (7th Cir. 1990) (affirming district judge's decision not to recuse himself based on two campaign contributions of $100 each to county officials named as defendants in case); *Shuler v. Duke*, 792 F. App'x 697, 705 (11th Cir. 2019) (per curiam) (affirming denial of motion to recuse judge based on campaign contributions that judge or her husband made prior to her judicial appointment to politicians that plaintiff publicly criticized); *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 578 F. Supp. 3d 1011, 1017 (E.D. Ark. 2022) (rejecting as "border[ing] on . . . frivolous" motion to recuse judge

---

[6] Eckert also contends, based on another screenshot, that the undersigned donated $250 to Jeremy Zellner, the Chair of the Erie County Democratic Committee, in March 2023—about eight years after being appointed to the bench. Docket Item 105 at 3. The address listed for the "Lawrence Vilardo" who made this donation, however, is in Sanborn, New York, *see id.*, a place where the undersigned has never lived, and the undersigned has not made any political donation since taking the bench in 2015.

based on "one political contribution" to governor, a defendant, "approximately four years [before the case] and . . . well before [judge] took the bench," finding that fact "insufficient to trigger recusal").

Eckert does not suggest that this Court has any personal connection to Justice Nugent Panepinto or former Mayor Brown, nor does she assert that the Court "has made any public comment about th[is] case," has "demonstrated any bias in any form," or "has a financial stake or interest in the outcome of this case." *See Biden v. Ziegler*, 2024 WL 4452484, at *3 (C.D. Cal. Apr. 26, 2024). In the absence of any such allegations, this Court's past campaign contributions—again, assuming that any such donations were made—clearly "do not warrant disqualification." *See id.* (denying defendant's motion to recuse judge because "[plaintiff Hunter Biden's] father appointed [judge] to the federal bench in 2023 and [judge] donated to [former President Joseph Biden's] 2020 campaign"); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) ("Judges generally have political backgrounds to one degree or another but must be presumed, absent more, to be impartial.").

Eckert's motion to recuse therefore is denied.

**B.    Motion for Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[7]  28 U.S.C. § 1404(a). "A civil action may be brought in . . . a judicial

---

[7] A case may also be transferred "to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). There is no indication that any of the defendants have consented to transfer.

district in which any defendant resides, if all defendants are residents of the [s]tate in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(1)-(2).  A party seeking transfer bears the "burden of making out a strong case for transfer" through clear and convincing evidence.  *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (quoting *Filmline (Cross-County) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

Eckert asks this Court to transfer this case to the Southern District of Ohio.  But there is no indication—in her motion or elsewhere—that *any* defendant, let alone all defendants, reside in that state or that any of the actions that form the basis of her claims occurred there.  *See* Docket Item 105.  On the contrary, she asks this Court to transfer this case to the Southern District of Ohio explicitly because it is "a neutral venue with no connection to . . . the parties involved [in this case]."[8]  *Id.* at 4.  And, in fact, the second amended complaint suggests that all litigants involved in this case, including Eckert herself, reside in New York, and that all relevant events occurred in this state. *See* Docket Item 58.  So this Court cannot transfer this action under section 1404.

---

[8] Eckert does not suggest any connection whatsoever between this case and the Southern District of Ohio, nor does she hint about why she chose that court as her preferred venue except to say that she views it as "neutral."  *See* Docket Item 105 at 4. In that regard, she says that the Southern District of Ohio has no ties to the "Unity Coalition," which she describes as a "political organization that is not properly registered as a nonprofit, [political action committee], or corporate entity, but [that] appears in hundreds of campaign finances disclosures[ and] . . . is directly tied to multiple defendants in this action."  *Id.* at 2.  That assertion—whatever else can be said of it— has no relevance whatsoever to this Court's venue analysis.  *See Whitnum v. Town of Woodbridge*, 2019 WL 3024865, at *4-5 (D. Conn. July 11, 2019) (denying plaintiff's motion to transfer case from the District of Connecticut based on plaintiff's "worr[y that] she [could ]not get a fair trial" in that state and explaining that the "court [could] discern no basis to transfer th[e] case to a randomly-identified district outside this [c]ircuit").

Eckert's motion to transfer therefore is denied as well.

## II.    MOTION FOR RECONSIDERATION

This Court dismissed without leave to amend Eckert's claims against Justice

Nugent Panepinto (and the three other state court justices that Eckert sued) at the

screening stage on judicial immunity grounds.  *See* Docket Item 4 at 6-9.  As the Court

explained, Eckert "clearly challenge[d] 'acts arising out of, or related to, individual cases'

before" those justices.  *Id.* at 8 (quoting *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir.

2009)).  And because such acts are indisputably "judicial in nature," judicial immunity

barred her claims.  *See id.* at 8-9.  Eckert now moves for relief from the order insofar as

the Court dismissed her claims against Nugent Panepinto, *see* Docket Item 87, and this

Court construes her motion as one for reconsideration.[9]

The Second Circuit has held that "[t]he standard for granting [a motion for

reconsideration] is strict, and reconsideration will generally be denied unless the moving

party can point to controlling decisions or data that the court overlooked—matters, in

other words, that might reasonably be expected to alter the conclusion reached by the

court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "The major

grounds justifying reconsideration are an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.

1992) (citation and internal quotation marks omitted); *see also United States v.*

---

[9] Eckert already has moved for reconsideration of the Court's dismissal of her claims against all four of the New York State Supreme Court justices she sued.  *See* Docket Item 5 at 4-9; Docket Item 54-1 at 9-18.  This Court denied that motion.  Docket Item 57 at 17-18.

*Cheruvu*, 2019 WL 3000682, at *2 (W.D.N.Y. July 10, 2019) (" [A] motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." (quoting *Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist.*, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994))).

Eckert does not ask this Court to reconsider its ruling based on new law or any new facts about her encounters with Nugent Panepinto.  Instead, she seeks reversal based on "newly discovered evidence that was not available [to her] at the time of the [Court's] order"—specifically, that Nugent Panepinto "had not filed an official oath" as required under New York State law.  *See* Docket Item 87 at 5, 8.  As a result, Eckert says, Justice Nugent Panepinto "was acting in absence of all jurisdiction at the time of the [alleged] incidents" and therefore is not entitled to judicial immunity.  *Id.* at 6.

Even if Nugent Panepinto failed to comply with New York State law in taking and filing an official oath—and Eckert's allegations on this point are far from clear, *see* Docket Item 87—that would not deprive Nugent Panepinto of judicial immunity.  In *Conklin v. Anthou*, 495 F. App'x 257, 264 (3d Cir. 2012) (per curiam), the plaintiff "argue[d] that several of the defendants were not legal occupants of their offices[ because they] failed to take a[n] oath" that Pennsylvania, like New York here, required all public officers to take.  *Id.* at 263-64.  The Third Circuit rejected the argument out of hand:  "Even assuming that the defendants had not, in fact, taken their oaths of office . . ., [the plaintiff] points to no case law that would support the conclusion that this omission abrogated claims to immunity."  *Id.* at 264.  Other courts have agreed. *See, e.g.*, *Jurich v. Campbell*, 2014 WL 109489, at *2 (E.D. Mich. Jan. 13, 2014); *Guerriero v. Hadley*, 2015 WL 13357662, at *1 (C.D. Cal. Aug. 11, 2015).  Simply put,

"a public official's failure to take a required oath of office does not abrogate immunity to which the official is otherwise entitled."  *Jurich*, 2014 WL 109489, at *2.

Eckert's motion for reconsideration of the dismissal of her claims against Nugent Panepinto therefore is denied.[10]

## III.    MOTION FOR EMERGENCY RELIEF

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest."  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Id.* at 24.  "The standard for issuance of a temporary restraining order is identical to that for issuance of a preliminary injunction."  *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 771 (W.D.N.Y. 2020).

Eckert seeks various kinds of relief in her motion for a preliminary injunction and TRO.  Docket Item 93.  More specifically, she asks this Court to: (1) "prohibit[ the d]efendants, including judicial and municipal agents, from continuing to obstruct [her] legal proceedings[ and] access to public records"; (2) order "Erie County and New York State to accept and process FOIL requests lawfully"; (3) "reassign[] any pending state court actions involving [Eckert] to a neutral venue"; (4) bar the defendants from "any

---

[10] Eckert suggests that two other justices named in her initial complaint—Justices Grisanti and Siwek—also may not have properly filed oaths of office, although she says that she is not certain of this.  *See* Docket Item 87 at 8.  To the extent that Eckert intends to move for reconsideration of the dismissal of her claims against those defendants, the Court denies that motion for the same reason.

unconstitutional prior restraint or retaliation based on protected speech"; and (5)
"compel[] the New York State Commission on Judicial Conduct to respond to [Eckert's]
complaints." *Id.* at 1, 22. This Court lacks the power to grant this relief for at least three
reasons.

First, this Court cannot grant the requested relief under Federal Rule of Civil
Procedure 65(d). That rule requires that "[e]very order granting an injunction and every
restraining order must . . . state its terms specifically[] and . . . describe in reasonable
detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The Second
Circuit has "interpreted Rule 65(d) as requiring that 'an injunction . . . be specific and
definite enough to apprise those within its scope of the conduct that is being
proscribed.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 143 (2d Cir.
2011) (alteration in original) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d
232, 240-41 (2d Cir.2001)). And the Supreme Court has explained that "[t]he specificity
provisions of Rule 65(d) are no mere technical requirements[ but are] designed to
prevent uncertainty and confusion on the part of those faced with injunctive orders, and
to avoid the possible founding of a contempt citation on a decree too vague to be
understood." *See Schmidt v. Lessard,* 414 U.S. 473, 476 (1974)

Eckert's requests for relief flout these clear principles. She essentially asks this
Court to enjoin the defendants from acting unlawfully or violating her rights, without
providing any parameters on what is or is not illegal. But the Court cannot—consistent
with Rule 65(d)—grant such relief. *See Wakefield v. Scott*, 2019 WL 13271839, at *5-6
(D. Vt. Sept. 24, 2019) (denying motion for permanent injunction where plaintiff sought
an order preventing defendants "from violating the law" and "stop[ping] the abuse

forever," explaining that "court [was not] authorized to provide [p]laintiff the insufficiently clear and specific relief she request[ed]" under "Rule 65(d) and Second Circuit precedent").

Moreover, the content of Eckert's filings provides no real clues about how this Court could construe her motion to seek more specific relief:  Much of her motion simply rehashes her complaints about the New York State Supreme Court justices who presided over the various actions she and Meadows have filed against each other.  *See* Docket Item 93.  But her claims against the justices have been dismissed, and this Court has denied her motions to reconsider those dismissals.  *See supra* Section II; *see also* Docket Item 57 at 17-18.  And the rest of her motion consists of somewhat random anecdotes about how others have wronged her and her family.  *See, e.g.*, Docket Item 93 at 16-17.  So Eckert's request is not specific enough for this Court to grant relief.

Second, in *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court endorsed "a strong federal policy against federal[ ]court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  Because Eckert complains about several state court proceedings without saying what those proceedings were or are about and whether they still are pending, this Court does not address whether the injunction she requests is technically barred under *Younger.*  But "a [c]ourt may abstain" from granting injunctive relief "under the principles of comity and federalism," even when all the requirements of *Younger* are not met, "when . . . 'the equitable relief sought would inappropriately require the federal court to supervise institutions central to the state's sovereignty.'"  *Kunz v. N.Y. State Comm'n on Jud. Conduct*, 356 F. Supp. 2d

188, 194 (N.D.N.Y. Feb. 15, 2005) (quoting *Miller v. Silbermann*, 951 F. Supp. 485, 491-92 (S.D.N.Y. 1997)).  Indeed, "[a] federal court should not intervene to establish the basis for future intervention that is . . . intrusive and unworkable."  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)).

That is precisely the kind of relief that Eckert seeks here: a sprawling injunction that would require this Court to engage in "an ongoing federal audit" of all of Eckert's interactions with state and local officials and entities.  *See O'Shea*, 414 U.S. at 500.  While Eckert's damage claims against those parties may proceed to the extent allowed in this Court's previous orders, injunctive relief against the defendants, especially at this stage, is simply unworkable.

Third, and finally, Eckert has failed to show that she will suffer irreparable harm in the absence of injunctive relief—"the single most important prerequisite for the issuance of a preliminary injunction."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir.1999)).  "[T]o satisfy the irreparable harm requirement, [the plaintiff] must demonstrate that absent a preliminary injunction [she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Id.* (alteration omitted) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

While Eckert asserts that she will suffer "irreparable harm" in the absence of an injunction, her allegations are—like much of the rest of her motion—sweeping and unspecific.  She says that she "faces continuous and escalating harm," including "[d]enial of access to courts," "[p]hysical threats and obstruction of home repairs,"

"[e]conomic harm due to defamation and disruption to business operations," and

"[e]motional and psychological distress."  Docket Item 93 at 21.  But she does not say

how imminent any of those possible injuries are; further, her assertion of possible

economic harm, at least, would seem to be fully remediable by damages.  *See Faiveley*,

559 F.3d at 118.  Eckert therefore has failed to show that she will suffer irreparable

harm in the absence of injunctive relief.[11]

---

[11] In her motion for expedited consideration, Eckert alleges that since filing her motion for emergency relief, "retaliation has escalated."  Docket Item 117 at 1.  More specifically, she says that on July 4, 2025, she "publicly criticized Buffalo City Court Judge Phillip Dabney for corruption," and a few weeks later, on July 29, 2025, he "signed a summons against [Eckert] for housing code violations that had already been corrected and officially marked closed by the City of Buffalo."  *Id.* at 2.  She was told that she must appear in Buffalo City Court for a "criminal arraignment [on] August 25, 2025, based on these already-corrected violations," and she says that the forms were falsified to state that she was arrested on these charges in March.  *Id.*  In light of those events, she asks the Court to rule on her motion for emergency relief "without further delay" or else to "set an expedited hearing on the motion prior to" her August 25 arraignment.  *Id.* at 3.

It is not clear to this Court whether Eckert is asking it to intervene in the proceedings scheduled on August 25.  But if Eckert is requesting such relief, this Court would be required to abstain under *Younger*.  While the exact nature of the charges against Eckert is somewhat unclear to the Court, Eckert says that they are "criminal" proceedings, and so the kind of proceedings to which *Younger* abstention applies.  *See Falco v. Justs. of the Matrimonial Parts of Sup. Ct.*, 805 F.3d 425, 427 (2d Cir. 2015).  Moreover, Eckert has not met her "burden of establishing that one of the exceptions [to *Younger* abstention] applies":  She has not shown "bad faith, harassment[,] or any other unusual circumstance that would call for equitable relief."  *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197-98 (2d Cir. 2002).

To meet the "bad faith" or "harassment" exception, "the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive."  *Id.* at 199.  Eckert suggests that the proceedings against her were retaliation for her comments about Judge Dabney because he signed the summons against her.  *See* Docket Item 117 at 12.  But prosecutors—not judges—initiate criminal proceedings; further, the form attached to her motion says that a City of Buffalo inspector was the individual who asserted that she had violated city ordinances.  *Id.* at 5.  So her allegations are not enough to show that the bad faith or harassment exception applies here.  And Eckert has not shown that "extraordinary circumstances" justify injunctive relief because she has not alleged that

Eckert's motion for a preliminary injunction and a TRO therefore is denied.

## CONCLUSION

For the reasons stated above, Eckert's motions for recusal and transfer, Docket Item 105; for reconsideration, Docket Item 87; and for a preliminary injunction and a TRO, Docket Item 93, are DENIED.  Her two motions for expedited consideration of her motion for emergency relief, Docket Items 117 and 119, are DENIED as moot.  In addition, her motion for reasonable accommodations, Docket Item 92, is DENIED as premature and without prejudice to future requests for accommodations in light of Eckert's medical needs.  Meadows's motion for mental and physical health examinations, Docket Item 97, is DENIED.


          SO ORDERED.

          Dated:   August 25, 2025
                   Buffalo, New York



                              _/s/ Lawrence J. Vilardo_
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE



_____

there is "no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation."  *Rhee-Karn v. Burnett*, 2014 WL 4494126, at *6 (S.D.N.Y. Sept. 12, 2014) (quoting *Diamond "D" Constr. Corp.*, F.3d at 201).  Indeed, there appears to be no reason that Eckert could not appeal any city court ruling adverse to her.  The Court therefore holds that under *Younger*, it must abstain from interfering with Eckert's city court proceedings.